IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――

JOHNATHAN JOHNSON,

                 Plaintiff,

      v.

BRIAN GAGNON, *et al.,*

                 Defendants.

―――――――――――――――――――――

Civil Action No.
9:14-CV-0916 (MAD/DEP)

APPEARANCES:

FOR PLAINTIFF:

JOHNATHAN JOHNSON, *Pro Se*
89-A-1042
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

FOR DEFENDANTS:

HON. ERIC T. SCHNEIDERMAN
New York State Attorney General
Main Place Tower
350 Main Street, Suite 300A
Buffalo, NY 14202

DAVID J. SLEIGHT, ESQ.
Assistant Attorney General

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

# REPORT AND RECOMMENDATION

*Pro se* plaintiff Johnathan Johnson, a New York State prison inmate who is ineligible for *in forma pauperis* ("IFP") status in this court pursuant to the three strikes provision of 28 U.S.C. § 1915(g), commenced this action in state court asserting civil rights claims under 42 U.S.C. § 1983 against various employees of the New York State Department of Corrections and Community Supervision ("DOCCS").[1] Generally speaking, plaintiff's complaint alleges that the defendants tampered with his food, searched his cell, destroyed legal papers, confiscated his prescription medications, and assaulted him in retaliation for having filed grievances concerning the conditions of his confinement.

Following a series of procedural interventions by the assigned state court judge, defendants removed the action to this court. Defendants have since moved to dismiss plaintiff's claims against certain of the named defendants, arguing that plaintiff's complaint fails to allege the requisite personal involvement of those selected individuals in the constitutional violations asserted. Plaintiff opposes defendants' dismissal motion and has moved to remand the action to state court. For the reasons set forth

---

[1]     On May 7, 2012, Senior District Judge Norman A. Mordue found that plaintiff had accumulated three strikes for purposes of section 1915(g) prior to filing his complaint in the matter. *Johnson v. Rock*, No. 12-CV-0019, Dkt. No. 7 at 5-6 (N.D.N.Y. filed Jan. 5, 2012) (Mordue, J.).

below, I recommend that plaintiff's remand motion be denied and defendants' motion to dismiss be granted.[2]

I.   BACKGROUND[3]

Plaintiff is a prison inmate currently being held in the custody of the DOCCS at the Upstate Correctional Facility ("Upstate"), located in Malone, New York. Dkt. No. 4 at 2. In his complaint, plaintiff alleges that between January and April of 2013, while he was confined at Upstate, defendants Daniel Dumas, a corrections officer, and Brian Gagnon, a corrections sergeant, continuously retaliated against him for the filing of grievances by interfering with his doctor-ordered meals, conducting cell searches, and destroying legal court documents. *Id.* at 3. According to his complaint, the conduct continued with an incident on April 27, 2013, during which defendant Dumas removed plaintiff's meat serving from his dinner, an act allegedly condoned by defendant Gagnon. *Id.* The interference with plaintiff's meals continued on the following day when defendant Dumas,

---

[2]   In their motion, defendants also request that the court stay discovery in this action pending disposition of the motions. Given that this case is in its procedural infancy, and the fact that the court has not yet issued its standard Rule 16 scheduling order, the motion will be granted.

[3]   In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964).

defendant Beane, also a corrections officer, and another unidentified prison guard again removed meat from plaintiff's lunch and dinner trays. *Id.* at 3-4. On April 29, 2013, plaintiff filed a grievance, designated as UST 51878-13, complaining of the food tampering and other retaliatory conduct by defendants Dumas, Gagnon, and Beane. *Id.* at 4. Because the grievance alleged misconduct on the part of corrections officials, it was forwarded to the office of defendant David Rock, the Upstate Superintendent, for investigation. *Id.* Plaintiff alleges that defendants Rock, Bellnier, Haponik, Annucci, Boll, Koenigsmann, and McKoy became aware of the grievance and "failed to act and take corrective action." *Id.* at 8-9.

On April 27, 2013, plaintiff's cell was searched by defendants Wendy Seymour and Francis Jarvis, both of whom are corrections officers. [Dkt. No. 4 at 6](). During the course of that search, defendants Seymour and Jarvis confiscated plaintiff's prescription medication and disrupted his court documents by removing them from envelopes and discarding them on the floor of plaintiff's cell. *Id.* While the search was being conducted, plaintiff was placed in restraints and allegedly assaulted by defendants Dumas, Gagnon, Richard Liebfred, another corrections officer, and John Tatro, a corrections lieutenant. *Id.* at 5. Following the incident, plaintiff was

taken to Upstate's hospital for evaluation, at which time it was determined that stitches were needed to close a wound to his face and that he had suffered a fractured jaw. *Id.* at 6.

On or about May 2, 2013, plaintiff was interviewed concerning the use-of-force incident by Corrections Lieutenant Jerry Laramay, another named defendant. Dkt. No. 4 at 6-7. Plaintiff was scheduled to be transported to an outside hospital facility that same day for repair of his fractured jaw. *Id.* at 7. Defendants Bryan Clark and Brian Grant, two corrections officers who, plaintiff contends, were involved in a prior assault upon him, were assigned to escort plaintiff to the outside medical facility. *Id.* at 7. Although all of the circumstances surrounding this particular allegation are not clear from plaintiff's complaint, plaintiff contends that, because defendants Clark and Grant were assigned to escort him to an outside medical facility by defendants Rock, Bishop, and Uhler, his "jaw remains fracture[d]." *Id.*

Following the incidents on April 27, 2013, prison guards continued to tamper with plaintiff's food. Dkt. No. 4 at 8. On May 2, 2013, defendants Dumas and Jarvis removed food from plaintiff's meal tray, and he was denied his lunch tray altogether by defendants Gagnon and Bishop. *Id.* at 8. Defendant Dumas again tampered with plaintiff's breakfast tray on May

8, 2013. *Id.* Defendant Gagnon was notified of this last incident, but failed to take any action. *Id.*

II.    PROCEDURAL HISTORY

Plaintiff commenced this action in New York State Supreme Court, Franklin County, on October 18, 2013. Dkt. No. 1-1; Dkt. No. 4. Named as defendants in plaintiff's complaint are Corrections Sergeant Brian Gagnon; Corrections Officers Daniel Dumas, Brian Grant, Bryan Clark, Francis Jarvis, Wendy Seymour, Richard Liebfred, and Aaron Beane; Corrections Lieutenants John Tatro and Jerry Laramay; Corrections Captain Reginald Bishop; Deputy Superintendent Donald Uhler; Superintendent David Rock; and Joseph Bellnier, Gayle Haponik, Anthony Annucci, Maureen Boll, Carl Koenigsmann, and Jeff McKoy, all of whom are identified by plaintiff as "Deputy DOCCS Commissioners." Dkt. No. 4.

On October 24, 2013, the matter was assigned to Supreme Court Justice John T. Ellis. Dkt. No. 1-2 at 2. Following that assignment, Justice Ellis issued a decision, dated November 4, 2013, granting plaintiff leave to proceed as a poor person pursuant to New York Civil Practice Law and Rules ("CPLR") § 1101. Dkt. No. 1-3 at 2.

Defendants Beane, Bishop, Clark, Gagnon, Jarvis, and Uhler interposed an answer to plaintiff's complaint on November 27, 2013. Dkt.

No. 1-4 at 2-6. That was followed by the filing of an answer, on December 5, 2013, on behalf of defendants Dumas, Seymour, and Tatro, Dkt. No. 1-5 at 2-5, and another, on December 6, 2013, on behalf of defendants Annucci, Bellnier, Boll, Haponik, Laramay, and Rock. Dkt. No. 1-6 at 2-5. On December 23, 2013, prior to the removal of the action, plaintiff requested the entry of default judgment against certain defendants who, at that time, had yet to appear in the action. Dkt. No. 1-7 at 2-6.

On December 16, 2014, plaintiff served the defendants with written discovery demands, including interrogatories and requests for the production of documents. Dkt. No. 1-9 at 38-43. A subsequent motion brought by the defendants to stay discovery and for a protective order, Dkt. No. 1-9, was granted by decision and order issued by Justice Ellis on April 21, 2014. Dkt. No. 1-12. On the same date, Justice Ellis issued a separate decision and order denying plaintiff's motion for the entry of default judgment against defendants Koenigsmann, McCoy, and Liebfred. Dkt. No. 1-11. In this second decision, Justice Ellis concluded that plaintiff had failed to present proper proof of service of the summons and complaint upon the three defendants named in his motion. *Id.* at 7. Justice Ellis also specifically advised plaintiff that, by simply mailing a summons and complaint to a defendant, he did not satisfy the service requirements

of CPLR § 308(2). *Id.*

Following the issuance of the court's order denying his motion for default judgment, plaintiff applied, *ex parte*, for permission to serve the defendants in this action by mail. Dkt. No. 1-13. On June 17, 2014, Justice Ellis granted the motion, permitting plaintiff to serve the defendants in the action by mail at their places of employment, with a further directive that the summons and complaint, together with a copy of the court's decision, also be mailed to the Office of the New York State Attorney General. *Id.* In accordance with that order, on June 24, 2014, plaintiff effectuated service of process on defendants Liebfred, Koenigsmann, and McCoy. Dkt. No. 1 at 4; Dkt. No. 1-14.

Following service, the action was removed to this court on July 24, 2014. Dkt. No. 1. All of the defendants, with the exception of Grant, who has neither been served nor otherwise appeared in the action, subsequently moved, on July 30, 2014, to dismiss plaintiff's claims asserted against twelve named defendants pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 2. Defendants contend that plaintiff's complaint fails to adequately allege the requisite personal involvement of those certain individuals in the conduct giving rise to the constitutional violations asserted. *Id.* at 2. On or about August 6, 2014,

plaintiff submitted papers in opposition to defendants' motion and cross-moved for an order remanding the case to state court. Dkt. Nos. 6, 7. Defendants since responded in opposition to plaintiff's motion, Dkt. No. 10, and have submitted a reply in further support of their motion to dismiss. Dkt. No. 9. The parties' cross-motions, which are now fully briefed, have been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

A.   Motion to Remand

In his remand motion, plaintiff asserts that the action was improvidently removed to this court. *See generally* Dkt. No. 7. Plaintiff does not challenge this court's jurisdiction to entertain his constitutional claims, which are asserted pursuant to 42 U.S.C. §1983.[4] *Id.* Instead, his

---

[4]    Plaintiff correctly notes that state courts have jurisdiction to adjudicate claims under 42 U.S.C. § 1983. Dkt. No. 7 at 6; *see Haywood v. Drown*, 556 U.S. 729, 731 (2009) ("In our federal system of government, state as well as federal courts have jurisdiction over suits brought pursuant to 42 U.S.C. § 1983[.]"). This concurrent jurisdiction, however, does not preclude removal because the removal provisions of 28 U.S.C. § 1441 *et seq.* give defendants the right to have plaintiff's section 1983 claims adjudicated in a federal district court. *See Dorsey v. City of Detroit*, 858 F.2d 338, 351 (6th Cir. 1988) ("The weight of judicial authority supports the conclusion that a Congressional grant of concurrent jurisdiction in a statute does not imply that removal is prohibited." (quotation marks omitted)); *Pace v. Hunt*, 847 F. Supp. 508, 509-10 (S.D. Miss. 1994) ("[T]he removal statute would be eviscerated if actions such as [those arising under section 1983] were remanded simply because such courts have concurrent jurisdiction.").

argument centers upon the timing of the notice of removal relative to service upon the various named defendants. *Id.*

The statute that addresses the timing of removal notices provides, in relevant part, that

> [t]he notice of removal of the civil action or proceeding shall be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based[.]

28 U.S.C. § 1446(b). Citing *Mermelstein v. Maki*, 830 F. Supp. 180 (S.D.N.Y. 1993), plaintiff asserts that the thirty-day period for removal under section 1446(b) is properly measured from the date upon which the first defendant received the initial pleading. Dkt. No. 7 at 7.

Prior to an amendment in 2011 to section 1446, some courts held that, in a case involving multiple defendants, the removal period was properly measured from receipt of the initial pleading by the first defendant. *Mermelstein*, 830 F. Supp. at 183. Others, however, rejected that position in favor of a rule that measured the removal period from the date of service upon the removing defendant. *See Piacente v. State Univ. of N.Y. at Buffalo*, 362 F. Supp. 2d 383, 385-86 (W.D.N.Y. 2004) (noting a split among the circuits regarding the rules governing removal). The 2011 amendment to section 1446 resolved any ambiguity by providing that

"[e]ach defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or summons described in paragraph (1) to file the notice of removal." 28 U.S.C. § 1446(b)(2)(B); *Pietrangelo v. Alvas Corp.*, 686 F.3d 62, 63 (2d Cir. 2012).

Plaintiff appears to argue that each defendant effectively "received" the summons and complaint when it was mailed to him or her, even though, as Justice Ellis advised, mere mailing did not satisfy the service requirements of the CPLR.[5] Dkt. No. 1-11 at 7; CPLR § 308(2). That argument, however, was laid to rest by the Supreme Court in its decision in *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999). In that case, the Court concluded that mere receipt of a complaint, without formal service, does not trigger the thirty-day removal period under section 1446. *Murphy Bros.*, 526 U.S. at 355-56; *accord, Pietrangelo*, 686 F.3d at 65.

In this instance, because defendants properly filed a notice of removal within thirty days of service upon defendants Leibfred, Koenigsmann, and McKoy of the summons and complaint pursuant to the state court's order, and all defendants previously served and appearing in

---

[5] Ultimately, plaintiff's subsequent mailing of the summons and complaint to each defendant was deemed to be appropriate as an alternative method of service under CPLR § 308(5) by court order issued by Justice Ellis. Dkt. No. 1-13.

the action consented to the removal, I recommend that plaintiff's motion to remand this action to state court be denied.[6] [Dkt. No. 1 at 4](); [Dkt. No. 1-15]().

### B. Defendants' Dismissal Motion

In their motion, defendants seek dismissal of plaintiff's claims against defendants Rock, Bishop, Uhler, Laramay, Bellnier, Haponik, Annucci, Boll, Koenigsmann, McCoy, Clark, and Grant based upon the lack of any allegations in the plaintiff's complaint plausibly suggesting their personal involvement in any of the constitutional claims asserted. [Dkt. No. 2-1 at 2-5]().

### 1. Governing Standard

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading using a standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand

---

[6] Because defendant Grant has not yet been served, his consent is not necessary for removal. *See* 28 U.S.C. 1446(b)(2)(A) (requiring only those "defendants who have been properly joined and served" to "join in or consent to the removal of the action"). In addition, the fact that plaintiff is barred from proceeding in federal court *in forma pauperis* pursuant to 28 U.S.C. § 1915(g) does not mandate remand. *Lloyd v. Benton*, 686 F.3d 1225, 1227-28 (11th Cir. 2012); *Lisenby v. Lear*, 674 F.3d 259, 262-63 (4th Cir. 2012); *see also Johnson v. Rock*, No. 14-CV-0815, 2014 WL 7410227, at *5 (N.D.N.Y. Dec. 31, 2014) (Hurd, J., *adopting report and recommendation by* Baxter, M.J.).

scrutiny. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). While modest in its requirements, that rule commands that a complaint contain more than mere legal conclusions. *See id.* at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). The tenet that a court must accept as true all of the allegations contained in a complaint does not apply, however, to legal conclusions. *Iqbal*, 556 U.S. at 678.

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570) (alterations omitted).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant, whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson*, 551 U.S. at 94 ("'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (citation omitted)); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("[W]hen a plaintiff proceeds *pro se*, a court is obliged to construe his pleadings liberally." (quotation marks and alterations omitted)); *Kaminski v. Comm'r of Oneida Cnty. Dep't of Soc. Servs.*, 804 F. Supp. 2d 100, 104 (N.D.N.Y. 2011) (Hurd, J.) ("A pro se complaint must be read liberally.").

2. Analysis

Defendants' dismissal motion is centered upon the sufficiency of the allegations contained in plaintiff's complaint with respect to the personal involvement of defendants Rock, Bishop, Uhler, Laramay, Bellnier, Haponik, Annucci, Boll, Koenigsmann, McKoy, Clark, and Grant. Dkt. No. 2-1 at 2-5. It is well-established that "[p]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)). As the Supreme Court has noted, a defendant may only be held accountable for his actions under section 1983. *See Iqbal*, 556 U.S. at 683 ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic."). To prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law." *Hendrickson v. U.S. Attorney Gen.*, No.

91-CV-8135, 1994 WL 23069, at *3 (S.D.N.Y. Jan. 24, 1994).[7]

Although the rule is no different with regard to individuals sued based on their role as a supervisor, section 1983 does not provide for liability based on *respondeat superior*. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *see also Wright*, 21 F.3d at 501. The Second Circuit has held that to establish responsibility on the part of a supervisory official for a civil rights violation, a plaintiff must demonstrate that the individual (1) directly participated in the challenged conduct; (2) after learning of the violation through a report or appeal, failed to remedy the wrong; (3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in managing the subordinates who caused the unlawful event; or (5) failed to act on information indicating that unconstitutional acts were occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995);[8] *see also Richardson*, 347

---

[7]     Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

[8]     Subsequent to issuance of the Second Circuit's decision in *Colon*, the Supreme Court addressed the question of supervisory liability in its decision in *Iqbal v. Hasty*, 490 F.3d 143, 152-53 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 554 (2009). Although the issue has been discussed in several relatively recent decisions, the Second Circuit has yet to squarely address the impact of *Iqbal* upon the categories of supervisory liability addressed in *Colon. See, e.g., Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) ("We express no view on the extent to which [*Iqbal*] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]" (citation omitted)); *see also Reynolds v. Barrett*, 685 F.3d 193, 206 n.14 (2d Cir. 2012) ("*Iqbal*

F.3d at 435.

In this instance, turning first to defendants Clark and Grant, the allegations contained in plaintiff's complaint are limited.[9] It is alleged that, on May 2, 2013, those individuals were assigned to transport Johnson to an outside facility to have his jaw repaired. Dkt. No. 4 at 7. Although plaintiff further alleges that defendants Clark and Grant are responsible for the fact that his jaw is not currently repaired, there are no allegations in the complaint that explain how or why they are responsible. *Id.* Even liberally construed, plaintiff's complaint fails to allege facts plausibly suggesting that defendants Clark and Grant violated plaintiff's constitutional rights. Accordingly, I recommend dismissal of plaintiff's claims against them.

Relatedly, plaintiff contends that defendants Rock, Bishop, and Uhler are responsible, based on their roles as supervisors, for acting with gross negligence in assigning defendants Clark and Grant to transport plaintiff on May 2, 2013. Dkt. No. 4 at 7; Dkt. No. 6 at 5. Because I have concluded that the complaint fails to plausibly allege the requisite personal involvement of defendants Clark and Grant, defendants Rock, Bishop, and

has, of course, engendered conflict within our Circuit without the continuing vitality of the supervisory liability test set forth in [*Colon*,] . . . but the fate of *Colon* is not properly before us[.]").

[9]     As was discussed above in Part III.A. of this report, defendant Grant has not yet been served or appeared in the action.

Uhler cannot be held liable in their supervisory capacities for the absence of a constitutional violation committed by their subordinates.[10] *See, e.g., Jacoby v. Conway*, No. 10-CV-0920, 2013 WL 1559292, at *12 (W.D.N.Y. Apr. 10, 2013) ("[S]upervisory defendants cannot be held liable for inadequate training or supervision when the officers involved in the incident do not violate plaintiff's constitutional rights. Absent a violation, plaintiff's allegations against [the superintendent and deputy superintendent] also fails.").

Plaintiff also alleges that defendant Laramay is responsible for violating his constitutional rights, but the complaint fails to plausibly allege a basis for any claim against this defendant. Plaintiff alleges that on May 2, 2013, he was interviewed by defendant Laramay regarding the use-of-force incident that had occurred on April 27, 2013. Dkt. No. 4 at 6. In addition, plaintiff's complaint contains the following allegation involving defendant Laramay:

---

[10]     To the extent plaintiff has asserted a constitutional claim against defendant Bishop based on an allegation that he denied plaintiff a single meal on May 2, 2013, I recommend it be dismissed. *See Konovalchuk v. Cerminaro*, No. 11-CV-1344, 2014 WL 272428, at *21 (N.D.N.Y. Jan. 24, 2014) (D'Agostino, J., *adopting report and recommendation by* Hummel, M.J.) (dismissing the plaintiff's conditions of confinement claim where the plaintiff alleged he missed two consecutive meals during a transport); *McDonald v. Rivera*, No. 06-CV-0410, 2008 WL 268345, at *8 (N.D.N.Y. Jan. 30, 2008) (Kahn, J., *adopting report and recommendation by* Peebles, M.J.) (dismissing the plaintiff's conditions of confinement claim where he alleged he was denied one meal and participation in a single recreation period).

> On May 2, 2013 after prison guard (Dumas) had
> broken plaintiff's jaw by kicking him in his face,
> Sergeant (Gagnon) permitted this prison guard
> (Dumas) and the other prison guard (Rock) plaintiffs
> [sic] had allegedly spitted upon be the escorts to
> remove him from the interview room. As well as
> Lieutenant Jerry Laramay.

*Id.* at 7. Liberally construed, it appears plaintiff contends that defendant Laramay was partially responsible for permitting the same two corrections officers to escort plaintiff after an incident in which plaintiff allegedly spat on them. *Id.* Neither of the allegations involving defendant Laramay, however, plausibly suggest he violated any of plaintiff's constitutional rights. Plaintiff does not, for instance, (1) contend that defendant Laramay ignored plaintiff's complaints of the use-of-force incident on April 27, 2013, or (2) allege that he suffered a constitutional violation during the escort by defendant Dumas and another corrections officer. Absent such allegations, plaintiff's claims against defendant Laramay are also subject to dismissal for lack of personal involvement.

Finally, plaintiff's second cause of action, asserted against defendants Rock, Bellnier, Haponik, Annucci, Boll, Koenigsmann, and McKoy, is based on his allegation that they "are supervisors and are assigned pursuant to Directive 4040 (Inmate Grievance Programs), and are on the Central Office [R]eview Committee." Dkt. No. 4 at 8. Plaintiff

further contends that all of those individuals were "informed of the allegations of wrong doing [sic] by the defendants at the Upstate Correctional Facility thr[ough] a[] grievance complaint (UST 51878-13) and failed to act and take corrective action." *Id.* at 8-9. These allegations, however, are not sufficient to plausibly suggest the personal involvement of defendants Rock, Bellnier, Haponik, Annucci, Boll, Koenigsmann, or McKoy under *Colon.* The grievance of which the supervisory officials were allegedly aware, grievance number UST 51878-13, was submitted on April 29, 2013, and concerned alleged retaliatory conduct by defendants Dumas, Gagnon, and Beane. *Id.* at 4. Plaintiff fails to allege, however, how defendants Rock, Bellnier, Haponik, Annucci, Boll, Koenigsmann, and McKoy became aware of the grievance. Instead, plaintiff conclusorily alleges that, after becoming aware of the grievance, the individuals did not take any steps to remedy the issue. This is not sufficient to plausibly suggest the personal involvement of supervisory officials.[11]

---

[11]     The court is mindful of the Second Circuit's decision in *Grullon v. New Haven*, 720 F.3d 133, 141 (2d Cir. 2013), in which the court found error in the district court's decision to dismiss with prejudice the plaintiff's claim against the defendant-prison warden for lack of personal involvement where the plaintiff had alleged that he mailed a letter to the defendant-prison warden advising him of his conditions of confinement. *Grullon*, 720 F.3d at 141; *see also Grullon v. City of New Haven*, No. 10-CV-0776, Dkt. No. 25 at 58-6 (D. Conn. filed on May 18, 2010). The Second Circuit concluded that, "[a]t the pleading stage," inmate-plaintiffs are "entitled to have the court draw the reasonable inference" that the supervisory official received the "[l]etter, read it, and thereby became aware of the alleged conditions of which [the plaintiff] complain[s]" if

Similarly, plaintiff's claim fails to the extent he relies on the fourth *Colon* prong, which provides for supervisor liability in circumstances where a supervisor was grossly negligent in managing subordinates. Dkt. No. 6 at 5; *Colon*, 58 F.3d at 873. In an effort to satisfy this requirement, plaintiff maintains, in opposition to defendants' motion to dismiss, as follows:

> That the supervisory defendants [Rock, Bellnier, Haponik, Annucci, Boll, Koenigsmann, and McKoy] also falls under Colon-v-Coughlin (4) and (5) requirement, where through inmate grievance complaints filed by Johnson from January 2013 through April 2013, by 'grossly negligent' in supervising these Upstate subordinates whom committed the wrongful acts within the complaint.

Dkt. No. 6 at 5. Even liberally construed, this conclusory allegation does not plausibly suggest defendants Rock, Bellnier, Haponik, Annucci, Boll, Koenigsmann, and McKoy acted in a manner that would demonstrate gross negligence.

---

the letter (or other correspondence) "contain[s] factual allegations indicating that the [it] was sent to the [supervisory official] at an appropriate address and by appropriate means[.]" *Grullon*, 720 F.3d at 141. In this case, however, plaintiff's complaint fails to allege any facts regarding the means by which defendants Rock, Bellnier, Haponik, Annucci, Boll, Koenigsmann, and McKoy became aware of grievance number UST 51878-13. The absence of this allegation renders it impossible to draw the "reasonable inference" that any of those individuals received the grievance and read it, as urged in *Grullon*.

C.    <u>Whether to Permit Amendment</u>

If adopted by the assigned district judge, the recommendations set forth above would result in the dismissal of plaintiff's claims against twelve defendants based upon lack of personal involvement. The next issue to be addressed is whether the court should permit plaintiff to amend his complaint to cure the deficiencies identified in connection with the claims asserted against those individuals.

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F. Supp. 986, 1003 (E.D.N.Y.1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). Here, given the procedural history of this action, the court must determine whether plaintiff is entitled to the benefit of this general rule.

Most of the deficiencies identified in plaintiff's complaint could feasibly be cured through the inclusion of greater factual detail.

Accordingly, I recommend that plaintiff be permitted to amend his complaint, if desired, to address the deficiencies identified in this report.

In the event plaintiff chooses to file an amended complaint, he is advised that the law in this circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'" *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *Pourzandvakil v. Humphry*, No. 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in his amended complaint, plaintiff must clearly set forth the facts that give rise to the claim, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of each of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass*, 790 F.2d at 263. Finally, plaintiff is informed that any such amended complaint will replace the existing original complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference

any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ('It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (quotation marks omitted)).

IV.    SUMMARY AND RECOMMENDATION

Addressing plaintiff's motion to remand, I conclude that this court possesses subject matter jurisdiction to entertain plaintiff's claims, and I discern no defect in the removal process warranting remand. Turning to defendants' dismissal motion, plaintiff's complaint contains allegations against various defendants who are alleged to have actively participated in the events giving rise to his claims. The allegations against some of those defendants are deficient in that they fail to allege their direct role in a constitutional deprivation. Certain other defendants are sued based on their roles as supervisors and plaintiff's contention that, through a grievance he filed on April 29, 2013, they became aware of the alleged constitutional deprivations but failed to remedy them. Plaintiff's allegations against the supervisor-defendants fail to establish their personal involvement in the violations alleged. Based upon the foregoing it is hereby respectfully

RECOMMENDED that plaintiff's motion to remand this action to state court (Dkt. No. 7) be DENIED; and it is further

RECOMMENDED that defendants' motion to dismiss the claims asserted against certain defendants in the action be GRANTED (Dkt. No. 2), and that all of plaintiff's claims against defendants Rock, Bishop, Uhler, Laramay, Bellnier, Haponik, Annucci, Boll, Koenigsmann, McKoy, Clark, and Grant be DISMISSED with leave to replead.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that, pending a final disposition of the two motions now before the court, and the court's issuance of the standard Rule 16 scheduling order, discovery in the action is hereby STAYED; and it is further

ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

_____
David E. Peebles
U.S. Magistrate Judge

Dated:     February 26, 2015
           Syracuse, New York


H
Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Dale HENDRICKSON, Plaintiff,
v.
UNITED STATES ATTORNEY GENERAL, G.L.
Hershberger, United States Bureau of Prisons, Gary
Morgan, Pamela Ashline, Kenneth Walicki, Hulet
Keith, Otisville Medical Department, Defendants.

No. 91 CIV. 8135.
Jan. 24, 1994.

MEMORANDUM AND ORDER
McKENNA, District Judge.

**\*1** On December 4, 1991, pro se plaintiff Dale
Hendrickson ("Plaintiff" or "Hendrickson"), an in-
mate then in confinement at the Federal Correction-
al Institution in Otisville, New York ("Otisville"),
filed this action for injunctive relief and damages
based upon alleged violations of his rights under
the United States Constitution, Amendments I, IV,
V, VI, IX, and XIII, and upon violations of various
laws and/or regulations governing prison adminis-
tration.[FN1] The Complaint named as defendants
G.L. Hershberger ("Hershberger"), the United
States Attorney General ("Attorney General"), Gary
Morgan ("Morgan"), Pamela Ashline ("Ashline"),
Kenneth Walicki ("Walicki"), Hulett Keith
("Keith"), the Bureau of Prisons ("BOP"), and the
Otisville Medical Department ("OTV Medical De-
partment") (collectively "Defendants"). Defendants
moved for judgment on the pleadings pursuant to
Rule 12(c) of the Federal Rules of Civil Procedure,
or, in the alternative, for summary judgment pursu-
ant to Rule 56 of the Federal Rules of Civil Proced-
ure. For the reasons set out below, Defendants' Rule
12(c) motion is granted.

I.

Defendants move to dismiss Plaintiff's Com-
plaint, pursuant to Rule 12(c) of the Federal Rules
of Civil Procedure, for failure to state a claim upon
which relief can be granted. Rule 12(c) provides:

After the pleadings are closed but within such
time as not to delay the trial, any party may move
for judgment on the pleadings. If, on a motion for
judgment on the pleadings, matters outside the
pleadings are presented to and not excluded by
the court, the motion shall be treated as one for
summary judgment and disposed of as provided
in Rule 56, and all parties shall be given reason-
able opportunity to present all material made per-
tinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(c). "[T]he same standards that
are employed for dismissing a complaint for failure
to state a claim under Fed.R.Civ.P. 12(b)(6) are ap-
plicable" to a Rule 12(c) motion to dismiss for fail-
ure to state a claim upon which relief can be gran-
ted. *See Ad–Hoc Comm. of the Baruch Black &
Hispanic Alumni Ass'n v. Bernard M. Baruch Col-
lege,* 835 F.2d 980, 982 (2d Cir.1987); *see also Vi-
acom Int'l. Inc. v. Time, Inc.,* 785 F.Supp. 371, 375
n. 11 (S.D.N.Y.1992); 5A Charles Wright and Ar-
thur R. Miller, *Federal Practice and Procedure* ¶
1367, at 515–16 (1990). Thus, the Court must read
the Complaint generously, drawing all reasonable
inferences from the complainant's allegations. *See
California Motor Transp. v. Trucking Unlimited,*
404 U.S. 508, 515 (1972). Moreover,
"consideration is limited to the factual allegations
in [the] amended complaint, which are accepted as
true, to documents attached to the complaint as an
exhibit or incorporated in it by reference, to matters
of which judicial notice may be taken, or to docu-
ments either in plaintiff['s] possession or of which
plaintiff[ ] had knowledge and relied on in bringing
suit." *Brass v. American Film Technologies, Inc.,*
987 F.2d 142 (2d Cir.1993); *accord Allen v. West-
point–Pepperell, Inc.,* 945 F.2d 40, 44 (2d
Cir.1991); *Cortec Indus., Inc. v. Sum Holding L.P.,*
949 F.2d 42, 47–48 (2d Cir.1991), *cert. denied,* 112
S.Ct. 1561 (1992); *Frazier v. General Elec. Co.,*
930 F.2d 1004, 1007 (2d Cir.1991). Defendants,
therefore, are entitled to dismissal for failure to

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)
**(Cite as: 1994 WL 23069 (S.D.N.Y.))**

state a claim only if the Court finds beyond a doubt that "plaintiff can prove no set of facts" to support the claim that plaintiff is entitled to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46 (1957).

**\*2** Because the 3(g) statement and declarations submitted to this Court by Defendants have not been considered and are hereby excluded from the record, the Court renders its judgment on the pleadings pursuant to Rule 12(c).

## II.

Drawing all inferences in favor of the Plaintiff, *Miller v. Polar Molecular Corp.,* 12 F.3d 1170, 1993 WL 527434 (2d Cir.), the facts are as follows.

During Hendrickson's confinement at Otisville, certain video tapes which had been supplied to him by the government were "systematically and maliciously confiscated"; audio tapes and legal materials also were removed from Plaintiff's possession while he was a pre-trial detainee at Otisville. In retaliation for his bringing legal materials into the Otisville compound area, Plaintiff claims, he was placed in administrative detention. Compl. at 1 (presumably ¶ A.)

Hendrickson also claims at various times to have been wrongly isolated from the general prison population based on alleged and allegedly erroneous OTV Medical Department claims that he had tuberculosis. *Id.* ¶ B. During these periods of medical confinement, Hendrickson claims that the "4A unit team" denied him personal visits, his right to send mail, and telephone communications and consultations necessary to his legal representation. *Id.* ¶ C.

Hendrickson claims that as part of his medical confinement he was "subjected to ruthless and inhumane [d]isciplinary action from the D[isciplinary] H [earing] O[fficer]," and was for 15 days placed in administrative detention and for 30 days deprived of commissary, visitation, and phone privileges. *Id.* ¶ D.

Hendrickson further alleges that commissary items that he had in his possession before entering medical confinement were wrongly confiscated from him, and while in such confinement he was assaulted and searched by the "OTV Riot Squad." *Id.* ¶ E. In addition, he claims, commissary receipts, as well as legal documents and other legal materials were confiscated from him. *Id.* ¶ F.

## III.

Defendants argue that Plaintiff fails to state a claim for which relief may be granted. Of course, in considering a pro se pleading, the Court takes into consideration the special circumstances of pro se litigants. As the Second Circuit has often noted, "special solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment." *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988); *accord, e.g., Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir.1988); *Beacon Enters., Inc. v. Menzies,* 715 F.2d 757, 767 (2d Cir.1983). We apply the same solicitous standard to the instant motion to dismiss.

Plaintiff, however, has failed to present to this Court either a colorable theory of violation of legal duties or facts to support a claim that might be inferred from the pleadings. Even assuming the truth of Plaintiff's allegations, the Court is left without a cognizable claim before it.

**\*3** At the outset, the Court notes that to the extent that the Complaint seeks injunctive relief from conditions of Plaintiff's treatment while at Otisville as a pre-trial detainee, the claim is now moot as Plaintiff has since been transferred to the United States Penitentiary in Lompoc, California following his conviction at trial. Hendrickson's Complaint also fails to the extent that it seeks damages from the United States government or government officials in their official capacity. Because the United States government enjoys sovereign immunity, it can be sued only to the extent it so consents. *United States v. Mitchell,* 445 U.S. 535, 538 (1980) (quoting *U.S. v. Sherwood,* 312 U.S. 584, 586 (1941)). No such immunity has been waived in

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

suits for damages arising from constitutional violations. *Keene Corp. v. United States,* 700 F.2d 836, 845 n. 13 (2d Cir.), *cert. denied,* 464 U.S. 864 (1983). Thus, the only possible redress remaining available to Plaintiff for the harms alleged is a *Bivens* action FN2 against government officials in their personal capacities for actions taken under the color of governmental authority.

As Defendants point out, however, Plaintiff has nowhere, other than in the caption of the Complaint, mentioned by name any of the individual named Defendants. Defs.' Mem.Supp.Mot.Dismiss or Summ.Jt. at 2. It is true that Plaintiff did in the body of the Complaint name the "4A Unit Team," the "DHO," and the "OTV Riot Squad," but these designations of group actions undifferentiated as to individuals and of official titles unconnected to any individual names do not allege the actionable *individual* behavior necessary to sustain a *Bivens* claim.

In a *Bivens* action, where Defendants are sued in their personal capacities, actionable behavior must be alleged as to individuals. *See, e.g., Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977); *Barbera v. Smith,* 836 F.2d 96, 99 (2d Cir.1987), *cert. denied,* 489 U.S. 1065 (1989). A complaint that fails to make any specific factual allegations of "direct and personal responsibility on the part of any of the named defendants in regard to the loss of any of [plaintiff's] property" must be dismissed. *Lee v. Carlson,* 645 F.Supp. 1430, 1436 (S.D.N.Y.1986).

More importantly, the light in which a pro se complaint may be considered does not burn so brightly as to blind the court as to the rights of defendants who are entitled to have claims against them alleged with sufficient clarity as to make possible a defense. Even in a pro se complaint, claims must "specify in detail the factual basis necessary to enable [defendants] intelligently to prepare their defense ..." *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977). Otherwise, blameless parties would be subject to damages claims for free-floating innuendo. To be sufficient before the law, a complaint

must state precisely who did what and how such behavior is actionable under law. Although the Court may make special efforts to understand the underlying claim of a vague, confusing, or poorly crafted pro se complaint that it would not undertake in connection with a claim prepared by legal counsel, it cannot do so to the extent that this would work an injustice to defendants, whose rights also must be protected. A defendant who is alleged to be liable for his actions has a right to have the claims against him spelled out with a basic degree of clarity and particularity. *See supra* at 7. Although some of the harms alleged by Plaintiff might conceivably be of some substance, the Court cannot understand from the documents before it which defendants are alleged to have participated in which allegedly actionable behavior. The Court cannot on such a basis subject a party to potential liability. *See* Defs' Mot. at 9, 10.

*Summary and Order*

**\*4** For the reasons stated, Plaintiff has failed to plead a colorable case. Defendants' motion to dismiss is granted.

> FN1. The Complaint states only that "Bureau of Prison institutional Law" was violated; subsequent documents filed by Plaintiff imply the violation of specific prison policies. *See, e.g.,* Letter from Hendrickson to Judge McKenna of 10/13/93 at 2 (citing BOP Policy Statement 1315.3 purportedly concerning prisoner access to legal materials while in administrative detention).

> FN2. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971).

S.D.N.Y.,1994.
Hendrickson v. U.S. Atty. Gen.
Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)
**(Cite as: 1994 WL 23069 (S.D.N.Y.))**

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 1559292 (W.D.N.Y.)
**(Cite as: 2013 WL 1559292 (W.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
W.D. New York.
Brent JACOBY, Plaintiff,
v.
James CONWAY, et al., Defendants.

No. 10CV920.
April 10, 2013.

Brent Jacoby, Bay Minette, AL, pro se.

Kim S. Murphy, Nys Attorney General's Office, Buffalo, NY, for Defendants.

### Order

HUGH B. SCOTT, United States Magistrate Judge.

*1 Before the Court is defendants' motion for summary judgment (Docket No. 35 FN1). Responses to this motion were due by March 15, 2013, with any reply due by March 29, 2013, and this motion was deemed submitted (without oral argument) on March 29, 2013 (Docket No. 47). On December 14, 2011, the parties consented to proceed before the undersigned (Docket No. 7).

> FN1. In support of their motion, defendants submitted their individual Declarations, Docket Nos. 38–45; their Statement of Facts, Docket No. 36; their Memorandum of Law, Docket No. 37; the Declaration of Dr. Jadow Row, Docket No. 48; exhibit of plaintiff's medical records, filed under seal, Docket No. 49, Rao Ex. A; their attorney's Reply Declaration, Docket No. 52.
>
> In opposition, plaintiff submits his Memorandum of Law with six pages from plaintiff's medical records as exhibits, Docket No. 50.

Plaintiff is proceeding here *pro se* and is currently detained in a county jail in Alabama (*see* Docket No. 36, Defs. Statement ¶ 1). The remaining defendants are the Attica Correctional Facility Superintendent James Conway; Deputy Superintendent Paul Chappius; New York State Department of Corrections and Community Supervision ("DOCCS") sergeants Robert Dunbar and Sean Warner; corrections officers Gary Pritchard, Scott Bosworth, Keith Swack, and Matthew Rademacher (*see generally* Docket Nos. 4, 5 (Answers to Complaint); 20, 22, 24 (Answers to Amended Complaint); 40, 39, 41, 45, 42, 38, 44, 43 (Declarations of defendants); 36, Defs. Statement ¶¶ 2–9). Plaintiff moved for leave to file an Amended Complaint (Docket No. 14), which was granted (Docket No. 15), and plaintiff filed his Amended Complaint (Docket No. 16).

Plaintiff moved to proceed *in forma pauperis* (Docket No. 2), which was granted but ordering the dismissal of claims against some defendants, including John Does (Docket No. 3). After being detained in Alabama, plaintiff moved for appointment of counsel (Docket No. 26), which was denied without prejudice (Docket No. 28).

### BACKGROUND

Plaintiff sued defendants for violation of his civil rights, pursuant to 42 U.S.C. § 1983, while he was incarcerated at the Attica Correctional Facility ("Attica") (Docket No. 16, Am. Compl.). On July 7, 2010, an Hispanic inmate got into an argument with a corrections officer and had his cell searched (*id.* ¶¶ 1–2). Before officers got to that cell, plaintiff yelled out man down to let inmates know that the officers were on the cell block floor (*id.* ¶ 3). Plaintiff alleges that the Hispanic inmate then was beaten by officers (*id.* ¶ 4). Later that evening, plaintiff went downstairs to go outside for recreation, but never made it to recreation because he was detained by officers. One of the officers called plaintiff a "spic and nigger lover" and punched plaintiff in his face. (*Id.* ¶¶ 5–6.) He claims that he

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 1559292 (W.D.N.Y.)
**(Cite as: 2013 WL 1559292 (W.D.N.Y.))**

was punched by defendant Pritchard and choked by defendant Swack as Swack lifted plaintiff off the ground by plaintiff's neck (*id.* ¶ 6). Plaintiff alleges that defendant Rademacher also punched him while plaintiff was in the air (*id.*). Plaintiff ran away and then passed out from anxiety attack or seizure (*id.*). Plaintiff accuses Sergeant Warner of observing this incident and doing nothing to stop it (*id.*). Plaintiff complains that he had mental health diagnoses and had seizures prior to this incident (*id.* ¶ 7). Plaintiff was helped back to his cell and the next morning went to sick call (*id.* ¶ 8), claiming that he had black and blue marks around his eyes, welts on his neck, and a cut under his eye like a strawberry (*id.* ¶ 9). He claims that he has a permanent bruise on the side of his right eye, suffered dizzy spells, and blurry vision requiring him to wear glasses (*id.* ¶ 10). Plaintiff, who had given his identification card at the start of this incident, did not get the card back and was denied access to the commissary on July 15, 2010 (*id.* ¶ 11); he had a new one issued to him on July 21, 2010 (*id.*).

**\*2** On July 15, 2010, plaintiff alleges that an unknown officer, perhaps Swack, punched him and called him a "white nigger" and that if plaintiff "wanted to hang with spics and niggers he would treat him like one" (*id.* ¶ 13). On July 20, 2010, plaintiff left his cell but was put up against the wall by officers while Sergeant Dunbar watched (*id.* ¶ 14). These officers then grabbed plaintiff by his legs, pulled off his boots and squeezed his feet and toes "really hard" and twisted his legs "in dangerous angles to inflict pain," apparently because the officers were upset for plaintiff helping the unnamed Hispanic inmate (*id.*). Plaintiff was told to put his boots back on and, as he was trying to go upstairs, defendant Bosworth ran through the door and slammed plaintiff into the wall by his shoulder, yelling insults and obscenities (*id.* ¶ 15). He contends that he was losing weight and constantly hungry during this period and was tired of the abuse (*id.* ¶ 16). At this point plaintiff wrote to Superintendent Conway and Deputy Superintendent Chappius about these incidents (*id.*). Plaintiff was taken

to "medical" by Sergeant Dunbar but plaintiff did not report any injuries there since Dunbar was also in the room (*id.* ¶ 17).

On July 24, 2010, plaintiff was returned to C–Block, where he claims that officers would not allow him to eat when he was housed there (*id.* ¶ 19). On July 26, while in C–Block and returning from chow, plaintiff alleges that he was assaulted by another inmate but plaintiff would not identify the assailant to Sergeant Dunbar (*id.* ¶ 21); plaintiff does not claim that Dunbar failed to protect plaintiff from that inmate. Plaintiff was to be moved to A–Block and protective custody but plaintiff refused transfer there, instead he was placed in involuntary protective custody in B–Block (*id.* ¶¶ 23–25).

*Defense Motion for Summary Judgment*

According to defendants' Statement (Docket No. 36), plaintiff was an inmate in Attica from July 7 to 27, 2010 (*id.* ¶ 1). Plaintiff alleges violations of his constitutional rights in the excessive use of force on July 7, 2010, by Pritchard, Swack, and Rademacher, while Sergeant Warner watched and excessive use of force and verbal harassment on July 20, 2010, by Bosworth, while Sergeant Dunbar watched (*id.* ¶ 10). As for the July 7 incident, Warner wrote a memorandum (Docket No. 45, Warner Decl. ¶ 4, Ex. A; Docket No. 36, Defs. Statement ¶ 11), stating that while onsite supervisor for C–Block, Warner supervised his officers in conducting spot pat down frisks of inmates which may have included plaintiff (Docket No. 45, Warner Decl., Ex. A; Docket No. 36, Defs. Statement ¶ 12). Warner states that these frisks occurred without incident and without any inmate assaults (Docket No. 45, Warner Decl. ¶¶ 3, 5, Ex. A; Docket No. 36, Defs. Statement ¶ 12). Warner states that he did not recall the incidents alleged by plaintiff and denies assaulting him or witnessing corrections officers assaulting plaintiff (Docket No. 45, Warner Decl. ¶ 3). Pritchard, Rademacher, and Swack each wrote memoranda on this incident (Docket No. 36, Defs. Statement ¶¶ 13–15; Docket No. 42, Pritchard Decl.

Not Reported in F.Supp.2d, 2013 WL 1559292 (W.D.N.Y.)
**(Cite as: 2013 WL 1559292 (W.D.N.Y.))**

¶ 5, Ex. A; Docket No. 43, Rademacher Decl. ¶ 5, Ex. A; Docket No. 44, Swack Decl. ¶ 5, Ex. A). Each officer denies assaulting plaintiff (Docket No. 42, Pritchard Decl. ¶¶ 3, 5; Docket No. 43, Rademacher Decl. ¶¶ 3, 5; Docket No. 44, Swack Decl. ¶¶ 3, 5). Pritchard denies knowing plaintiff (Docket No. 42, Pritchard Decl., Ex. A) and, had he used force against plaintiff a use of force report would have been made and no such report was written (*id.* ¶ 6).

**\*3** As for the July 20 incident, Sergeant Dunbar and Boswell also wrote memoranda (Docket No. 36, Defs. Statement ¶¶ 17–20; Docket No. 41, Dunbar Decl., Ex. A; Docket No. 38, Boswell Decl., Ex. A), also declaring that the pat frisk done that day were performed in a professional manner and that no assaults occurred.

Plaintiff filed a grievance concerning these two incidents but the grievance was investigated and denied as unfounded (Docket No. 36, Defs. Statement ¶¶ 21–22; *see, e.g.,* Docket No. 40, Conway Decl. ¶ 3). Plaintiff, in filing this grievance and other communications, only carbon copied defendant Chappius and never directly addressed any correspondence to Chappius (Docket No. 36, Defs. Statement ¶¶ 35–36, 37). After plaintiff wrote additional letters to the Superintendent's office, a further investigation was conducted and no credible evidence was produced to support plaintiff's claims (*id.* ¶¶ 23–24, 39). Defendants conclude that there are no documents to support his claims (*id.* ¶ 25). Superintendent Conway's sole involvement in these incidents was to commence an investigation of plaintiff's complaints (*id.* ¶¶ 38, 40).

Plaintiff went to the Attica health facility the next day from the July 7 incident (*id.* ¶ 26; Docket No. 48, Rao Decl.). On July 8, 2010, plaintiff told medical staff that he fell on July 7 after feeling warm and sweaty and fell on the stairs (Docket No. 36, Defs. Statement ¶ 27; Docket No. 48, Rao Decl. ¶ 5; Docket No. 49, Ex. A, pl. medical record, Ambulatory Health Record, July 8, 2010; *see also* Docket No. 50, Pl. Memo. Ex. A). The only injuries

noted on July 8 were a small bruise and an abrasion on plaintiff's right cheek; there was no swelling on the back of his head detected and plaintiff denied nausea or vision problems (Docket No. 36, Defs. Statement ¶ 28; Docket No. 48, Rao Decl. ¶ 5; Docket No. 49, Ex. A, pl. medical record, Ambulatory Health Record, July 8, 2010; *see also* Docket No. 50, Pl. Memo. Ex. A). Plaintiff was prescribed over-the-counter pain medication and a cold compress (Docket No. 36, Defs. Statement ¶ 29; Docket No. 49, Ex. A, pl. medical record, Ambulatory Health Record, July 8, 2010; *see also* Docket No. 50, Pl. Memo. Ex. A). Plaintiff sought medical attention on July 21, 2010, a day after the July 20 incident, but at the direction of Attica supervisors rather than at his own request (*id.* ¶ 30). Plaintiff was evaluated on July 21 and was found not to have any injuries (Docket No. 36, Defs. Statement ¶ 31) or on July 22 (*id.* ¶ 32; *see also* Docket No. 50, Pl. Memo. Ex. A (pl. medical record, Ambulatory Health Record, July 21, 2010)). Plaintiff sought treatment from an inmate cutting him on July 27 (Docket No. 36, Defs. Statement ¶ 33). Plaintiff did not seek further treatment for his alleged injuries (*id.* ¶ 34).

Defendants argue that plaintiff fails to allege an Eighth Amendment cruel and unusual punishment claim (Docket No. 37, Defs. Memo. at 4–8). Plaintiff's medical records do not show any significant injury from either the July 7 or July 20 incidents for the objective element of an excessive force claim (*id.* at 7–8). Plaintiff next alleges that he was retaliated against for assisting the Hispanic inmate. Defendants argue that this retaliation claim needs to be examined "with skepticism and particular care" (*id.* at 8–9), *see Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995). Defendants reject plaintiff's retaliation claim since his speech (advising the Hispanic inmate of the coming officers) was not protected speech (*id.* at 9–10), *see Duamutef v. O'Keefe,* 98 F.3d 22, 24–25 (2d Cir.1996) (no constitutional right to circulate petitions). Defendants next deny that Bosworth's alleged verbal harassment rose to the level of an Eighth Amendment violation and

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

fails to state a claim under the First Amendment as being (at worst) mere threats of harm without actual harm (*id.* at 10–11). Next, they argue that plaintiff fails to state an Equal Protection Clause cause of action (*id.* at 11–12). Defendants conclude that plaintiff fails to show the personal involvement of defendants Conway or Chappius to make them liable for civil rights violations (*id.* at 12–16). Finally, defendants claim entitlement to qualified immunity (*id.* at 16–18).

**\*4** Plaintiff responds that the incidents occurred as he alleged (Docket No. 50). In particular, plaintiff argues that he warned an Hispanic inmate that racist white officers were coming to beat him, leading to plaintiff being beaten for it (*id.* at 5–6). He claims that he was denied food and recreation on July 15, 2010, in retaliation, and was assaulted again on July 20 because of this incident (*id.* at 7; Docket No. 16, Am. Compl. ¶ 13). He claims that Pritchard, Rademacher, and Swack had caused injuries to plaintiff on July 7 that were sufficiently serious to state an excessive force claim, while Bosworth also created sufficiently serious injuries on July 20 (Docket No. 50, Pl. Memo. at 10–11), arguing that the injuries he suffered were more than *de minimis.* He claims that he suffered a swollen eye and abrasions, later requiring glasses and had blurry vision (*id.* at 11, 13, Ex. A; *see also* Docket No. 49, Ex. A (under seal) July 8, 2010, Ambulatory Health Record), *see Griffin v. Crippen,* 193 F.3d 89, 91–92 (2d Cir.1999) (reversing finding plaintiff's bruised shin and swelling over knee was *de minimis* ); *Smith v. Coughlin,* 917 F.Supp. 168, 171–73 (W.D.N.Y.1995) (Heckman, Mag. J.) (Report & Recommendation) (abrasions under left eye, small laceration near right eye, skin tears on calf, slight swollen wrist from attack by corrections officer is sufficient injury), *adopted sub nom. Smith v. Marcellus,* 917 F.Supp. 168 (W.D.N.Y.1995) (Skretny, J.). Plaintiff claimed that he was punched in the stomach on July 15, 2010, merely because of the prior incident (Docket No. 50, Pl. Memo. at 11; *see* Docket No. 16, Am. Compl. ¶ 13). Plaintiff contends that there is a material issue of fact

(whether he was assaulted) which should preclude summary judgment (Docket No. 50, Pl. Memo. at 12). Plaintiff does not know any precedent against his recovery for his psychological pain from these incidents (*id.* at 13).

Plaintiff claims that he stated a valid retaliatory treatment, that he had a First Amendment right to warn the other inmates (*id.* at 17–18). He concludes that he asserted valid harassment (*id.* at 18) and Equal Protection claims (*id.* at 18–19). As for defendants' qualified immunity claim, plaintiff argues that it is well-settled that corrections officers may not starve inmates, deny them recreation, or beat them for the inmate warning other inmates (*id.* at 20), but not citing any authority for this proposition.

Defendants reply that plaintiff's response was conclusory and contains contradictions (Docket No. 52, Defs. Atty. Reply Decl. ¶ 4), not supported by evidence aside from plaintiff's statements (*id.* ¶¶ 5–8). Defendants claim that plaintiff only presents conclusory statements (for example) that defendant Sergeants Warner and Dunbar were liable merely because the officers looked for plaintiff earlier (*id.* ¶ 9), and plaintiff failed to show that Conway and Chappius were aware of plaintiff's transfer to and from cell block C (*id.* ¶ 10).

## DISCUSSION

I. Applicable Standards

A. Summary Judgment

**\*5** Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Ford v. Reynolds,* 316 F.3d 351, 354 (2d Cir.2003); Fed.R.Civ.P. 56(a) (effective Dec. 2010). The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact ex-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

ists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. *Ford, supra,* 316 F.3d at 354. "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Lazard Freres & Co. v. Protective Life Ins. Co.,* 108 F.3d 1531, 1535 (2d Cir.) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)), *cert. denied,* 522 U.S. 864 (1997). While the moving party must demonstrate the absence of any genuine factual dispute, *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the party against whom summary judgment is sought, however, "must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he non-moving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis in original removed); *McCarthy v. American Intern. Group, Inc.,* 283 F.3d 121, 124 (2d Cir.2002); *Marvel Characters v. Simon,* 310 F.3d 280, 285–86 (2d Cir.2002). The opponent to summary judgment may argue that he cannot respond to the motion where it shows, by affidavit, "that, for specified reasons, it cannot present facts essential to justify its opposition," Fed.R.Civ.P. 56(d).

The Local Civil Rules of this Court require that movant and opponent each submit "a separate, short, and concise" statement of material facts, and if movant fails to submit such a statement it may be grounds for denying the motion, W.D.N.Y. Loc. Civ. R. 56(a) (1), (2) (effective Jan. 1, 2011). The movant is to submit facts in which there is no genuine issue, *id.* R. 56(a)(1), while the opponent submits an opposing statement of material facts as to which it is contended that there exists a genuine issue to be tried, *id.* R. 56(a)(2). Each numbered paragraph in the movant's statement will be deemed admitted unless specifically controverted by a correspondingly numbered paragraph in the opponent's

statement, *id.* Each statement of material fact is to contain citations to admissible evidence to support the factual statements and all cited authority is to be separately submitted as an appendix to that statement, *id.* R. 56(a)(3).

Here, plaintiff is proceeding *pro se* and as such his pleadings are to be liberally construed, *see Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam).

**\*6** "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only " 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly,* [550 U.S. 544, 555], 127 S.Ct. 1955, 1964, (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. *Bell Atlantic Corp., supra,* at [555], 550 U.S. 544, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929, (citing *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974))."

*Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam). In *Erickson,* the Court held that the Tenth Circuit departed from the liberal pleading standards of Rule 8(a)(2) by dismissing a pro se inmate's claims.

"The Court of Appeals' departure from the liberal pleading standards set forth by Rule 8(a)(2) is even more pronounced in this particular case because petitioner has been proceeding, from the litigation's outset, without counsel. A document filed *pro se* is 'to be liberally construed,' [ *Estelle v. Gamble,* 429 U.S., 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ], and 'a *pro se* complaint,

however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers,' *ibid.* (internal quotation marks omitted). *Cf.* Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice").

551 U.S. at 94; *see Boykin v. KeyCorp,* 521 F.3d 202, 213–14 (2d Cir.2008). Thus, the *pro se* plaintiff's complaint has to be construed "more liberally" than one filed by counsel, *Boykin, supra,* 521 F.3d at 214.

**B. Civil Rights Liability and Municipal Parties**

Under 42 U.S.C. § 1983, defendants are liable either for their personal involvement in the alleged violation of plaintiff's civil rights or in establishing a policy or custom, implemented by others, that leads to the violation. To state a § 1983 claim, plaintiff must allege the manner in which defendant was personally involved in depriving plaintiff of his rights, *see Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994); *Al– Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989). "Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983," *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991); *see Wright, supra,* 21 F.3d at 501; *Colon, supra,* 58 F.3d at 873; *Provost v. City of Newburgh,* 262 F.3d 146, 154 (2d Cir.2001). There are several ways to allege personal involvement: plaintiff could claim that defendant had direct participation in the event; plaintiff could claim that defendant failed to remedy the violation after it was noticed; defendant created the policy which lead to the violation or allowed the policy to continue; defendant was grossly negligent in managing subordinates which caused the violation to occur; or defendant exhibited gross negligence or deliberate indifference to plaintiff's rights by failing to act on information indicating that unconstitutional acts were taking place, *Wright, supra,* 21 F.3d at 501.

**C. Cruel and Unusual Punishment**

**\*7** Generally, to state a claim under 42 U.S.C. § 1983, the plaintiff needs to show that he or she was denied a constitutional right and that deprivation occurred under the color of state law, *e.g., Chambliss v. Rosini,* 808 F.Supp.2d 658, 666 (S.D.N.Y.2011) (Gorenstein, Mag. J.). For an excessive force claim under the Eighth Amendment (applicable to prison inmates, *Hudson v. McMillan,* 503 U.S. 1, 6–7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)), a plaintiff has to establish both a subjective element and an objective element, under *Hudson, supra,* 503 U.S. at 7–8. Under this subjective test, the "core judicial inquiry is set out in *[Whitley v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) ]: whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically to cause harm," *id.* at 7, and the objective test requires the plaintiff to show that defendants " 'had a wanton state of mind when engaging in the alleged misconduct' " with the inquiry as to wantonness turning on " 'whether the alleged conduct involved unnecessary and wanton infliction of pain," *Jones v. Goord,* No. 05CV182, 2008 WL 904895, at \*3 (W.D.N.Y. Jan. 23, 2008) (McCarthy, Mag. J.) (Report & Recommendation, citations omitted), *adopted,* 2008 WL 904895, at \*1 (Arcara, Ch. J.) (W.D.N.Y. Mar. 31, 2008) (Docket No. 34, Defs. Memo. at 4).

In *Hudson,* the plaintiff was punched in the mouth, eyes, chest, and stomach without justification, 503 U.S. at 4; *see Wilkins v. Gaddy,* 559 U.S. 34, ——, 130 S.Ct. 1175, 1178, 175 L.Ed.2d 995 (2010) (per curiam). The Supreme Court distinguished different Eighth Amendment claims, the conditions of confinement or deliberate indifference to medical needs claims from excessive force claims, *Hudson, supra,* 503 U.S. at 8–9. With the former, a plaintiff would have to show serious injury to satisfy the objective component of each claim, *id.* at 9. With excessive force claims, the *Hudson* Court notes that "society's expectations are different. When prison officials maliciously and sadistically use of force to cause harm, contemporary standards of decency always are violated," *id.*

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

"This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury," *Id.* The Court then said "that is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick,* 481 F.2d [1028,] 1033 [ (2d Cir.) ] ('Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights'), [*cert. denied sub nom. John v. Johnson,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973) ]," *Hudson, supra,* 503 U.S. at 9, concluding that the Eighth Amendment's prohibition against cruel and unusual punishment "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort ' "repugnant to the conscience of mankind." ' *Whitley [v. Albers],* 475 U.S. [312,] 327, 106 S.Ct. 1078, 89 L.Ed.2d 251 [ (1986) ] (quoting *Estelle, supra,* 429 U.S. at 106) (internal quotation marks omitted)," *Hudson, supra,* 503 U.S. at 9–10. A *de minimis* use of force "will rarely suffice to state a constitutional claim," *Romano v. Howarth,* 998 F.2d 101, 105 (2d Cir.1993), and "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights," *id.* (quoting *Johnson v. Glick, supra,* 481 F.2d at 1033); *Griffin, supra,* 193 F.3d at 91.

**\*8** The Supreme Court in *Hudson* reversed the Circuit Court and held that plaintiff's injuries-bruises, swelling, loosened teeth, cracked dental plate-were **not** *de minimis* for Eighth Amendment purposes, *Hudson, supra,* 503 U.S. at 10. Justice Blackmun concurred in the judgment and applauded the majority in rejecting a significant injury requirement for excessive force Eighth Amendment claims, because it applies the Constitution to various kinds of state-sponsored torture that ingeniously evades a serious injury threshold, *id.* at 13 (Blackmun, J., concurring in judgment).

In *Wilkins, supra,* 559 U.S. at ——, 130 S.Ct. at 1176, the Court emphasized that the excessive force analysis is "based on the nature of the force rather than the extent of the injury." The plaintiff there was punched, kicked, kneed, choked, and body slammed that he alleged was maliciously and sadistically done without provocation, *id.* at 1179. In commenting on *Hudson,* the *Wilkins* Court noted that "the extent of injury may also provide some indication of the amount of force applied," 130 S.Ct. at 1178. "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury," *id.,* at 1178–79. The Court rejected using injury as a proxy for force, *id.* at 1179.

## D. Failure to Protect

" 'It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.' *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994) (citing *O'Neill v. Krzeminski,* 839 F.2d 9, 11 (2d Cir.1988). An officer who does not personally inflict the injury at the core of an excessive use of force claim may still be liable under § 1983 where the officer fails to intervene to prevent the harm, in spite of a 'realistic opportunity' to do so, *O'Neill,* 839 F.2d at 11–12, and 'observes or has reason to know ... that excessive force is being used.' *Anderson,* 17 F.3d at 557. 'Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise.' *Id.,*" *Allen v. City of N.Y.,* 480 F.Supp.2d 689, 694 (S.D.N.Y.2007).

## E. First Amendment Retaliation

To establish a First Amendment retaliation claim, plaintiff needs to demonstrate "(1) that his speech or conduct was constitutionally protected,

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

(2) that the defendant took adverse actions against him, and (3) that there was a causal connection between the protected speech and the adverse action," *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir.2004) (quoting *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir.2001), *overruled on other grounds, Swiekiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)) (Docket No. 37, Defs. Memo. at 9).

### F. Qualified Immunity

**\*9** When confronted by a claim of qualified immunity, one of the first questions for the Court to resolve is whether the facts, taken in the light most favorable to the party asserting the injury, show the official's conduct violated a constitutional right. *See Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). As was required by the *Saucier* Court, this Court first considered the constitutional question, then considered the qualified immunity question, *id.* But the Supreme Court in *Pearson v. Callahan,* 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), overruled *Saucier* in requiring courts to first determine whether a constitutional violation occurred before considering whether defendants enjoy qualified immunity. Instead, district courts determine in each case whether to consider first the question of immunity or whether a constitutional violation had occurred, *id* . at 231–32.

Government officials performing discretionary functions generally are shielded by qualified immunity from liability in their individual capacities, *see Frank v. Reilin,* 1 F.3d 1317, 1327 (2d Cir.1993), "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "If it was objectively reasonable for the defendant to believe that his act did not violate the plaintiff's constitutional rights, the defendant may nevertheless be entitled to qualified immunity." *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987);

*Lowth v. Town of Cheektowaga,* 82 F.3d 563, 568–69 (2d Cir.1996).

### II. Application

#### A. Summary Judgment

Plaintiff did not file a counterstatement of facts or evidence in an admissible form. Instead, he submits his Memorandum which recites his version of the facts. But the purpose for this Court's Local Civil Rule 56 is to have the statement of the material facts not in dispute and a statement of those facts disputed by the movant to not only show the conflict, but also to indicate the *admissible evidence* to support the contention about those facts. Here, plaintiff only recites in his Memorandum those facts without showing any admissible evidence (affidavits, documents, or other proof) to support his contention that the facts are as he claims them to be or are disputed. Therefore, this Court **deems the facts in defendants' Statement (Docket No. 36) to be admitted.**

#### B. Incidents

The incidents alleged can be considered separately. The question here for each incident is whether the purported use of force raises a constitutional claim under the Eighth Amendment, in particular whether plaintiff established the objective element for an Eighth Amendment excessive force cruel and unusual punishment claim. This is further reduced to whether force was applied to plaintiff and whether sufficient injury occurred to violate the Eighth Amendment.

##### 1. July 7, 2010, Incident

Plaintiff claims that he was bruised, suffered dizzy spells, and blurred vision from being punched in the face and stomach, being choked, and being lifted off the ground by his neck on July 7, 2010 (Docket No. 16, Am. Compl. ¶ 6). The defendants who plaintiff named deny that this incident occurred and any frisk of plaintiff occurred without incident.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

**\*10** Defendants argue that plaintiff failed to supply proof that he was assaulted or to contradict defendants' contentions that he was not assaulted (Docket No. 37, Defs. Memo. at 6–8). There was no use of force report generated from this incident (*see* Docket No. 42, Pritchard Decl. ¶ 6). Defendants emphasize the absence of injury to plaintiff, rather than the force applied, arguing instead that there is no proof of any force used at all.

From the uncontested facts from defendants, on July 7, 2010, Sergeant Warner conducted a frisk of plaintiff without incident. Plaintiff reported to medical staff that he fell because he became overheated and hit the back of his head (*e.g.,* Docket No. 50, Pl. Memo., Ex. A). Had plaintiff filed a counter-statement of facts and other evidence aside from his conclusory allegations, he may have raised an issue of fact on whether there was a use of force or whether the force applied was excessive. But plaintiff did not do so and, under this Court's Local Civil Rule 56(a)(2), defendants' uncontested statement of material facts are deemed admitted and therefore plaintiff fails to establish that force was used. Looking at plaintiff's medical records after that incident merely indicates that he had abrasions on his cheek and, although he claimed to have hit his head (due to a different cause), there was no indication of head injury during that examination (Docket No. 50, Pl. Memo. Ex. A; Docket No. 49, Ex. A, Ambulatory Health Record, July 8, 2010). As for his vision complaints, on July 8 plaintiff did not note any vision problems (*id.*) and at his subsequent vision examination, on September 22, 2010, he was prescribed reading glasses (Docket No. 50, Pl. Memo. Ex. A, Attica Correctional Facility Eye Record, Sept. 22, 2010). The only evidence of injuries beyond this are from plaintiff's statements. Again, plaintiff's failures to oppose formally defendants' statement of facts and failure to introduce contrary evidence in admissible form (or even argue his inability to present such evidence, *cf.* Fed.R.Civ.P. 56(d)) require this Court to accept defendants' uncontested statement of facts and the injuries from July 7, 2010, are limited to those noted in plaintiff's medical records.

2. July 15, 2010, Starvation

Plaintiff complains that he lost weight and was hungry on July 15, 2010 (Docket No. 16, Am. Compl. ¶ 16), and later that he was moved back to cell block C where he claims he was not allowed to take meals (*id.* ¶¶ 19–20). Plaintiff alleges that his identification card was taken following the July 7 incident and he was denied access to the commissary on July 15 because he lacked the card (*id.* ¶¶ 11, 5), claiming that an unnamed officer took his identification card. None of the defendants claim that he took plaintiff's identification or held it beyond July 7.

Despite these allegations, plaintiff fails to show how defendants failed to feed him for that day or whether that starvation was connected with plaintiff's interaction with the Hispanic inmate. The only connection was the seized identification card, with a new one restored to him by July 21, 2010. Plaintiff fails to state which defendant kept his identification card.

**\*11** Plaintiff's starvation claim is a conditions of confinement claim under the Eighth Amendment and, unlike the excessive force claims, plaintiff needs to show for the objective element that he suffered extreme deprivations, those beyond routine discomfort inherent with imprisonment, *Hudson, supra,* 503 U.S. at 9; *see Rodriguez v. McGinnis,* No. 98CV6031, 2004 U.S. Dist. LEXIS 13585, at *49–51, 2004 WL 1145911 (W.D.N.Y. May 18, 2004)* (Siragusa, J.). Plaintiff, at worse, alleges starvation only on one day by the act of an unnamed corrections officer, without offering admissible evidence of that starvation. He has not stated a constitutional deprivation.

3. July 20, 2010, Incident

Plaintiff next complains that, during a frisk on July 20, 2010, that his legs were twisted causing pain (Docket No. 16, Am. Compl. at 5). From defendants' same uncontested facts, on July 20, 2010, Sergeant Dunbar also conducted a frisk search of

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

plaintiff without an untoward incident or an assault. Plaintiff did not seek medical attention after July 20, 2010; rather, prison officials had plaintiff examined on July 21, 2010. Plaintiff's medical records after July 20 do not indicate any injury and he had the evaluation at the request of prison administration and not plaintiff's request (Docket No. 50, Pl. Memo. Ex. A; Docket No. 49, Ex. A, Ambulatory Health Record, July 8, 2010).

4. Psychological Pain

Plaintiff also claims psychological pain from these incidents. The Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), provides that "no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody *without a prior showing of physical injury*" (emphasis added). Thus, plaintiff needed to first establish he suffered physical harm before he can litigate any mental or emotional injury claims arising from those physical injuries. The Prison Litigation Reform Act requires more than a showing of *de minimis* physical injury to allow an inmate to pursue an emotional or mental injury claim, *Moore v. McGinnis,* No. 01CV6588, 2004 U.S. Dist. LEXIS 29767, at *28, 2004 WL 2958471 (W.D.N.Y. Dec. 20, 2004) (Siragusa, J.) (plaintiff alleged only *de minimis* physical injury, thus barred from asserting emotional claim under Prison Litigation Reform Act); *see also Mitchell v. Horn,* 318 F.3d 523, 533 (3d Cir.2003); *Dolberry v. Levine,* 567 F.Supp.2d 413, 417–18 (W.D.N.Y.2008) (Larimer, J.) (dismissing *pro se* inmate's emotional injury claim in absence of physical injury claim). In *Dolberry,* plaintiff alleged that he was denied showers and cleaning supplies for several weeks, alleging that he suffered a rash as a result. Judge Larimer held that plaintiff did not allege any physical injury and, under the Prison Litigation Reform Act, could not state a claim for emotional or mental injury absent a physical injury claim, 567 F.Supp.2d at 417–18.

As stated above, plaintiff here only asserts *de minimis* physical injuries from the July 7 and 20,

2010, incidents. These claimed injuries do not suffice to form plaintiff's emotional or mental claims under the Prison Litigation Reform Act. Plaintiff's psychological pain cannot bolster his physical injuries beyond *de minimis* loss.

5. In Summary

**\*12** From the record before this Court, and taking all inferences in favor of plaintiff as non-movant, even if plaintiff had force applied to him during the pat down searches on July 7, 15, and 20, 2010, plaintiff only suffered limited physical injuries that do not rise to a constitutional level. But plaintiff fails to prove that these use of force incidents occurred because he failed to proffer admissible evidence in opposition to defendants' contrary assertions. The alleged physical injuries also were not sufficiently severe to have this Court consider whatever mental or emotional harm he may have suffered under the Prison Litigation Reform Act. Defendants' motion for summary judgment (Docket No. 35) dismissing these claims is **granted.**

C. Supervisory Response

Plaintiff raises two types of supervisory claims. First, he asserts against Sergeants Dunbar and Warner that they failed to protect him from incidents they observed (Docket No. 50, Pl. Memo. at 14–15). Second, he concludes that Superintendent Conway and Deputy Superintendent Chappius failed to respond when placed on notice through plaintiff's grievance and correspondence (*id.* at 16–17).

As for the sergeants' affirmative duty to intervene, one element for this claim is the existence of a constitutional violation or excessive use of force, *O'Neill, supra,* 839 F.2d at 11; *Anderson v. Branen, supra,* 17 F.3d at 557. The Supreme Court in *City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (per curiam), observed that "if a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point," *see Cur-*

*ley v. Village of Suffern,* 268 F.3d 65, 71 (2d Cir.2001). The Second Circuit then extended the *Heller* rationale for limiting liability where no constitutional violation occurred to officers failing to intervene when the alleged violation occurred, *Curley, supra,* 268 F.3d at 72. Alternatively, the court held that plaintiff there could not create a triable issue of fact to defeat defendants' summary judgment motion "by asserting in conclusory fashion" that defendant officers had a duty to intercede but failed to do so, *id.*

Here, plaintiff makes conclusory assertions that the sergeants had a duty to protect him on July 7 and 20, 2010. As found above, plaintiff has not stated that a constitutional violation occurred before these defendants to require their intervention.

On the superintendent and deputy superintendent's liability, plaintiff again only makes conclusory allegations that these defendants were personally aware of his relocation movements within Attica and the impact of plaintiff's moves from one cell block to another. Absent proof beyond plaintiff's own statements, this claim fails. Also, under *Curley,* 268 F.3d at 71 (applying *Heller* ) supervisory defendants cannot be held liable for inadequate training or supervision when the officers involved in the incident do not violate plaintiff's constitutional rights. Absent a violation, plaintiff's allegations against Conway and Chappius also fails.

D. Retaliation

**\*13** As for plaintiff's retaliation claims, plaintiff declares generally that he has a First Amendment right to warn his fellow inmates when prison officials are coming, in order for other inmates to stop banned activities (Docket No. 50, Pl. Memo. at 17). Defendants argue that there was no objective evidence that defendants deprived plaintiff of food or recreation or harassed him for warning the Hispanic inmate on July 7, 2010 (Docket No. 52, Defs. Atty. Reply Decl. ¶ 6). Defendants also argue that plaintiff did not have a constitutional right to warn another inmate, thus not establishing one element for a First Amendment retaliation claim that plaintiff's speech rights were violated (*id.;* Docket No. 37, Defs. Memo. at 9–10).

Given the prison context where inmate objections to official actions and "the ease with which claims of retaliation may be fabricated," inmate charges of retaliation are viewed by courts in this Circuit "with skepticism and particular care," *Colon, supra,* 58 F.3d at 872; *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983). An inmate's free speech rights may be restricted by the correctional institution if reasonably related to legitimate penological interest, *Duamutef, supra,* 98 F.3d at 24; *see Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Prison officials have the right, in order to secure the facility, to restrict the ability of one inmate to communicate the movement of corrections officers to other inmates, to avoid one inmate warning others of the arrival of officers for a spot inspection, for example. In *Phillips v. Lecuryer,* No. 9:08CV878, 2013 U.S. Dist. LEXIS 36452, 2013 WL 1024667 (N.D.N.Y. Feb. 19, 2013) (Baxter, Mag. J.), Magistrate Judge Baxter recently found that an inmate Ralph Buck Phillips' writing that violated prison regulations (attempting to smuggle mail out of the facility through another inmate and sending threatening letters) did not constitute protected activity, *id.* at *105–06, *97. Cases finding constitutionally protected activities include filing law suits and grievances, *Collins v. Goord,* 438 F.Supp.2d 399, 419 (S.D.N.Y.2006); *Walker v. Schriro,* No. 11 Civ. 9299, 2013 U.S. Dist. LEXIS 42551, at *20, 2013 WL 1234930 (S.D.N.Y. Mar. 26, 2013).

Here, the claimed protected activity effectively has one inmate assisting other inmates in hiding illicit activity by warning them that corrections officers were coming. Therefore, the first element for a retaliation claim-that plaintiff's speech was constitutionally protected, *see Gill, supra,* 389 F.3d at 380– does not exist; defendants' motion for summary judgment dismissing this claim is **granted.**

E. Qualified Immunity
Alternatively, defendants claim entitlement to

Not Reported in F.Supp.2d, 2013 WL 1559292 (W.D.N.Y.)
**(Cite as: 2013 WL 1559292 (W.D.N.Y.))**

qualified immunity. Given that this Court has first considered whether constitutional violations have occurred and found that no such violations happened, this Court need not engage in a qualified immunity analysis.

III. Result of This Order

As a result, defendants' motion for summary judgment (Docket No. 35) is **granted.** The Court Clerk is to enter judgment and close this case.

**\*14** The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

CONCLUSION

For the reasons stated above, defendants' motion for summary judgment (Docket No. 35) is **granted.** The Court Clerk is to enter judgment and close this case. As previously stated, this Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

So Ordered.

W.D.N.Y.,2013.
Jacoby v. Conway
Not Reported in F.Supp.2d, 2013 WL 1559292 (W.D.N.Y.)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.



**MINA POURZANDVAKIL, Plaintiff, -against- HUBERT HUMPHRY, JUDISICIAL SYSTEAM OF THE STATE OF MINNESOTA AND OLMESTED COUNTY COURT SYSTEAM, AND STATE OF MINNESOTA, SAINT PETER STATE HOSPITAL, DOCTOR GAMMEL STEPHELTON, ET EL ERICKSON, NORTH WEST BANK AND TRUST, OLMESTED COUNTY SOCIAL SERVICE, J.C. PENNY INSURCE, METMORE FINICIAL, TRAVELER INSURNCE, COMECIAL UNION INSURCE, HIRMAN INSURCE, AMRICAN STATE INSURNCE, FARMERS INSURNCE, C. O BROWN INSURNCE, MSI INSURNCE, STEVEN YOUNGQUIST, KENT CHIRSTAIN, MICHEAL BENSON, UNITED AIRLINE, KOWATE AIRLINE, FORDMOTOR CRIDITE, FIRST BANK ROCHESTER, GEORGE RESTWICH, BRITISH AIRWAYS, WESTERN UNION, PRUDENIAL INSURNCE, T.C.F. BANK, JUDGE SANDY KIETH, JUDGE NIERGARI, OLMESTEAD COUNTY JUDGERING, JUDGE MORES, JUDGE JACOBSON, JUDGE CHALLIEN, JUDGE COLLIN, JUDGE THOMASE, JUDGE BUTTLER, JUDGE MORKE, JUDGE MOWEER, SERA CLAYTON, SUSAN MUDHAUL, RAY SCHMITE, Defendants.** [1]

1  Names in the caption are spelled to reflect plaintiffs complaint.

**Civil Action No. 94-CV-1594**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF NEW YORK**

*1995 U.S. Dist. LEXIS 7136*

**May 22, 1995, Decided**
**May 23, 1995, FILED**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff filed a complaint accusing defendants with kidnapping plaintiff and her daughter, torturing plaintiff in the Mayo Clinic, and causing plaintiff and her daughter to suffer physically, financially, and emotionally. Certain defendants sought vacation of the defaults entered against them without proper service, some sought dismissal of the complaint, and some sought both vacation of the defaults and dismissal.

**OVERVIEW:** Plaintiff served defendants by certified mail. The court determined that such service was not authorized under federal law or under either New York or Minnesota law. Additionally, plaintiff's extraterritorial service of process was not effective under *Fed. R. Civ. P.*

*4(k)*. Defendants were not subject to federal interpleader jurisdiction, and they were not joined pursuant to *Fed. R. Civ. P. 14* or *Fed. R. Civ. P. 19*. No federal long-arm statute was argued as a basis for jurisdiction, and the alleged harm did not stem from acts in New York for jurisdiction under *N.Y. C.P.L.R. § 302(a)*. The complaint showed no basis for subject matter jurisdiction against defendants that were insurance companies with no apparent relationship to claims of rape, torture, harassment, and kidnapping, and the court found that no basis for supplemental jurisdiction under *28 U.S.C.S. § 1367(a)* existed. Venue was clearly improper under *28 U.S.C.S. § 1391(b)* because no defendant resided in the district and none of the conduct complained of occurred there. Plaintiff's claims of civil rights violations were insufficient because her complaint was a litany of general conclusions, not specific allegations of fact.

**OUTCOME:** The court vacated all defaults. The court dismissed plaintiff's complaint against all moving and non-moving defendants. The dismissal of the complaint against certain defendants premised on the court's lack of power either over the person of the defendant or the subject matter of the controversy was without prejudice, but dismissals against the remaining defendants were with prejudice. Requests for sanctions and attorney's fees were denied.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Service of Process > Methods > Residential Service*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > Service Upon Agents*
*Governments > Federal Government > Employees & Officials*
[HN1] Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. *Fed. R. Civ. P. 4(e)(2)*. Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. *Fed. R. Civ. P. 4(e)(1)*.

*Business & Corporate Law > Agency Relationships > Agents Distinguished > General Overview*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > Mail*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > Service Upon Corporations*
[HN2] Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. *Fed. R. Civ. P. 4(h)(1), 4(e)(1)*.

*Civil Procedure > Pleading & Practice > Service of Process > Methods > General Overview*
[HN3] Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *N.Y. C.P.L.R. §§ 308, 311* (Supp. 1995); *N.Y. Bus. Corp. Law § 306* (Supp. 1995); *Minn. Stat. § 543.08* (1995); Minn. R. 4.03 (1995).

*Civil Procedure > Pleading & Practice > Service of Process > Methods > Mail*
*Civil Procedure > Pleading & Practice > Service of Process > Time Limitations > General Overview*
*Governments > Local Governments > Claims By & Against*
[HN4] Service on states, municipal corporations, or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. *Fed. R. Civ. P. 4(j)(2)*. Minnesota law does not authorize service on a governmental entity by certified mail. Minn. R. 4.03(d), (e) (1995).

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
*Civil Procedure > Parties > Interpleaders > General Overview*
[HN5] A plaintiff's extraterritorial service of process in New York can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York state; (2) if the defendant is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to *Fed. R. Civ. P. 14* or *Fed. R. Civ. P. 19* and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. *Fed. R. Civ. P. 4(k)*.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
[HN6] *N.Y. C.P.L.R. § 302(a)* provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain minimal contacts between the defendant and the state such as transacting any business in the state and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General*

*Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Pendent Claims*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Same Case & Controversy*
[HN7] *28 U.S.C.S. § 1367(a)* requires a relationship between the state and federal claims for pendent jurisdiction so that they form part of the same case or controversy.

*Civil Procedure > Jurisdiction > Diversity Jurisdiction > Citizenship > General Overview*
*Civil Procedure > Venue > Multiparty Litigation*
[HN8] See *28 U.S.C.S. § 1391(a)*.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Federal Questions > General Overview*
*Civil Procedure > Venue > Multiparty Litigation*
[HN9] See *28 U.S.C.S. § 1391(1)*.

*Civil Procedure > Venue > Federal Venue Transfers > Improper Venue Transfers*
*Civil Procedure > Venue > Individual Defendants*
*Civil Procedure > Venue > Multiparty Litigation*
[HN10] Where venue is laid in the wrong district, the court shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought. *28 U.S.C.S. § 1406(a)*.

*Civil Procedure > Venue > Motions to Transfer > General Overview*
*Civil Procedure > Judicial Officers > Judges > Discretion*
*Governments > Legislation > Statutes of Limitations > General Overview*
[HN11] The purpose of the court's discretionary authority to transfer rather than dismiss in cases of improperly laid venue is to eliminate impediments to the timely disposition of cases and controversies on their merits.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Motions to Dismiss*
[HN12] Where a court has already dismissed against the moving parties on jurisdictional grounds, it has no power to address a *Fed. R. Civ. P. 12(b)(6)* issue.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*

*Civil Rights Law > General Overview*
[HN13] Complaints that rely on civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights instead of a litany of general conclusions that shock but have no meaning.

*Civil Procedure > Parties > Self-Representation > Pleading Standards*
[HN14] A pro se plaintiff's complaint must be construed liberally and should be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*
*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > General Overview*
*Civil Procedure > Parties > Self-Representation > Pleading Standards*
[HN15] Even pro se complaints must show some minimum level of factual support for their claims.

*Civil Procedure > Parties > Self-Representation > General Overview*
*Civil Procedure > Counsel > Appointments*
*Civil Rights Law > Prisoner Rights > Prison Litigation Reform Act > Claim Dismissals*
[HN16] The United States Supreme Court explicitly has acknowledged a district court's power under *28 U.S.C.S. § 1915(d)* to dismiss as frivolous a complaint that lacks an arguable basis either in law or in fact. The Supreme Court has explicitly declined to rule, however, on whether a district court has the authority to dismiss sua sponte frivolous complaints filed by non-indigent plaintiffs. The law in the district of New York is that a district court may sua sponte dismiss a frivolous complaint even if the plaintiff has paid the filing fee.

**COUNSEL:** [*1] HUBERT H. HUMPHREY, III, Attorney General of the State of Minnesota, Attorney for Hubert H. Humphry, III, Judicial System of the State of Minnesota, St. Peter Regional Treatment Center, Gerald Gammell, MD, William Erickson, MD, Thomas Stapleton, MD, the Honorable James L. Mork, Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen, and Judge Lawrence Collins, St. Paul, MN, OF COUNSEL: JEROME L. GETZ, Assistant Attorney General.

CONDON & FORSYTH, P.C., Attorneys for British Airways, P.L.C. and Kuwait Airways Corp., New York, NY, OF COUNSEL: STEPHEN J. FEARON, ESQ., MICHAEL J. HOLLAND, ESQ.

DUNLAP & SEEGER, P.C., Attorneys for Olmsted County, Raymond Schmitz, Susan Mundahl, Norwest Bank Minnesota, N.A. (the Northwest Bank & Trust), C.O. Brown Agency, Inc., Rochester, MN, OF COUNSEL: GREGORY J. GRIFFITHS, ESQ.

ARTHUR, CHAPMAN, McDONOUGH, KETTERING & SMETAK, P.A., Attorneys for J.C. Penney Insurance Co. and Metropolitan Insurance Co., Minneapolis, MN, OF COUNSEL: EUGENE C. SHERMOEN, JR., ESQ.

SHAPIRO & KREISMAN, Attorneys for Metmor Financial, Inc., Rochester, NY, OF COUNSEL: JOHN A. DiCARO, ESQ.

COSTELLO, COONEY & FEARON, Attorneys [*2] for Travelers Insurance Companies; Hirman Insurance; Commercial Union Insurance Companies, Syracuse, NY, OF COUNSEL: PAUL G. FERRARA, ESQ., ROBERT J. SMITH, ESQ.

SMITH, SOVIK, KENDRICK & SUGNET, P.C., Attorneys for American States Insurance Co. and Prudential Insurance Co., Syracuse, NY, OF COUNSEL: THOMAS N. KAUFMANN, ESQ.

STEVEN C. YOUNGQUIST, ESQ., Pro Se, Rochester, MN.

THOMAS J. MARONEY, United States Attorney, Attorney for Michael Benson, Postmaster, Northern District of New York, Syracuse, NY, OF COUNSEL: WILLIAM F. LARKIN, Assistant United States Attorney.

GEORGE F. RESTOVICH & ASSOCIATES, Attorneys for George F. Restovich, Esq., Rochester, MN, OF COUNSEL: GEORGE F. RESTOVICH, ESQ.

CONBOY, McKAY, BACHMAN & KENDALL, L.L.P., Attorneys for Western Union, Watertown, NY, OF COUNSEL: GEORGE K. MYRUS, ESQ.

RICHARD MAKI, Pro Se, Rochester, MN.

**JUDGES:** ROSEMARY S. POOLER, UNITED STATES DISTRICT JUDGE

**OPINION BY:** ROSEMARY S. POOLER

**OPINION**

***MEMORANDUM-DECISION AND ORDER***

**INTRODUCTION**

In the four and one-half months since she filed this action, plaintiff Mina Pourzandvakil has filed three amended complaints and ten motions. She also has sought and received [*3] entry of default against ten defendants, none of whom she properly served. She twice has sought and been denied temporary restraining orders. She has included in her action defendants with no apparent connection to this forum, that were vindicated in actions she brought in other forums.

In response, several individual defendants and groups of defendants have filed a total of twelve motions, some seeking vacation of the defaults entered against them, some seeking dismissal and others seeking both. We grant defendants' motions insofar as they seek vacation of the clerk's entries of default and dismissal of the complaint. We vacate *sua sponte* the entries of default against the non-moving defendants. Finally, we dismiss the complaint in its entirety against all defendants.

**BACKGROUND**

Pourzandvakil commenced this action by filing a complaint in the Office of the Clerk on December 9, 1994 (Docket No. 1). The complaint named as defendants the Attorney General of the State of Minnesota, the State of Minnesota and Olmsted County, Minnesota judicial systems, various Minnesota judges and prosecutors, St. Peter State Hospital in Minnesota and various doctors who worked at St. Peter's. [*4] Without specifying the time or defendant involved, the complaint accused the defendants of kidnapping Pourzandvakil and her daughter, torturing Pourzandvakil in the Mayo Clinic since April 1985, and causing Pourzandvakil and her daughter to suffer physically, financially and emotionally. Pourzandvakil twice requested that we issue a temporary restraining order. We denied both requests. *See* Order entered December 14, 1994 (Docket No. 4) and Memorandum-Decision and Order entered December 22, 1994 (Docket No. 6).

On December 27, 1994, Pourzandvakil filed an amended complaint (the "first amended complaint") (Docket No. 7) that appears to differ from the original complaint by adding British Airways as a defendant without making any allegations against British Airways. The first amended complaint also differs by requesting additional damages for prior cases and adding descriptions of several previous cases. Annexed to the first amended complaint is another document labeled amended complaint (the "annexed amended complaint") (Docket No. 7) whose factual allegations differ substantially from both the original complaint and the first amended complaint. The annexed amended complaint also [*5] adds British Airways as a party but specifies only that Pourzandvakil has travelled on that airline and that British Airways, along with other airlines on which Pourzandvakil has travelled, is aware of all the crimes committed against her.

Pourzandvakil filed yet another amended complaint

on January 13, 1995 (the "second amended complaint") (Docket No. 11). The second amended complaint adds as defendants several banks, other financial institutions, insurance companies, insurance agents or brokers, attorneys and airlines as well as the Postmaster of Olmsted County and Western Union. The allegations against these defendants defy easy summarization and will be addressed only insofar as they are relevant to the various motions.

The Clerk of the Court has entered default against the following defendants: J.C. Penny Insurnce (*sic*) [2] ("J.C. Penney"), British Airways, Kowate (*sic*) Airline ("Kuwait"), MSi Insurnce (*sic*) ("MSI"), Judge Mork, Steven Youngquist ("Youngquist"), Prudncial Insurnce (*sic*) ("Prudential"), Ford Motor Credit ("Ford"), First Bank Rochester, and TCF Bank ("TCF"). Based on the submissions Pourzandvakil made in support of her requests for entry of default, [*6] it appears that she served these defendants by certified mail.

The court has received answers from the following defendants: Hubert H. Humphrey III, St. Peter Regional Treatment Center, and Drs. Gerald H. Gammell, William D. Erickson, and Thomas R. Stapleton (joint answer filed January 9, 1995); Olmsted County, Ray Schmitz ("Schmitz"), Susan Mundahl ("Mundahl"), C.O. Brown Agency, Inc. ("C.O. Brown") (answer to amended complaint filed January 23, 1995); George Restovich ("Restovich") (answer to complaint or amended complaint filed January 30, 1995); Norwest Corporation ("Norwest") (answer to amended complaint filed January 31, 1995, amended answer of Norwest Bank Minnesota, N.A. to amended complaint filed February 13, 1995); Travelers Insurance Company ("Travelers") (answer filed February 1, 1995); Michael Benson ("Benson") (answer filed February 6, 1995); Hirman Insurance ("Hirman") (answer filed February 6, 1995); Richard Maki ("Maki") (answer to complaint or amended complaint filed February 17, 1995); Western Union (answer filed February 21, 1995); Steven C. Youngquist ("Youngquist") (answer to complaint or amended complaint filed February 23, 1995); Kuwait (answer filed March [*7] 6, 1995); J.C. Penney (answer filed March 22, 1995); Susan E. Cooper [3] (answer to amended complaint filed March 24, 1995); and Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen and Judge Lawrence Collins (joint answer filed April 3, 1995).

> 2    Plaintiff's spelling is idiosyncratic, and we preserve the spelling in its original form only where absolutely necessary for accuracy of the record. Otherwise we substitute the word we believe plaintiff intended for the word she actually wrote, e.g., "tortured" for "tureared."

The court has also received a total of ten motions from Pourzandvakil since February 27, 1995. She moved

for a default judgment against defendants J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways, and TCF. She moved for immediate trial and "venue in a different place" against several defendants and also requested action according to law and criminal charges. Finally, she made motions opposing defendants' motions.

> 3    Susan E. Cooper is not named as a defendant in the original complaint or any amended complaint filed with this court. From correspondence with Cooper's attorney, it appears that plaintiff sent Cooper a copy of a different version of the complaint. Because the original of this version was not filed with the court, no action against Cooper is pending in this court.

[*8]    The court also has received a total of thirteen motions [4] from defendants. Several of the defendants moved for dismissal either under Rule 56 or *Rule 12 of the Federal Rules of Civil Procedure*. For instance, Commercial Union Insurance Companies ("Commercial") moved for dismissal of Pourzandvakil's complaint pursuant to *Fed. R. Civ. P. 12(b)* or, in the alternative, for a more definite statement. Commercial argued that Pourzandvakil's complaint against it is barred by *res judicata* and collateral estoppel and that this court does not have subject matter jurisdiction over the complaints against Commercial. American States Insurance Company ("ASI") moved for dismissal based on plaintiff's failure to state a claim upon which relief can be granted. ASI further moved for an order enjoining Pourzandvakil from further litigation against it. Maki moved for summary judgment based on lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim upon which relief can be granted, and lack of subject matter jurisdiction. Hubert H. Humphrey, III, the Judicial System of the State of Minnesota, Judge James L. Mork, St. Peter Regional Treatment Center and Drs. Gammell, Erickson [*9] and Stapleton (collectively, the "state defendants") moved for summary judgment alleging lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim on which relief can be granted, lack of subject matter jurisdiction, sovereign immunity, and, on behalf of Judge Mork and the judicial system, absolute judicial immunity. The state defendants also requested costs and attorney's fees. Travelers moved for summary judgment based on *res judicata* and/or collateral estoppel, frivolity, lack of subject matter jurisdiction, and improper venue. Travelers sought a transfer of venue to Minnesota in the alternative. Hirman moved for summary judgment based on frivolity, lack of subject matter jurisdiction, and improper venue. Hirman also sought transfer of venue in the alternative. Olmsted County, Schmitz, Mundahl, C.O. Brown and Norwest sought dismissal based on lack of personal jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. With respect to

Schmitz and Mundahl, defendants sought dismissal based on absolute prosecutorial immunity, and with respect to C.O. Brown, defendants sought dismissal on *res judicata* grounds. [*10] Metmor Financial, Inc. ("Metmor") sought dismissal based on lack of personal jurisdiction, lack of subject matter jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. Finally, Restovich moved for dismissal based on lack of personal jurisdiction. [5]

> 4    The court has also received three additional motions returnable May 22, 1995. The first -- from Judges Davies, Klaphake, Challeen, Collins and Chief Judge Simonett requests summary judgment dismissing the complaint based on lack of personal jurisdiction. The second by Western Union also requests summary judgment based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. The third, by British Airways, also requests dismissal based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. All three motions are mooted by this memorandum-decision and order which dismisses the complaint in its entirety against nonmoving defendants for failure to state a claim on which relief can be granted.
>
> 5    The court also received an affidavit and memorandum of law in support of summary judgment from J.C. Penney. However, the documents were not accompanied by a notice of motion.

[*11] Four defendants, British Airways, Kuwait, Prudential, and Youngquist, sought vacatur of the defaults entered against them. Prudential coupled its request with a request for an order enjoining plaintiff from filing or intervening in any litigation against it. Youngquist also requested dismissal of the complaint based on lack of personal jurisdiction and lack of subject matter jurisdiction.

## ANALYSIS

### The Defaults

We vacate the defaults entered in this matter because plaintiff improperly served defendants. Each application for entry of default shows service by certified mail, which is not permitted by relevant federal, New York or Minnesota rules. [HN1] Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. *Fed. R. Civ. P. 4(e)(2).* Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. *Fed.* [*12] *R. Civ. P.*

*4(e)(1).* [HN2] Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. *Fed. R. Civ. P. 4(h)(1) and 4(e)(1).* [HN3] Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *See N.Y. Civ. Prac. L. & R. §§ 308, 311* (McKinney Supp. 1995); *N.Y. Bus. Corp. Law § 306* (McKinney Supp. 1995); *Minn. Stat. § 543.08* (1995); Minn. R. 4.03 (1995). Finally, [HN4] service on states, municipal corporations or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. *Fed. R. Civ. P. 4(j)(2).* Minnesota law does not authorize service on a governmental entity by certified mail. *See* Minn. [*13] R. 4.03(d) and (e) (1995).

We therefore grant the motions by British Airways, Prudential, Kuwait, and Youngquist to vacate the defaults entered against them based both on the defective service and also on the meritorious defenses discussed below. We vacate *sua sponte* the entries of default against MSI, Ford, First Bank Rochester and TCF, all of whom were served improperly and preserved the service issue by raising it or declining to waive it. Concomitantly, we deny Pourzandvakil's motion for a default judgment against J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways and TCF. We vacate *sua sponte* the entry of default against J. C. Penney, which preserved the issue of service in its answer. By moving to dismiss or for summary judgment without raising the issue of service, Judge Mork may have waived the service issue. However Judge Mork objected to personal jurisdiction as inconsistent with due process and otherwise presented meritorious defenses. We therefore treat his motion for summary judgment as including a motion to vacate the entry of default and accordingly grant it.

## II. The Jurisdictional Arguments

In addition to raising various [*14] other grounds for dismissal, such as plaintiff's failure to state a claim on which relief can be granted and *res judicata,* most of the moving defendants urge (1) that this court lacks jurisdiction over either their persons or the subject matter of the controversy or (2) that this action is improperly venued. As we must, we examine jurisdiction and venue first.

### A. Personal Jurisdiction

Maki, the state defendants, Olmsted County,

Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich and Youngquist each allege that this court cannot exercise personal jurisdiction over them consistent with due process constraints. In support of their motions, these defendants present affidavits showing that they have had no significant contacts with the state of New York relevant to this lawsuit and that their contacts with Pourzandvakil all occurred in Minnesota. Nothing in plaintiff's voluminous submissions links any of these defendants with New York. [HN5] Plaintiff's extraterritorial service of process can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York State; (2) if the defendant [*15] is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to *Rule 14* or *Rule 19 of the Federal Rules of Civil Procedure* and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. *Fed. R. Civ. P. 4(k)*. Defendants are not subject to federal interpleader jurisdiction and they were not joined pursuant to *Rule 14* or *Rule 19*. In addition, no federal long-arm statute is argued as a basis for jurisdiction, and the moving defendants all would be subject to jurisdiction in Minnesota. Therefore, we must look to New York's long-arm statute to determine whether plaintiff's extraterritorial service of process could be effective under the one ground remaining pursuant to *Rule 4(k). See N.Y. Civ. Prac. L. & R. § 302* (McKinney Supp. 1995). [HN6] This rule provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain [*16] minimal contacts between the defendant and the state (such as transacting any business in the state) and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact. *Id. § 302(a)*. The moving defendants have demonstrated that plaintiff does not claim harm stemming from acts or contacts within the purview of *Section 302(a)*. Therefore, we grant these defendants' motions to dismiss the complaint for lack of personal jurisdiction.

## B. Subject Matter Jurisdiction

Pourzandvakil's complaint does not contain the jurisdictional allegations required by *Fed. R. Civ. P. 8(a)(1)*. Several defendants move for dismissal based either on this pleading defect or on an affirmative claim that no subject matter jurisdiction exists. Commercial, Travelers and Hirman (collectively, the "moving insurance companies") moved for dismissal because plaintiff has not pled the complete diversity of citizenship required for subject matter jurisdiction. The

state defendants, relying on *District of Columbia Court of Appeals v. Feldman,* argue that we lack subject matter jurisdiction over any issue that was determined in a state court proceeding to which plaintiff [*17] was a party. *District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482, 75 L. Ed. 2d 206, 103 S. Ct. 1303 (1983)*. These issues include plaintiff's hospitalization at St. Peter Regional Treatment Center. Finally, Metmor also moved for dismissal based on lack of subject matter jurisdiction because plaintiff has failed to plead a jurisdictional basis.

The moving insurance companies note correctly that insofar as the claims against them can be deciphered, plaintiff states that Traveler's and Commercial did not pay for damages to Pourzandvakil's property, harassed her and cancelled her policy. Pourzandvakil does not mention Hirman in her complaint, but Hirman's attorney states that Pourzandvakil informed him in a telephone conversation that her complaint against Hirman stemmed from actions it took as an agent of Travelers in denying Pourzandvakil's 1985 property damage claim.

The moving insurance companies argue that this court has no jurisdiction over the state insurance law claims absent complete diversity of citizenship between plaintiff and the defendants. *28 U.S.C. § 1332*. They point out that plaintiff lists a Syracuse, New York address for herself and that Kuwait's [*18] address as listed in the complaint is also in New York. Therefore, they argue, there is no complete diversity and this court lacks subject matter jurisdiction absent a basis for pendent jurisdiction under *28 U.S.C. § 1367(a). Section 1367(a)* [HN7] requires a relationship between the state and federal claims so that "they form part of the same case or controversy." *Id.* Because plaintiff's claims of denial of insurance coverage bear no apparent relationship to her other claims of rape, torture, harassment and kidnapping, we do not believe that an adequate basis for supplemental jurisdiction exists. *Id.* Plaintiff's complaint therefore shows no basis for subject matter jurisdiction against the moving insurance companies, and we dismiss as against them. [6]

> 6    We ordinarily would offer plaintiff an opportunity to amend her complaint because her submissions and Kuwait's answer indicate two bases on which plaintiff might be able to argue diversity of citizenship. First, although plaintiff lists her address in Syracuse, New York, she also has indicated on the civil cover sheet that she is an Iranian Citizen and we are not aware of her residence status. As a permanent resident, she would be deemed a citizen of the state in which she resides. *28 U.S.C. § 1332(a)*. However, if she lacks permanent resident status, her citizenship would be considered diverse from that of all the defendants. *Id. § 1332(a)(2)*. Second, Kuwait has submitted an answer in which it claims to be a foreign state within the meaning of *28 U.S.C. §*

*1603*. If Kuwait is correct, plaintiff may have an independent basis for jurisdiction over Kuwait. *See 28 U.S.C. § 1330*. If Pourzandvakil could show subject matter jurisdiction over Kuwait without resort to diversity of citizenship, then Kuwait's residence in New York may not be relevant to the issue of whether this court has diversity jurisdiction under *Section 1332*. *Cf. Hiram Walker & Sons, Inc. v. Kirk Line, 877 F.2d 1508, 1511-1512 (11th Cir. 1989), cert. denied, 131 L. Ed. 2d 219, 115 S. Ct. 1362 (1995)* (holding that the joinder of a non-diverse defendant sued under federal question jurisdiction did not destroy diversity as to the remaining defendant). Here, however, plaintiff's complaint is subject to so many other meritorious defenses -- including complete failure to state a cause of action -- that an amendment would be an exercise in futility. Additionally, plaintiff has not requested permission to amend, proffered an amended pleading, or indeed even supplied an affidavit stating her residency status or alleging a basis of jurisdiction over her claims against Kuwait other than diversity under *28 U.S.C. § 1332*.

[*19] We also agree with the state defendants that state court decisions may render certain of plaintiff's claims against them unreviewable either because of *res judicata* or lack of subject matter jurisdiction. However, because plaintiff's claims are so generally stated and so lacking in specifics, we are unable to discern at this juncture what parts of her complaint would be outside the jurisdiction of the court. In any case, we already have determined that the state defendants are clearly entitled to dismissal on personal jurisdiction grounds. As for Metmor, we believe that plaintiff may be attempting to state a civil rights claim by alleging a conspiracy to murder in connection with a judge although she fails to articulate an actionable claim. We note that we already have determined, in any case, that Metmor is entitled to dismissal on personal jurisdiction grounds.

## C. Venue

Metmor, Travelers, Maki, Hirman, Norwest, Olmsted County, C.O. Brown, Schmitz and Mundahl also allege that Pourzandvakil's action is not properly venued in this court. Although these defendants are entitled to dismissal on independent grounds, improper venue also would support dismissal as to these defendants. [*20] The general venue statute provides that a diversity action, except as otherwise provided by law, may be brought only in

[HN8] (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

*28 U.S.C. § 1391(a)*. Section 1391(b) provides that federal question actions, except as otherwise provided by law, may be brought only in

[HN9] (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

[*21] *Id. § 1391(b)*. The majority of the defendants in this action are residents of Minnesota and all of the events of which Pourzandvakil complains occurred in Minnesota. No defendant resides in the Northern District of New York, and none of the conduct plaintiff complains of, occurred in this district. Therefore, venue in the Northern District of New York is clearly improper. [HN10] Where venue is laid in the wrong district, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Id. § 1406(a)*. Because, as we will explain below, Pourzandvakil's complaint not only fails to state a claim upon which relief can be granted but is also frivolous, we do not deem it to be in the interest of justice to transfer this case to another district. [HN11] The purpose of the court's discretionary authority to transfer rather than dismiss in cases of improperly laid venue is "to eliminate impediments to the timely disposition of cases and controversies on their merits." *Minnette v. Time Warner, 997 F.2d 1023, 1027 (2d Cir. 1993)* (holding that it was an improper exercise of discretion to dismiss rather than transfer [*22] when the statute of limitations on a timely filed complaint ran between filing and dismissal). In this case, as discussed below, a review of the complaint and the plaintiff's submissions on these motions indicates that her claims are frivolous. We therefore dismiss as to the moving defendants both on venue grounds and on the other grounds already identified as applicable. We note also that plaintiff has made claims similar to those in this action against many of the same defendants in the United

States District Court for the District of Minnesota. *Pourzandvakil v. Price,* Civ No. 4-93-207 (D.Minn. 1993). This action was dismissed by Order to Show Cause entered April 12, 1993.

### III. Failure to State a Claim on Which Relief Can be Granted and Frivolity

Defendants ASI, Travelers, Hirman, Norwest, C.O. Brown, Olmsted County, Schmitz, Mundahl, Prudential, Metmor, and Youngquist as well as the state defendants have attacked the sufficiency of plaintiff's complaint. Travelers and Hirman urge that the complaint is frivolous while the remaining defendants argue only that the complaint fails to state a claim upon which relief can be granted. *Fed. R. Civ. P. 12(b)(6).* [7] [HN12] We already [*23] have dismissed against all the moving parties except ASI on jurisdictional grounds and therefore have the power to address the *Rule 12(b)(6)* issue only on ASI's motion. *See Bell v. Hood, 327 U.S. 678, 682-83, 90 L. Ed. 939, 66 S. Ct. 773 (1946)* (subject matter jurisdiction); *Arrowsmith v. United Press Int'l, 320 F.2d 219, 221 (2d Cir. 1963)* (personal jurisdiction). We grant ASI's motion and note in passing that were we empowered to reach the merits regarding the remaining moving defendants, we also would dismiss the complaint against them for failure to state a claim upon which relief can be granted. We also dismiss *sua sponte* as frivolous the complaint against all defendants who have not been granted dismissal previously on jurisdictional grounds.

> 7    J.C. Penney also submits an affidavit requesting dismissal on this basis and others, but has not filed or served a notice of motion.

Pourzandvakil has not specified a statutory or constitutional basis for her claims against ASI or any of the other [*24] defendants. She alleges that certain of the insurance company defendants denied her claims for damages without alleging that the denial was in any respect wrongful. She also alleges in general terms that the defendants harassed, tortured, kidnapped and raped her and perhaps were involved in a murder plot but does not supply (1) the dates on which these actions occurred, except to say that they began in 1984 and 1985; (2) the names of the specific defendants involved in any particular conduct; or (3) a description of any particular conduct constituting the harassment, torture or kidnapping. She suggests without further detail that ASI was involved in a plot to murder her by placing her in the Mayo Clinic. Although plaintiff does not allege specific constitutional provisions or statutes that defendants have violated, we assume -- largely because many of the defendants involved are state officials or state employees and she appears to complain of certain aspects of various trials -- that she wishes to complain of violations of her civil rights. [HN13] Complaints that rely on civil rights statutes are insufficient unless "they contain some specific allegations of fact indicating a deprivation [*25]

of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987).* [HN14] A *pro se* plaintiff's complaint must be construed liberally and should be dismissed only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble, 429 U.S. 97, 106, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976)* (quotation omitted). Pourzandvakil has not satisfied even this minimal test; her complaint and submissions on this motion demonstrate that she cannot prove any set of facts in support of her claim which would entitle her to relief. Her complaint consists of a "litany of general conclusions" rather than "specific allegations of fact". *Barr, 810 F.2d at 363.*

Ordinarily we would allow plaintiff an opportunity to replead to state specific allegations against ASI, but three factors militate against this course of action. First, our December 22, 1994, Memorandum - Decision and Order denying plaintiff's request for a temporary restraining order indicated that she had not shown a likelihood of success on the merits of her claim because she had not [*26] pled any specific actionable facts. Despite the fact that plaintiff since has filed three amended complaints, she still fails to set forth specific actionable conduct. Second, the defendants' motions themselves have alerted plaintiff to the need to show specific actionable facts, and yet her voluminous submissions in opposition to the motions contain no specific actionable facts. Finally, plaintiff has asserted similar allegations against many of the same defendants sued in this action -- although not ASI -- as well as others in several different jurisdictions. *See Pourzandvakil v. Blackman,* [8] *Civ. No. 94-C944 (D.D.C. 1994), Pourzandvakil v. Doty* (E.D.N.Y. 1993), *Pourzandvakil v. Price,* Civ. No. 7 (D.Minn. 1993). Where the results are known to us these actions resulted in dismissals for failure to state a claim upon which relief can be granted. *Pourzandvakil v. Price,* Civ. No. 4-93-207, Order to Show Cause entered April 12, 1993; *Pourzandvakil v Blackman,* Civ. No. 94-C-94, Order entered April 28, 1994, *aff'd* Civ. No. 94-5139 (D.C. Cir. 1994) (per curiam). In the Minnesota case, dismissal took place after the district court offered plaintiff an opportunity to [*27] amend her pleading and plaintiff still was not able to offer specifics. [9] [HN15] Even *pro se* complaints must show "some minimum level of factual support for their claims." *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, (quoting *White v. White, 886 F.2d 721, 724 (4th Cir. 1989)).* We therefore dismiss plaintiff's complaint against ASI for failure to state a claim upon which relief can be granted. *Fed. R. Civ. P. 12(b)(6).*

> 8    Former Supreme Court Justice Harry A. Blackmun.
> 9    We note also that plaintiff has not requested leave to amend in this action.

We note that in *Pourzandvakil v. Blackman,* Judge John H. Pratt dismissed plaintiff's *in forma pauperis* complaint *sua sponte* under *28 U.S.C. § 1915(d),* holding both that it failed to state a claim on which relief can be granted and that it was frivolous. We consider here whether we have the authority to dismiss *sua sponte* plaintiff's complaint, which was not filed *in forma pauperis,* as frivolous as against all non-moving defendants. [*28] [HN16] The Supreme Court explicitly has acknowledged a district court's power under *Section 1915(d)* to dismiss as frivolous a complaint which "lacks an arguable basis either in law or in fact." *Neitzke v. Williams, 490 U.S. 319, 325, 104 L. Ed. 2d 338, 109 S. Ct. 1827 (1989).* The Supreme Court explicitly declined to rule, however, on whether a district court has the authority to dismiss *sua sponte* frivolous complaints filed by non-indigent plaintiffs. *Id. at 329 n.8.* The law in this circuit is that a district court may *sua sponte* dismiss a frivolous complaint even if the plaintiff has paid the filing fee. *See Tyler v. Carter, 151 F.R.D. 537, 540 (S.D.N.Y. 1993), aff'd 41 F.3d 1500 (2d Cir. 1994); cf. Pillay v. I.N.S., 45 F.3d 14, 17 (2d Cir. 1995) (per curiam)* (dismissing *sua sponte* appeal for which appellant had paid normal filing fee). We believe that *sua sponte* dismissal is appropriate and necessary here because (1) plaintiff's claims lack an arguable basis in law and fact; (2) plaintiff has repeatedly attempted to replead her claims without being able to articulate actionable conduct; (3) some of plaintiff's claims have been tested in other courts [*29] and found to be without merit; and (4) the issue of frivolity has been presented by at least some of the moving defendants.

We therefore dismiss with prejudice plaintiff's complaint as frivolous as to all defendants -- regardless of whether they have moved for dismissal -- that have not been granted dismissal on jurisdictional grounds. We direct the clerk to return plaintiff's filing fee to her. *Tyler, 151 F.R.D. at 540.*

## IV. Requests for Sanctions, Costs, Attorney's Fees and Injunction Against Filing Further Actions

Because plaintiff is *pro se* and appears to have a belief in the legitimacy of her complaint, we do not believe that the purpose of Rule 11 would be served by awarding sanctions. *See Carlin v. Gold Hawk Joint Venture, 778 F. Supp. 686, 694-695 (S.D.N.Y. 1991).* Moreover, her litigiousness has not yet reached the point

at which courts in this circuit have justified injunctive relief. *See id. at 694* (and collected cases). We therefore deny the requests of ASI and Prudential for injunctive relief. Our refusal to grant sanctions and injunctive relief however, is conditioned on this dismissal putting an end to plaintiff's attempts to sue these defendants [*30] on these claims in this forum. Any further attempts by plaintiff to revive these claims will result in our revisiting the issue of sanctions. *Id. at 695.*

## CONCLUSION

All defaults entered by the clerk are vacated. Plaintiff's complaint is dismissed in its entirety against all moving and non-moving defendants. The dismissal of the complaint against Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich, Youngquist, Commercial, Travelers and Hirman is without prejudice as it is premised on this court's lack of power either over the person of the defendant or the subject matter of the controversy. *See Voisin's Oyster House, Inc. v. Guidry, 799 F.2d 183, 188-9 (5th Cir. 1986)* (dismissal for lack of subject matter jurisdiction is not a dismissal on the merits); *John Birch Soc'y. v. National Broadcasting Co., 377 F.2d 194, 199 n.3 (2d Cir. 1967)* (dismissal for lack of subject matter jurisdiction implies no view of merits); *Orange Theatre Corp. v. Rayherstz Amusement Corp., 139 F.2d 871, 875 (3d Cir.) cert. denied, 322 U.S. 740, 88 L. Ed. 1573, 64 S. Ct. 1057 (1944)* (dismissal for lack of personal jurisdiction is not [*31] a dismissal on the merits). The dismissals against the remaining defendants are with prejudice. All requests for sanctions and attorney's fees are denied. The requests of defendants ASI and Prudential for an injunction with respect to future litigation is denied. However, plaintiff is cautioned that any litigation in this forum attempting to revive the claims addressed herein may subject her to sanctions. Plaintiff's motions are denied as moot.

IT IS SO ORDERED.

DATE: May 22, 1995

Syracuse, New York

ROSEMARY S. POOLER

UNITED STATES DISTRICT JUDGE



Slip Copy, 2014 WL 7410227 (N.D.N.Y.)
**(Cite as: 2014 WL 7410227 (N.D.N.Y.))**

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Johnathan JOHNSON, Plaintiff,
v.
David ROCK, Superintendent of Upstate Corr.
Fac.; Brian Fischer, Commissioner of Doccs; An-
thony Carozzoni, Counsel Elmira Corr. Fac.; Trudy
Lynn–Boyea, Counselor, Upstate Corr. Fac.; John
Carvill, Classification Analyst, Doccs; Douglas
Botford, Director of Classification and Movement;
Theresa Knapp–David, Classification and Move-
ment; Norm Bezio, Former Deputy Superintendent
of Security, Upstate Corr. Fac.; and Lucien Leclaire
Jr., Former Deputy Commissioner of Doccs, De-
fendants.

No. 9:14–CV–815 (DNH/ATB).
Signed Dec. 31, 2014.

Johnathan Johnson, Malone, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General for
the State of New York, David J. Sleight, Esq., Ass't
Attorney General, of Counsel, Albany, NY, for De-
fendants.

### DECISION and ORDER
DAVID N. HURD, District Judge.

**\*1** Pro se plaintiff Johnathan Johnson brought
this civil rights action pursuant to 42 U.S.C. § 1983
. On December 3, 2014, the Honorable Andrew T.
Baxter, United States Magistrate Judge, advised by
Report–Recommendation that defendants' motion to
dismiss be granted and the complaint be dismissed
in its entirety as to all defendants with prejudice.
He further recommended that defendants' motion
for sanctions and plaintiff's motion for sanctions be
denied. Plaintiff timely filed objections to the Re-
port–Recommendation. Defendants responded to
plaintiff's objections and seek reconsideration of
one portion of the Report–Recommendation.

Based upon a de novo review of the portions of
the Report–Recommendation to which the parties
objected, the Report–Recommendation is accepted
and adopted in all respects. *See* 28 U.S.C. §
636(b)(1).

Therefore, it is

ORDERED that

1. Defendants' motion to dismiss is GRANTED
and the complaint is DISMISSED in its entirety as
to all defendants with PREJUDICE;

2. Defendants' motion for sanctions and
plaintiff's motion for sanctions are DENIED; and

3. The Clerk is directed to enter Judgment ac-
cordingly, serve a copy of this Decision and Order
upon plaintiff in accordance with the Local Rules
and close the file.

IT IS SO ORDERED.

### ORDER and REPORT–RECOMMENDATION
ANDREW T. BAXTER, United States Magistrate
Judge.

This matter has been referred to me for Report
and Recommendation pursuant to 28 U.S.C. §
636(b) and Local Rules N.D.N.Y. 72.3(c). On July
7, 2014, defendants removed this action from the
New York State Supreme Court, Franklin County.
(Dkt. No. 1). In this civil rights complaint, plaintiff
alleges that he was the subject of a "retaliatory
transfer" from Elmira Correctional Facility
("Elmira") to Upstate Correctional Facility
("Upstate") on November 16, 2006, and that after
he arrived at Upstate, some of the defendants failed
to protect him from attacks by unknown gang mem-
bers in violation of his right to be free from cruel
and unusual punishment under the Eighth Amend-
ment. (Compl.) (Dkt. No. 2). Plaintiff seeks a sub-
stantial amount of monetary damages.

Presently before the court is defendants' motion

to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). (Dkt. No. 2). Plaintiff has responded in opposition to the motion and has moved to remand this case to New York State Supreme Court. (Dkt.Nos.4, 5). Plaintiff's motion to remand contains a request for "sanctions" against defendants for the "impropriety of removal" pursuant to Fed.R.Civ.P. 11 and 28 U.S.C. § 1447. (Dkt. No. 5 at 1–2). Defendants have responded in opposition to the motion to remand. (Dkt. No. 6). Defendants have also requested that the court consider sanctions against plaintiff based upon his vexatious litigation. (Dkt. No. 2–1 at 2). For the following reasons, this court will deny plaintiff's motion to remand and recommend that the defendants' motion to dismiss be granted, but will not recommend that sanctions be assessed at this time, either against plaintiff or against defendants.

### I. *Facts and Procedural Background*

**\*2** Plaintiff alleges that in "2000," he filed an Article 78 [FN1] proceeding in Franklin County Court: *Matter of Johnson v. Lucien LeClaire*, Index. No.2007–0204—RJI No. 16–1–2007–0078. [FN2] Plaintiff seeks to claim that his Article 78 petition raised claims of "gang member[ ] enemies at Upstate ... in June 2000." (Compl.¶ 4). Plaintiff states that on "or about" June 23, 2000, plaintiff was transferred from Upstate to a one-person cell at Southport Correctional Facility ("Southport") for "unsuitable behavior." (Compl.¶ 5). Plaintiff states that he was confined at Southport for six years until he was transferred to Elmira in January 2006. (Compl.¶ 6).

> FN1. Plaintiff is referring to Article 78 of the New York State Civil Practice Law & Rules. N.Y. Civ. Prac. L. & R. Art. 78, § 7000 et seq. The issues that may be raised in an Article 78 proceeding are listed in section 7803. It is not completely clear from the complaint what claims plaintiff raised in that proceeding.

> FN2. It is odd that an action filed in 2000 would have received a 2007 Index Number

and RJI number, but this discrepancy does not affect this court's decision.

Plaintiff claims that on November 13, 2006, he and the guards who were escorting him to the shower were "thrown on" by an inmate on the gallery in the Special Housing Unit ("SHU"). (Compl.¶ 7). The inmate in question was subsequently moved to a different cell location so that he and plaintiff would not be taken to the shower at the same time. Plaintiff asked Superintendent John Burge [FN3] to "preserve[ ] all [the] evidence," which included a video tape of the "incident" for "future court actions." (Compl.¶¶ 8–9). Plaintiff claims that on November 15, 2006, Superintendent Burge came through the SHU area and informed the plaintiff that he "was getting rid of him" because of his intent to file a lawsuit stemming from the November 13, 2006 incident. (Compl.¶ 10). Plaintiff alleges that this "retaliatory transfer" occurred the next day (November 16, 2006).

> FN3. The court notes that Superintendent Burge is not a defendant in this action.

Plaintiff claims that upon his arrival at Upstate, he "informed" defendants Brian Fischer, Theresa Lynn–Boyea, Norm Bezio, Lucien LeClaire, "and other officials" that plaintiff had enemies/gang members at Upstate. (Compl.¶ 12). It is unclear from the complaint, but it appears that plaintiff alleges that the transfer from Elmira was requested by defendants Anthony Carozzoni (a counselor at Elmira) and Superintendent Burge. (Compl.¶ 13). Plaintiff states that defendant John Carvill (Classification Analyst for the Department of Corrections and Community Supervision ("DOCCS")) caused the transfer from Elmira to Upstate, even though plaintiff had been transferred out of Upstate in 2000. (*Id.*)

Plaintiff alleges that on April 25, 2007, he wrote to defendants Fischer, Knapp–David, and Le-Claire informing them of the numerous "inmate gang members at Upstate to no avail to date." (Compl.¶ 14). Plaintiff claims that on November

16, 2006, he also told defendant Bezio (Deputy Superintendent for Security at Upstate) about the enemy gang members, but to "no avail to date." (Compl.¶ 15).

Plaintiff claims that on an unspecified date in December of 2007, he was "attacked" by an "unknown gang member" on the Upstate/Downstate Correctional Bus coming from Federal custody back to Upstate. (Compl.¶ 16). Plaintiff claims that he and his family were attacked by "gang members" in May of 2008 in the Upstate visiting room. (Compl.¶ 17). Plaintiff states that on January 7, 2011, he was attacked by a "gang member" in the holding pen area at Upstate. (Compl.¶ 18). The fourth alleged attack occurred on August 27, 2012 on the Upstate "draft bus" and subsequently, in the draft room area. (Compl.¶ 19). Plaintiff claims that unnamed guards conspired to "cover up" this attack. (*Id.*) The fifth attack occurred on October 3, 2012, when feces was thrown on plaintiff during recreation in "Eight Building." (Compl.¶ 20).

**\*3** Plaintiff alleges that on October 24, 2012, plaintiff was being escorted back from court proceedings, and the "prison guard" who was assigned to the console, opened the door for "inmate gang members" to attack the plaintiff. (Compl.¶ 21). However, plaintiff states that the gang member "attempted to come at plaintiff[ ]." (*Id.*) Although the complaint lists a "Seven[th] Attack" in December of 2012, plaintiff does not describe any attack during that time period. (Compl.¶ 22). He claims that "gang members" are putting notes on meal trays, stating that plaintiff raped a child. Plaintiff claims that this conduct put his life in danger and claims that no actions have been taken to protect his safety at Upstate.[FN4] (*Id.*) Plaintiff claims that he has been confined at Upstate together with inmates who are on his "separatee" list, and that in 2008, he was housed in "Eleven Building" wherein a "listed enemy" was also housed, "under the supervision of David Rock, Trudy Lynn–Boyea, Brian Fischer, John Cavill, Theresa Knapp–David, Lucien LeClaire, and Douglas Botford.[FN5] (Compl.¶ 23).

Plaintiff also claims that defendant Carozzoni "conspired" with defendants Carvil and Superintendent Burge to have plaintiff transferred to Upstate "where he is surrounded by gang members to date." (Compl.¶ 24).

> FN4. Plaintiff does not allege any incidents or injuries resulting from this alleged conduct by unnamed "gang members."

> FN5. Defendant Botford is the Director of Classification and Movement. This is the first and only time that he is mentioned in the complaint.

Plaintiff states that he brings this action pursuant to section 1983, raising claims of "deliberate indifference, cruelty [sic] and unusual punishment and retaliatory acts for court's access." (Compl.¶ 25).

## II. *Motion to Remand*

### A. Legal Standards

### 1. Removal

"Any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441; *see Lincoln Property Co. v. Roche, 546 U.S. 81, 83, 126 S.Ct. 606, 163 L.Ed.2d 415 (2005)* (explaining that section 1441 "authorizes the removal of civil actions from state court to federal court when the action initiated in state court is one that could have been brought, originally, in a federal district court). However, " '[i]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability.' " *Purdue Pharma L.P. v. Kentucky, 704 F.3d 208, 213 (2d Cir.2013)* (quoting *Lupo v. Human Affairs Int'l, Inc., 28 F.3d*

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

269, 274 (2d Cir.1994)).FN6

> FN6. There are exceptions to removal jurisdiction. Under 28 U.S.C. § 1445, certain civil actions against railroads or common carriers, civil actions arising under the workers' compensation laws of a state, and any civil action arising under section 40302 of the Violence Against Women Act, may not be removed to any district court of the United States. Plaintiff does not claim that this case is in any category of nonremovable actions under section 1445.

The procedural requirements for removal to federal court are as follows:

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

**\*4** 28 U.S.C. § 1446(b)(1). The thirty-day window for removal contained in section 1446(b)(1), while not jurisdictional, is "rigorously enforce[d]" by courts absent a finding of waiver or estoppel. *Somlyo v. J. Lu–Rob Enters., Inc.,* 932 F.2d 1043, 1046 (2d Cir.1991), *superseded on other grounds by rule as stated in Contino v. United States,* 535 F.3d 124, 127 (2d Cir.2008).

The subject matter jurisdiction of the federal district courts is limited and is set forth generally in 28 U.S.C. §§ 1331 and 1332. Under these statutes, federal jurisdiction is available only when a federal question is presented or when the parties are of diverse citizenship, and the amount in question exceeds $75,000. In this case, defendants' removal was pursuant to Section 1331, which sets forth fed-

eral-question jurisdiction, and states:

> The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

28 U.S.C. § 1331. "Generally, '[t]he presence or absence of federal-question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.' " *NYU Hosp. Ctr. Tisch v. Local 348 Health & Welfare Fund,* No. 04 Civ. 6937, 2005 WL 53261, at \*1 (S.D.N.Y. Jan.6, 2005) (quoting *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)) (internal quotation marks omitted).

**2. Remand**

After an action is removed from state court to federal court, remand may be granted on one of two grounds: (1) a defect in removal procedure or (2) a lack of subject matter jurisdiction. 28 U.S.C. § 1447. A motion to remand "on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal ...." 28 U.S.C. § 1447(c).

**B. Application**

**1. Removal**

Plaintiff filed this action on April 16, 2013 in the New York State Supreme Court, Franklin County. (Def.s' Ex. A) (Dkt. No. 1). The complaint was ultimately served on defendants on June 5, 2014. (Def.s' Ex. H). On July 7, 2014, defendants filed a Notice of Removal in this court pursuant to 28 U.S.C. § 1441(a) and 1446. (Dkt. No. 1) (Notice of Removal). All defendants except defendant Carozzoni joined in the petition for removal. On a motion to remand, the defendant bears the burden of demonstrating the propriety of removal. *Cal. Pub. Employees' Ret. Sys. v. Worldcom, Inc.,* 368 F.3d 86, 100 (2d Cir.2004) (citation omitted).

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

First, the defendants' notice of removal was timely filed on July 7, 2014. Defendants state that they were served with the complaint on June 5, 2014. (Dkt. No. 1 ¶ 14). Plaintiff's motion to remand also states that he served the defendants on June 5, 2014. (Dkt. No. 5 ¶ (m)). Thirty days from Thursday, June 5, 2014 would have been Saturday, July 5, 2014. However, pursuant to Fed.R.Civ.P. 6(a)(1)(C), when computing time for a period stated in "days or a longer unit," if the last day of the period is a Saturday, Sunday, or legal holiday, "the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." *Id.* Because July 5, 2014 was a Saturday, defendants had until Monday July 7, 2014 to file their notice of removal.

**\*5** Second, in their notice of removal, defendants assert that the district court has original jurisdiction over the federal constitutional claims in plaintiff's complaint pursuant to Section 1331. (Dkt. No. 1 ¶ 3). On its face, plaintiff's complaint asserts claims arising under the Constitution of the United States. (*See* Compl. ¶ 25 (alleging that defendants violated plaintiff's federal constitutional rights and bringing this action pursuant to 42 U.S.C. § 1983)). It would appear that removal jurisdiction exists. Nevertheless, plaintiff contends that removal jurisdiction is unavailable.

## 2. Remand

In his motion to remand, plaintiff asserts that because both state court and federal court have jurisdiction over his federal constitutional claims brought under Section 1983, his claims should have remained in state court. (Dkt. No. 5 ¶ (g)). Plaintiff cites *Haywood v. Drown,* which states that "[i]n our federal system of government, state as well as federal courts have jurisdiction over suits brought pursuant to 42 U.S.C. § 1983." *Haywood,* 556 U.S. 729, 731, 129 S.Ct. 2108, 173 L.Ed.2d 920 (2009). Although plaintiff is correct that both state and federal courts may entertain suits brought pursuant to Section 1983, this concurrent jurisdiction does not preclude removal. Indeed, it is the existence of con-

current jurisdiction which allows a defendant to remove an action from state court to federal court. *See, e.g., Dorsey v. City of Detroit,* 858 F.2d 338, 341 (6th Cir.1988) ("The weight of judicial authority supports the conclusion that 'a Congressional grant of concurrent jurisdiction in a statute does not imply that removal is prohibited.' ") (citing cases); *Pace v. Hunt,* 847 F.Supp. 508, 509–10 (S.D.Miss.1994) ( "[T]he removal statute would be eviscerated if actions such [as those arising under Section 1983] were remanded simply because such courts have concurrent jurisdiction.").

Plaintiff also argues that this court does not have "original jurisdiction" over this action because plaintiff is subject to the "three-strikes" rule pursuant to 28 U.S.C. § 1915(g), and he could not have filed his action in this court. [FN7] First, plaintiff is incorrect about the three-strikes rule. The rule does not prevent plaintiff from filing an action in federal court. Rather, it prevents plaintiff from filing an action "in forma pauperis." If plaintiff paid the filing fee, he would be able to file his action, whether he had three-strikes or not. [FN8]

> **FN7.** The three-strikes provision was adopted as part of the Prison Litigation Reform Act ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1995). The principal purpose of the statute was to deter frivolous prisoner litigation. *See Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997).

> **FN8.** Additionally, as plaintiff is well-aware, the three-strikes rule contains an exception when the plaintiff claims he is in "imminent danger." *See Chavis v. Chappius,* 618 F.3d 162, 169–70 (2d Cir.2010).

The three-strikes rule is not "jurisdictional" and would not deprive the court of "original jurisdiction" over the action itself because the action is based upon a federal statute and the United States Constitution. *See Lisenby v. Lear,* 674 F.3d 259, 262–63 (4th Cir.2012) (nothing in the PLRA or the removal statutes defeats the court's jurisdiction over

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

a section 1983 action, and the requirement that a three-strikes plaintiff pay the filing fee is procedural, not jurisdictional). Thus, the fact that plaintiff would have been barred by the three-strikes rule from filing an action without the prepayment of fees is not a basis for remand.

**\*6** Plaintiff cites *Bartelli v. Beard,* No. 3:CV–08–1 143, 2008 WL 4363645 (M.D.Pa. Sept.24, 2008), which held that the three-strikes rule applied to a case removed from state court, notwithstanding the payment of the filing fee by the defendants. *Id.* at \*5. The court then stated that it was recommending "that the present case of Plaintiff be dismissed, pursuant to the three strike rule, without prejudice to allowing him to re-file his action if he pays the full filing fee. In the alternative, we will recommend that this case be remanded to state court." *Id.* The court in *Bartelli* stated that the plaintiff should not be allowed to "circumvent" section 1915(g) by filing his state court action in forma pauperis. *Id.* at \*6. Over the defendants' objections, the district court appeared to disregard the Magistrate Judge's recommendation that the case be dismissed without prejudice to plaintiff re-filing and paying the fee, and instead, ordered the alternative relief of remand to state court, without any analysis of the authority to remand. 2008 WL 4363645 at \*1–2. In doing so, the court relied upon on *Farnsworth v. Washington State Department of Corrections,* No. C07–206, 2007 WL 1101497 (W.D.Wash. Apr. 9, 2007), in which the court applied section 1915(g) to a case that was removed by the defendants, but ordered dismissal of the action rather than remand to state court.

Plaintiff also cites a Third Circuit case which was a challenge to section 1915(g) itself, but where the court found that the application of section 1915(g) was not unconstitutional and that "the appellant prisoner overlooked the fact that prisoners may seek relief in state court, where limitations on filing *in forma pauperis* may not be as strict." *Bartelli,* 2008 WL 4363645, at \*2 (citing *Abdul Akbar v. McKelvie,* 239 F.3d 307 (3d Cir.2001)).

This court does not agree with the analysis in the cases cited by plaintiff. These cases ignore the fact that the plaintiff did not choose to bring the action in federal court, and the defendants paid the filing fee. Neither court discussed the removal statute or the whether the federal court had the authority to remand the action. This court finds *Lisenby, supra* and *Dotson v. Shelby County,* No. 13–2766, 2014 WL 3530820 (W.D.Tenn. July 15, 2014) more persuasive. In *Dotson,* the three-strikes plaintiff filed his civil rights action in state court, and defendants removed the case to federal court. *Id.* at \*1–2. In analyzing the propriety of removal, the court stated that it considered whether plaintiff's status as a three-strikes filer precluded him from litigating in federal court, but found that because "28 U.S.C. § 1915(g) does not alter the Court's subject-matter jurisdiction, a district court cannot remand a properly removed action to state court on the ground that the prisoner is a three-strike filer." *Id.* at 3 (citing *Lloyd v. Benton,* 686 F.3d 1225, 1227–28 (11th Cir.2012); *Lisenby v. Lear,* 674 F.3d 259, 262–63 (4th Cir.2012); *Hartley v. Comerford,* No. 3:13–CV–488, 2014 WL 241759, at \*5–6 (N.D.Fla. Jan. 22, 2014) (denying prisoner's motion to remand case on ground that he is a three-strike filer); *Lanier v. Holiday,* No. 05–2203, 2005 WL 1513106, at \*2 (W.D.Tenn. June 16, 2005) ("Because the complaint asserts claims pursuant to 42 U.S.C. § 1983, over which the federal courts have original jurisdiction, the defendants have an absolute right to remove it from state court.")

**\*7** The court in *Dotson* also cited cases in which the plaintiff was allowed to proceed after removal notwithstanding his three-strike status. *Id.* (citing *Gay v. Chandra,* 682 F.3d 590, 596 (7th Cir.2012) ("The PLRA's three-strikes obstacle does not apply in state courts, where Gay filed this suit."); *Howard v. Braddy,* No. 5:12–CV–404, 2013 WL 5461680, at \*4 (M.D.Ga. Sept. 30, 2013) (denying motion to dismiss under § 1915(g) because "[t]he clear language of the statute applies only to actions in forma pauperis .... The Court will not construe 28 U.S.C. § 1915(g) to apply to non-in

forma pauperis cases....") (Report–Rec., adopted by district court); *Gray v. Cardoza,* No. CIV S–05–2611, 2006 U.S. Dist. LEXIS 43710, at *5 (E.D. Cal. June 27, 2006) (because the filing fee was paid by counsel for defendant, plaintiff was not barred by 28 U.S.C. § 1915(g) from proceeding in federal court) (Report–Rec), *adopted,* 2006 U.S. Dist. LEXIS 71167 (E.D.Cal. Sept. 29, 2006); *see also Jae v. Stickman,* No. 12–1332, 2012 WL 5830633 (W.D.Pa. Nov.16, 2012) (declining to sua sponte dismiss removed case filed by three-strike filer without addressing whether § 1915(g) provided a basis for dismissal)).

Plaintiff also alleges that removal was improper because defendant Carozzoni did not consent to removal. As defense counsel points out, only defendants who have been served must consent to the removal. *Varela v. Flintlock,* 148 F.Supp.2d 297, 300–301 (S.D.N.Y.2001). Plaintiff claims that he served defendant Carozzoni on June 5, 2014, at the same time that he served the other defendants, pursuant to the state court judge's order allowing for "alternative service." (Def.s' Ex. G to Notice of Removal). However, the state court's order directed that the defendants be served at their place of employment. (*Id.*) Defense counsel states in his affidavit that defendant Carozzoni's employment with DOCCS ended on April 4, 2014. (Dkt. No. 6 at 8–9 & Whitaker Decl. ¶ 2). <sup>FN9</sup> Thus, defendant Carozzoni was not properly served on June 5, 2014, nor does it appear that he was served subsequent thereto, and therefore, defendant Carozzoni was not required to consent to the removal.

> FN9. Terry Whitaker is the Deputy Superintendent of Administration at Elmira. (Whitaker Decl. ¶ 1).

Plaintiff has cited no other viable basis for remand. Thus, this court must deny plaintiff's motion to remand and consider defendants' motion to dismiss.

### III. *Motion to Dismiss*

To survive dismissal for failure to state a claim,

the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.,* 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant ' "fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atl. Corp.,* 550 U.S. at 555 (citation omitted).

**\*8** When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir.1995). The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich,* 408 F.3d 124, 128 (2d Cir.2005); *Tapia Ortiz v. Doe,* 171 F.3d 150, 152 (2d Cir.1999) (*per curiam* ).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor,* 220 F.3d 81, 88 (2d Cir.2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment). Finally, the court may consider matters of which judicial notice may be taken, such as public filings and administrative decisions. *See Kavowras v. New York Times, Co.,* 328 F.3d 50, 57 (2d Cir.2003) (citing *inter alia County Vanlines, Inc. v. Experian*

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

*Info. Solutions, Inc.,* 205 F.R.D. 148, 154 (S.D.N.Y.2002) (taking judicial notice of NLRB decisions)). *See also Combier Kapel v. Biegelson,* 242 F. App'x 714, 715 (2d Cir.2007) (taking judicial notice of the Impartial Hearing Officer's decision as well as certain other documents in the administrative record of an IDEA case); *In re Howard's Exp., Inc.,* 151 F. App'x 46, 48 (2d Cir.2005) (taking judicial notice of Bankruptcy Court docket); *Caro v. Fidelity Brokerage Services, LLC,* No. 3:12–CV–1066, 2013 WL 3299708, at *6 (D.Conn. July 26, 2013) (taking judicial notice of record in prior litigation between the same parties).

## IV. *Statute of Limitations*

### A. Legal Standards

Federal courts borrow the state law personal injury statute of limitations period for purposes of filing section 1983 actions. *Wilson v. Garcia,* 471 U.S. 261, 276, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). In New York State, the relevant limitations period is three years. *Owens v. Okure,* 488 U.S. 235, 250–51, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). *See* N.Y. Civ. Prac. L & R. § 214(5). Thus, unless the limitations period is tolled for some reason, a plaintiff must file his section 1983 civil rights action within three years of the accrual of each cause of action. Federal law, governs the question of when a section 1983 claim accrues. *Covington v. City of New York,* 171 F.3d 117, 121 (2d. Cir.1999) (citing *Morse v. University of Vermont,* 973 F.2d 122, 125 (2d. Cir.1992)). Generally, under federal law, a cause of action accrues when "the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* (quoting *Singleton v. City of New York,* 632 F.2d 185, 191 (2d Cir.1980) (internal quotation marks omitted)). Although federal law determines when a section 1983 claim accrues, state tolling rules determine whether the limitations period has been tolled. *Abbas v. Dixon,* 480 F.3d 636, 641 (2d Cir.1997).

### B. Application

**\*9** Plaintiff argues that the alleged "retaliatory transfer" took place on November 16, ***2006.*** Plaintiff filed this action in New York State Supreme Court on April 16, ***2013.*** (Dkt. No. 1–1 at 3). The plaintiff signed his state court complaint on April 12, 2013. Even assuming that the date of signing is the date of filing, the statute of limitations has run on his "retaliatory transfer" claim. In fact, the statute of limitations has run on any claim that accrued prior to April 12, 2010. This includes any claim based on conduct occurring in 2007 and 2008. (Compl.¶¶ 16, 17).

There is absolutely no basis for any kind of tolling in this case, equitable or otherwise. Plaintiff is a very frequent litigator, who is well-aware of his rights and the basis for any claims. Mr. Johnson is a plaintiff in approximately 42 civil rights cases in this court alone, including cases filed in 2010, 2011, and 2012. Thus, there is no basis for alleging that he has somehow been prevented from filing lawsuits, except by his own frivolous filings. Thus, this court recommends dismissing any claim accruing prior to 2010 based upon the statute of limitations. (Compl.¶¶ 7–17). This includes any claim for retaliatory transfer in 2006 against defendants Carozzoni and Carvill and any failure to protect claims that accrued prior to 2010 as against any of the defendants.

## V. *Res Judicata*

### A. Legal Standards

Res judicata includes two concepts: claim preclusion and issue preclusion, also known as collateral estoppel. *Rivera v. City of New York,* —— F. App'x ——, 2014 WL 5463320, at *2 (2d Cir. Oct.29, 2014). Under the doctrine of res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. The doctrine bars subsequent litigation if the earlier decision was (1) a final judgment on the merits, (2) the previous action involved the plaintiff or those in privity with him, and (3) the claims asserted in the subsequent action were, or

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

could have been raised in the prior action. *Id.* (quoting *Monahan v. New York City Dep't of Corr.,* 214 F.3d 275, 285 (2d Cir.2000)). *See also Ajamian v. Nimeh,* No. 1:14–CV–320, 2014 WL 6078425, at *2 (N.D.N.Y. Nov. 13, 2014) (citing *EDP Med. Computer Sys., Inc. v. United States,* 480 F.3d 621, 624 (2d Cir.2007) (internal citations and quotation omitted)). Under claim preclusion, even if the plaintiff's claims are based upon different legal theories, they are barred in the subsequent action, provided they arise from the same transaction or occurrence. *Id.* (citing *LTec Elecs. Corp. v. Cougar Elec. Org., Inc.,* 198 F.3d 85, 88 (2d Cir.1999) (per curiam)).

The doctrine of collateral estoppel provides that once a court has actually and necessarily decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue on a different cause of action involving a party to the first case. *Rivera v. United States,* No. 3:10–CV–1970, 2012 WL 3043110, at *2 n. 5 (D.Conn.2012) (discussing collateral estoppel) (citations omitted). Collateral estoppel is applicable if (1) the issues in both proceedings are identical; (2) the issue of law or fact was "actually litigated and actually decided" in the prior proceeding; (3) the party against whom preclusion is sought had a full and fair opportunity for litigation in the prior proceeding; and (4) the previously litigated issues were necessary to support a valid and final judgment on the merits. *Ali v. Mukasey,* 529 F.3d 478, 489 (2d Cir.2008) (citing *Gelb v. Royal Globe Ins. Co.,* 798 F.2d 38, 44 (2d Cir.1986)); *Wade v. City of Kingston,* No. 1:13–CV–623, 2014 WL 4897244, at *4 (N.D.N.Y. Sept. 30, 2014) (citing *Davis v. Halpern,* 813 F.2d 37, 39 (2d Cir.1987) (citation omitted)). *See also NML Capital, Ltd. v. Banco Central de la Republica Argentina,* 652 F.3d 172, 184–85 (2d Cir.2011) (discussing factors considered for collateral estoppel). Whether a previous federal court judgment has preclusive effect in a subsequent action is a question of federal common law. *NML Capital, Ltd.,* 652 F.3d at 184 (citing *Taylor v. Sturgell,* 553 U.S. 880, 891, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008)).

**B. Application**

**\*10** In this case, one of plaintiff's claims is that he was attacked on January 7, 2011. (Compl.¶ 18). Plaintiff does not explain the connection between any of the defendants and this alleged attack, other than his conclusory allegations that he informed defendants in 2006 and 2007 that he had enemies at Upstate. The previous alleged attack occurred in 2008. (Compl.¶ 17). In any event, plaintiff raised this claim in one of his many previous federal court actions.[FN10] *Johnson v. Lynn Boyea,* 9:11–CV–386. (*See* Compl. in 11–CV–386, Dkt. No. 1 at ¶ 1). In 11–CV–386, plaintiff claimed that "On January 7, 2011, at Upstate Correctional Facility Eleven Building lower holding pens at approximately 9:00 a.m. plaintiff was attack[ed] by a gang member [Blood] enemy." *Id.* Plaintiff claimed that defendant Corrections Counselor Trudy Lynn–Caron (now Trudy Lynn–Boyea) was "previously informed of plaintiff's enemies gang members in 2008 and 2011 and has refused to transfer plaintiff from this facility to date." (*Id.* at ¶ 5).

> [FN10]. In 11–CV–386 plaintiff also stated that he has informed defendants Fischer, LeClaire, and David upon his arrival at Upstate that he was "surrounded" by gang members in 2006, 2007, and 2008. (Compl. in 11–CV–386 ¶ 2). This paragraph states that he was "threatened" by these gang members, but there was no indication of any "assaults" between 2008 and 2011. Defendants Fischer, LeClaire, and Knapp–David were dismissed from the action based on a lack of personal involvement. (Dkt. No. 15 at 5–6 (Rep't Rec.); Dkt. No. 17 (Order Approving Rep't Rec.) In this case, even if claims regarding the previous assaults were not barred by the statute of limitations, they would be barred by res judicata because plaintiff clearly could have raised these claims in his previ-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

ous federal court action against the same defendants.

On June 17, 2013, Magistrate Judge David Homer recommended granting defendant Lynn–Caron's motion for summary judgment and dismissing plaintiff's action in its entirety. (Dkt. No. 96 in 11–CV–386). The evidence considered in the motion for summary judgment included a video tape of the incident. (*Id.* at 2–3 & n. 4). Magistrate Judge Homer found that plaintiff had failed to allege the requisite "physical injury" to sustain a claim under the Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e(e). (*Id.* at 9–10). The court also considered plaintiff's "failure to protect" claim under the Eighth Amendment and found that it failed under both the objective and the subjective prong of Eighth Amendment analysis. (*Id.* at 11–13). Judge Homer also found that there was no allegation that either of the inmates had prior physical contact with plaintiff, that defendant Lynn–Caron knew that the inmate was an enemy of plaintiff's, or that the two inmates were going to be placed in the same holding pen. (*Id.* at 12–13). The issue of the 2011 "assault" was fully litigated and decided against plaintiff. Plaintiff had every opportunity to make his claim in 11–CV–386, and he is barred by res judicata and collateral estoppel from bring any claim regarding the 2011 assault against any of the defendants.

## VI. *Personal Involvement*

### A. Legal Standard

In order to recover damages in a civil rights action, plaintiff must allege a defendant's direct or personal involvement in the alleged constitutional deprivations. *Farrell v. Burke,* 449 F.3d 470, 474 (2d Cir.2006). "The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which

unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [plaintiffs] by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (*citing, inter alia, Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)).[FN11] Personal involvement requires that the individual who is, or becomes aware of, the violation, have the ability to take action to correct the problem. *See Conklin v. City of Suffolk,* 859 F.Supp.2d at 441–42 (personal involvement requires knowledge *and* the ability to take action).

> FN11. Many courts in this Circuit have discussed whether all of the personal involvement factors, set forth in *Colon,* are still viable after *Ashcroft v. Iqbal,* 556 U.S. 662, 676, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). *See, e.g., Conklin v. County of Suffolk,* 859 F.Supp.2d 415, 439 (E.D.N.Y.2012) (discussing cases). However, the court in *Conklin* ultimately determined that it was unclear whether *Colon* had been overruled or limited, and continued to apply the factors outlined in *Colon. Id.* In making this determination, the court in *Conklin* stated that "it remains the case that 'there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor.' " *Id.* (quoting *Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.,* 811 F.Supp.2d 803, 815 (S.D.N.Y.2011)). See also *Young v. Choinski,* 15 F.Supp.3d 172, No. 3:10–CV–606, 2014 WL 962237, at *10–12 (D.Conn. Mar. 13, 2014) ("Although *Iqbal* does arguably cast doubt on the viability of certain categories of supervisory liability, where the Second Circuit has not revisited

the criteria for supervisory liability, this Court will continue to recognize and apply the *Colon* factors.").

## B. Application

***11** In this case, plaintiff has named defendants Rock, Fischer, Bezio, LeClaire, Knapp–David, Carvill, and Botsford. Plaintiff claims that these defendants were told in 2006 that plaintiff had enemies at Upstate. (Compl.¶ 12). Plaintiff claims that he wrote a letter to defendants Fischer and Knapp–David in April of 2007, but "to no avail to date." (Compl.¶ 14). As stated above, any claims based on conduct prior to 2010 are barred by the statute of limitations. In addition, defendants Fischer, LeClaire, Knapp–David, Carvill, and Botsford are supervisory defendants who have offices in Albany and do not work at Upstate. To the extent that plaintiff alleges that he wrote letters to these defendants, but that his letters were ignored, such allegations are insufficient to establish personal involvement. *See Smart v. Goord,* 441 F.Supp.2d 631, 642–643 (S.D.N.Y.2006) (the failure of a supervisory official to investigate a letter of protest written by an inmate is not sufficient to show personal involvement).

Plaintiff claims that he was attacked on August 27, 2012. (Compl.¶ 19). On October 3, 2012, plaintiff claims that someone threw feces at him during recreation. (Compl.¶ 20). On October 24, 2012, plaintiff claims that a sergeant, assigned to the console, opened the cell door for an inmate who "attempted to come at plaintiff." (Compl.¶ 21). The complaint does not allege anyone's responsibility for these three incidents. Plaintiff only alleges that the incidents occurred. Although plaintiff titles his next claim "Seven Attack," he only states that in December of 2012, plaintiff informed defendants Fischer and Rock that gang members were "putting plaintiff's life in jeopardy" by placing notes in "numerous meal trays," accusing plaintiff of raping a little girl. (Compl.¶ 22). Plaintiff does not allege that he was harmed or attacked as a result. Plaintiff alleges only that defendants have not taken any ac-

tion to protect him. (*Id.*)

There is absolutely no connection between the supervisory defendants and any of the incidents described by plaintiff. The fact that plaintiff may have written to defendant Fischer and some of the other Albany defendants in 2006 or 2007 does not show that they were personally involved in conduct that occurred in 2012. Plaintiff's conclusory allegations are insufficient to allege the requisite personal involvement. Thus, the complaint may be dismissed as to defendants Fischer, LeClaire, Knapp–David, Carvill, and Botsford. The complaint may also be dismissed as against defendants Rock and Bezio. Even though both of these defendants work at Upstate, there is no indication that either of them were aware of any danger with respect to the recent incidents.

## VII. *Failure to Protect*

### A. Legal Standards

An inmate has a right under the Eighth and Fourteenth Amendments to be spared "the 'unnecessary and wanton infliction of pain. ' " *Hendricks v. Coughlin,* 942 F.2d 109, 112 (2d Cir.1991) (citation omitted). An inmate's allegation that a defendant was deliberately indifferent in failing to protect him from the violence of other inmates states a claim under section 1983. *Id.* at 113.

***12** In order to state an Eighth Amendment claim for failure to protect an inmate, the plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm, ***and*** prison officials acted with deliberate indifference to that risk and the inmate's safety. *Farmer v. Brennan,* 511 U.S. 825, 836, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The plaintiff must show that prison officials ***actually knew of and disregarded*** an excessive risk of harm to the inmate's health and safety. *Id.* at 837. The defendant must be aware of the facts from which the inference can be drawn that a substantial risk of serious harm exists and the defendant must also draw that inference. *Id.*

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

## B. Application

There is absolutely no indication that the defendants were aware of a serious risk of harm to plaintiff. Plaintiff has alleged no injuries as the result of any of the "attacks." This is particularly true in the more recent incidents. Plaintiff alleges only that he was "attacked" on August 27, 2012, that on October 3, 2012, feces was thrown at him during recreation, and that on October 24, 2012, an inmate "attempted" to come at plaintiff. Plaintiff does not even allege that there was an incident in December of 2012, merely that he informed defendants Fischer and Rock that inmates were placing false accusations in notes which were placed on other inmates' food trays. Plaintiff's failure to protect claims must fail.

## VII. *Opportunity to Amend*

In addition to the requirement that pro se complaints must be "liberally construed," the court should generally not dismiss without granting leave to amend at least once. *Contreras v. Perimenis,* No. 13–3337, 2014 WL 1409495, at *1 (citing *Cuoco v. Moritsugu,* 222 F.3 99, 112 (2d Cir.2000)). The court may deny leave to amend when the amendment would be futile. *Id.* (citing *Pan gburn v. Culbertson,* 200 F.3d 65, 70–71 (2d Cir.1999)).

## B. Application

This case is clearly a situation in which plaintiff should not be afforded the opportunity to amend. As stated above, many of plaintiff's claims are barred by the statute of limitations, and one is barred by res judicata. Plaintiff has brought many similar cases in this district alone. Plaintiff has three-strikes in this court and granting him the opportunity to amend would not be appropriate under the circumstances.

## IX. *Sanctions*

## A. Legal Standards

The court has the authority to sanction parties and attorneys for frivolous and vexatious conduct before the court. *See Mahoney v. Yamaha Motor*

*Corp. U.S.A.,* 290 F.R.D. 363, 367 (E.D.N.Y.2013) (outlining the various bases for awarding sanctions) (citations omitted). One of the vehicles by which the court may impose sanctions is through its "inherent power," born of the "practical necessity" for a court to be able to manage its own affairs so as to achieve the orderly and expeditious disposition of cases *Id.* (citing *Revson v. Cinque & Cinque, P.C.,* 221 F.3d 71, 78 (2d Cir.2000)). Similar to sanctions under 28 U.S.C. § 1927, applicable to attorneys, the inherent power to sanction requires that the party requesting sanctions present " 'clear evidence that the challenged actions are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes.' " *Id.* (quoting *Oliveri v. Thompson,* 803 F.2d 1265, 1272 (2d Cir.1986)). " 'A claim lacks a colorable basis when it is utterly devoid of legal or factual basis.' " *Id.* (quoting *Reichmann v. Neumann,* 553 F.Supp.2d 307, 320 (S.D.N.Y.2008)). However, the court must find both lack of merit and improper purpose, neither alone with suffice. *Id.* (citations omitted).

## B. Application

**\*13** Defendants move for sanctions against plaintiff, and plaintiff requests sanctions in connection with the removal. Because this court has found that defendants' removal was proper, plaintiff's request for sanctions must be denied as moot. Defendants support their request for sanctions on the argument that plaintiff filed his case in New York State court in order to avoid the three-strikes rule in federal court. However, it was the defendants' choice to remove the action to federal court. There is concurrent jurisdiction over section 1983 actions in state court, and although this plaintiff may merit sanctions for many of his cases, because this court is recommending dismissal with prejudice, it is sufficient sanction for the plaintiff. The court is well-aware that plaintiff has multiple actions that defendants have been removed to federal court, and this court is not precluding a later finding that plaintiff has been vexatious in his behavior. But the court does not do so at this point.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

**WHEREFORE,** based on the findings above, it is

**ORDERED,** that plaintiff's motion to remand to state court (Dkt. No. 5) is **DENIED,** and it is

**RECOMMENDED,** that defendants' motion to dismiss (Dkt. No. 2), be **GRANTED** and the complaint **DISMISSED IN ITS ENTIRETY AS TO ALL DEFENDANTS WITH PREJUDICE,** and it is

**RECOMMENDED,** that defendants' motion for sanctions (Dkt. No. 2) and plaintiff's motion for sanctions (Dkt. No. 5) be **DENIED.**

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **fourteen (14) days** within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), & 6(e).

Filed Dec. 3, 2014.

N.D.N.Y.,2014.
Johnson v. Rock
Slip Copy, 2014 WL 7410227 (N.D.N.Y.)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.


Slip Copy, 2014 WL 272428 (N.D.N.Y.)
**(Cite as: 2014 WL 272428 (N.D.N.Y.))**

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Ruslan KONOVALCHUK, Plaintiff,
v.
Michael F. CERMINARO, Police Officer, Utica
Police Department; Anken, Police Officer, Utica
Police Department; French, Police Officer, Utica
Police Department; Aimedin Mekic, Police Officer,
Utica Police Department, Officer Moore, Police Of-
ficer, Utica Police Department, Scully, Police Sgt.,
Utica Police Department; Timothy Moore, Investig-
ator, Utica Police Department; Petrie, Police Of-
ficer, Utica Police Department; Cuda, Parole Of-
ficer; Pezdek, Parole Officer; Carrol, Senior Parole
Officer; City of Utica; County of Oneida; Alban
Uryniak, Utica Police Sgt.; James Watson, Utica
Police Captain; Jeffrey Farrell, Oneida County
Sheriff Deputy, Defendants.

No. 9:11–cv–01344 (MAD/CFH).
Jan. 24, 2014.

Ruslan Konovalchuk, Dannemora, NY, pro se.

Office of Corporation Counsel—City of Utica, John
P. Orilio, Esq ., Joan K. Harris, Esq., Mark C. Cur-
ley, Esq., Of Counsel, Utica, NY, for Defendants
Cerminaro, Anken, French, Mekic, Moore, Scully,
Timothy Moore, Petrie, City of Utica, County of
Oneida, Uryniak, Watson, and Farrell.

Barth, Sullivan & Behr, Daivd H. Walsh, IV, Esq.,
Of Counsel, Syracuse, NY, for the County Defend-
ants.

Office of the New York State Attorney General,
Kristen M. Quaresimo, AAG, Of Counsel, Albany,
NY, for Defendants Cuda, Pezdek, and Carrol.

## ORDER
MAE A. D'AGOSTINO, District Judge.

*1 Plaintiff, an inmate in the custody of the
New York State Department of Corrections and
Community Supervision ("DOCCS"), commenced
this action pursuant to 42 U.S.C. § 1983, alleging
that Defendants violated his rights under the First,
Fourth, and Fourteenth Amendments of the United
States Constitution. See Dkt. No. 56. The named
Defendants are nine law enforcement officers of the
Utica Police Department and the City of Utica (the
"City Defendants"), a Deputy Sheriff from the
Oneida County Sheriff's Department and the
County of Oneida (the "County Defendants"), and
three New York State Parole Officers (the "State
Defendants"). See id.

In his complaint, Plaintiff contends that De-
fendant Farrell violated his First and Fourteenth
Amendment rights when Defendant Farrell denied
him food and water, and exposed him to second
hand smoke, all done in retaliation for filing a com-
plaint against the arresting officers. See Dkt. No. 56
at ¶ 38. Further, Plaintiff alleges that his Fourth
Amendment right against the use of excessive force
was violated when: (1) Defendants Cerminaro,
Anken, French, Mekic, Moore, Cuda, and Pezdek
assaulted him while he was hand-cuffed, lying face-
down on the ground; (2) Defendant Carroll gripped
his neck and attempted to assault him with a police
radio; and (3) Defendant Cerminaro choked him
twice and dragged him to the police vehicle, hitting
his head on the car door. Liberally construed, the
complaint also appears to contend that he was ar-
rested without probable cause. Moreover, Plaintiff
claims that his Fourteenth Amendment rights were
violated when: (1) Defendants Carroll, Uryniak,
Scully, and Moore failed to intervene when he was
being assaulted on the ground and slammed against
a wall; (2) Defendants Cuda, Pezdek, Anken,
Scully, Uryniak, and Moore failed to intervene
when Defendant Carroll was holding him in a tight
grip and threatened him with a radio; (3) Defend-
ants Anken, French, Mekic, Moore, Uryniak,
Scully, Carroll, Cuda, and Pezdek failed to inter-

Slip Copy, 2014 WL 272428 (N.D.N.Y.)
**(Cite as: 2014 WL 272428 (N.D.N.Y.))**

vene when Defendant Cerminaro choked him twice and hit his head on the police car door; and (4) Defendants Cerminaro, Petrie, and Watson denied him medical care after being informed that he was hurt and in pain. As to Defendants Oneida and Utica, Plaintiff contends that they failed to train their employees, resulting in the above unconstitutional conduct.

Currently pending before the Court are (1) Plaintiff's motion for summary judgment (Dkt. No. 94); (2) the State Defendants' motion for summary judgment (Dkt. No. 97); (3) the County Defendants' cross-motion for summary judgment (Dkt. No. 98); and (4) the City Defendants' cross-motion for summary judgment (Dkt. No. 100). Although Plaintiff responded to the City Defendants' motion, he failed to respond to the County Defendants and the State Defendants' motions for summary judgment, despite being given notice of the consequences for failing to respond. *See* Dkt. No. 97 at 1–2; Dkt. No. 98–7.

**\*2** In an October 30, 2013 Report–Recommendation and Order, Magistrate Judge Hummel recommended that the Court (1) deny Plaintiff's motion for summary judgment; (2) grant the State Defendants' motion for summary judgment; (3) grant the County Defendants' cross-motion for summary judgment; and (4) grant-in-part and deny-in-part the City Defendants' cross-motion for summary judgment. *See* Dkt. No. 107. None of the parties objected to the ReportRecommendation and Order.

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir,* No. 9:08–CV–322, 2011 WL 933846, \*1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b) (1).

A litigant's failure to file objections to a magistrate judge's report and recommendation, even when that litigant is proceeding *pro se,* waives any challenge to the report on appeal. *See Cephas v. Nash,* 328 F.3d 98, 107 (2d Cir.2003) (holding that, "[a]s a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point" (citation omitted)). A *pro se* litigant must be given notice of this rule; notice is sufficient if it informs the litigant that the failure to timely object will result in the waiver of further judicial review and cites pertinent statutory and civil rules authority. *See Frank v. Johnson,* 968 F.2d 298, 299 (2d Cir.1992); *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989) (holding that a *pro se* party's failure to object to a report and recommendation does not waive his right to appellate review unless the report explicitly states that failure to object will preclude appellate review and specifically cites 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and former 6(e) of the Federal Rules of Civil Procedure).

Having carefully reviewed the October 30, 2013 Report–Recommendation and Order, the parties' submissions and the applicable law, the Court finds that Magistrate Judge Hummel correctly recommended that the Court (1) deny Plaintiff's motion for summary judgment; (2) grant the State Defendants' motion for summary judgment; (3) grant the County Defendants' cross-motion for summary judgment; and (4) grant-in-part and deny-in-part the City Defendants' cross-motion for summary judgment. *See* Dkt. No. 107. As to the City Defendants' cross-motion for summary judgment, Magistrate Judge Hummel determined that the motion should be granted as to the failure to intervene claims against Defendant Scully and the

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

claim of municipal liability against Defendant City of Utica, but denied in all other respects. *See id.* at 47. Upon review of the thorough and well-reasoned Report–Recommendation and Order, the Court finds that Magistrate Judge Hummel did not clearly err in any of his recommendations.

**\*3** Wherefore, the Court hereby

**ORDERS** that Magistrate Judge Hummel's October 30, 2013 Report–Recommendation and Order is **ADOPTED in its entirety** for the reasons set forth therein; and the Court further

**ORDERS** that Plaintiff's motion for summary judgment (Dkt. No. 94) is **DENIED;** and the Court further

**ORDERS** that the State Defendants' motion for summary judgment (Dkt. No. 97) is **GRANTED;** and the Court further

**ORDERS** that the County Defendants' cross-motion for summary judgment (Dkt. No. 98) is **GRANTED;** and the Court further

**ORDERS** that the City Defendants' cross-motion for summary judgment (Dkt. No. 100) is **GRANTED** as to the failure to intervene claims against Defendant Scully and the municipal liability claim against Defendant City of Utica but **DENIED** in all other respects; [FN1] and the Court further

> [FN1]. As a result of this Order, Defendants Cuda, Pezdek, Carroll, City of Utica, County of Oneida, and Farrell are terminated from this case.

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum–Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

RUSLAN KONOVALCHUK,

Plaintiff,

v.

MICHAEL F. CERMINARO, Police Officer, Utica Police Department; ANKEN, Police Officer, Utica Police Department; FRENCH, Police Officer, Utica Police Department; AIMEDIN MEKIC, Police Officer, Utica Police Department; OFFICER MOORE, Police Officer, Utica Police Department; SCULLY, Police Sergeant, Utica Police Department; TIMOTHY MOORE, Investigator, Utica Police Department; PETRIE, Police Officer, Utica Police Department; CUDA, Parole Officer; PEZDEK, Parole Officer; CARROL, Senior Parole Officer; CITY OF UTICA; COUNTY OF ONEIDA; ALBAN URYNIAK, Utica Police Sergeant; JAMES WATSON, Utica Police Captain; JEFFREY FARRELL, Oneida County Sheriff Deputy,

Defendants.[FN1]

> [FN1]. In his notice and acknowledgment of receipt of summons and complaint, defendant Carrol spells his name as "Carroll." Dkt. No. 12. The Court considers this as a mere error on Konovalchuk's part and uses the latter spelling throughout this report-recommendation. Furthermore, Konovalchuk concedes that defendant Officer Moore is the same person as defendant Investigator Timothy Moore. Konovalchuk Dep. (Dkt. No. 97–7) at 53:4–16.

**REPORT–RECOMMENDATION AND ORDER**[FN2]

> [FN2]. This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

CHRISTIAN F. HUMMEL, United States Magistrate Judge.

Plaintiff *pro se* Ruslan Konovalchuk ("Ko nova lchuk"), an inmate currently in the custody of the New York State Department of Correctional and Community Supervision ("DOCCS"), brings this

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

action pursuant to 42 U.S.C. § 1983 alleging that defendants, nine law enforcement officers of the Utica Police Department ("UPD"), the City of Utica ("Utica"), the Sheriff Deputy of the County of Oneida, the County of Oneida ("Oneida"), and three New York State parole officers, violated his constitutional rights under the Fourth and Fourteenth Amendments. Am. Compl. (Dkt. No. 56). Presently pending are: (1) Konovalchuk's motion for summary judgment pursuant to Fed.R.Civ.P. 56 against the City Defendants (Dkt. No. 94); (2) State Defendants' motion for summary judgment (Dkt. No. 97); (3) County Defendants' cross-motion for summary judgment (Dkt. No. 98); and (4) City Defendants' cross-motion for summary judgment (Dkt. No. 100). Konovalchuk opposes City Defendants' cross-motion. Dkt. No. 103. City Defendants replied to Konovalchuk's opposition. Dkt. No. 105. For the following reasons, it is recommended that: (1) Konovalchuk's motion be denied; (2) State Defendants' motion be granted; (3) County Defendants' cross-motion be granted; and (4) City Defendants' cross-motion be granted in part and denied in part.

## I. Failure to Respond

**\*4** "[J]udgment should not be entered by default against a pro se plaintiff who has not been given any notice that failure to respond will be deemed a default." *Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996). County Defendants provided such notice along with their cross-motion. Dkt. No. 98–7. Moreover, the Court provided notifications to Konovalchuk regarding both the date of his response and the consequences of failing to respond. Dkt. No. 101; Text Notice dated 8/23/2013. Konovalchuk only responded to City Defendants' cross-motion. Dkt. No. 103. Despite such notice and extensions, and Konovalchuk's demonstrated ability to respond to opposing arguments, Konovalchuk failed to respond to State and County Defendants' motions. Because Konovalchuk has not responded to raise any question of material fact, to the extent State and County Defendants have pled properly supported facts, such facts as set forth by

those defendants are accepted as true. *See Cusamano v. Sobek,* 604 F.Supp.2d 416, 452–53, 453 n. 48 (N.D.N.Y.2009); *see also* N.D.N.Y.L.R. 7.1(a)(3) ( *"The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."* ) (emphasis in original).

## II. Background
### A. Konovalchuk's Version of the Facts
#### i. July 28, 2011

At approximately 1:45 p.m. on July 28, 2011, Konovalchuk drove away from his brother's residence in Utica. Am. Compl. ¶ 1. Konovalchuk was staying at his brother's residence because he violated his curfew in Rochester and was attempting to avoid jail time. Konovalchuk Dep. (Dkt. No. 97–7) at 7:1–8:18. Shortly thereafter, Konovalchuk noticed two unmarked vehicles following him and evaded them by making random turns. Am. Compl. ¶¶ 2–4; Konovalchuk Dep. at 13:13–14:1, 16:14–17:7. When Konovalchuk realized that both police vehicles and unmarked vehicles were pursuing him, he sped up, exceeding the forty to forty-five miles-per-hour speed limit at sixty to sixty-five miles-perhour. Am. Compl. ¶ 8; Konovalchuk Dep. at 17:12–18:1. At some point, Konovalchuk exited a highway, speeding at a hundred miles-per-hour. Konovalchuk Dep. at 18:2–22. He entered a motel parking lot and hid for ten to fifteen minutes. *Id.* at 18:2–19:2.

Konovalchuk left the motel, driving at ninety miles-per-hour and passing two UPD vehicles going in the opposite direction. Am. Compl. ¶ 7; Konovalchuk Dep. at 19:22–21:22. Konovalchuk turned into a trailer park community, exited his vehicle, and waited by his vehicle for the police to arrive. Am. Compl. ¶¶ 9–10; Konovalchuk Dep. at 22:2–21, 26:3–22. He unaware that a warrant was out for his arrest. Konovalchuk Dep. at 23:22–25. After approximately five minutes, defendants UPD Officers Anken and French arrived and approached Konovalchuk and drew their weapons. Am. Compl. ¶ 11. Anken ordered Konovalchuk to turn around

with his hands behind his head and Konovalchuk complied. *Id.* ¶ 12. Anken lifted Konovalchuk's shirt to check for a weapon and found none. *Id.* ¶ 13; Konovalchuk Dep. at 29:8–23. Anken ordered Konovalchuk to lie facedown on the ground and Konovalchuk complied without resistance. Am. Compl. ¶ 14; Konovalchuk Dep. at 29:8–23, 64:6–18. Anken and French then hand-cuffed Konovalchuk. *Id.* ¶ 15. At this time, more officers arrived at the scene. *Id.* ¶ 16. Konovalchuk did not resist arrest, did not refuse to be handcuffed, and never tucked his hands underneath his body to prevent being handcuffed. Dkt. No. 103–1 at 1–2; Konovalchuk Dep. at 30:18–31:1.

**\*5** While Konovalchuk was lying on the ground with hands cuffed behind his back, defendants UPD Officers Cerminaro, Anken, French, Mekic, Moore, and Parole Officers Cuda and Pezdek repeatedly punched, kicked, and stomped on Konovalchuk. Am. Compl. ¶ 17; Dkt. No. 94–1 at 2. Defendant Senior Parole Officer Carroll observed and failed to intervene while other officers assaulted Konovalchuk. Am. Compl. ¶ 17. However, Konovalchuk is uncertain whether Carroll was present to intervene on his behalf. Konovalchuk Dep. at 83:17–84:22. At some point, only Cerminaro was striking him while other officers held him down. Dkt. No. 94–1 at 2–3. Meanwhile, defendants Carroll, Sergeant Uryniak, Sergeant Scully, and Moore observed the assault and failed to intervene on Konovalchuk's behalf. Am. Compl. ¶ 18. Konovalchuk could only see black boots surrounding him as he was lying on the ground and could not identify which defendant delivered which strike. Konovalchuk Dep. at 31:12–32:24.

Konovalchuk was then lifted off the ground and slammed against a building wall that was approximately eight feet away. Am. Compl. ¶ 19; Konovalchuk Dep. at 32:1–35:8. Unknown persons pinned Konovalchuk against the wall while Cerminaro choked Konovalchuk. Am. Compl. ¶¶ 20–21. While unspecified individuals forced

Konovalchuk to bend over at the waist, Carroll tightly gripped Konovalchuk's neck. *Id.* ¶¶ 22–23; Konovalchuk Dep. at 83:8–16. Carroll then swung a police radio up and down in an attempt to hit Konovalchuk's face and stated, "[y]ou have one chance to answer. What's your name?" Am. Compl. % 23. Konovalchuk stated his name and Carroll released his grip. *Id.* ¶¶ 23–24.

At this time, Cerminaro again choked Konovalchuk and, with assistance from unspecified persons, dragged and carried Konovalchuk to the back of a police vehicle, hitting Konovalchuk's head on a car door. Am. Compl. ¶ 24; Konovalchuk Dep. at 36:6–37:2. Cerminaro transported Konovalchuk to the UPD, during which time, Cerminaro stated, "[y]ou're lucky. It could've been a lot worse." Am. Compl. ¶ 25; Konovalchuk Dep. at 40:17–18. Konovalchuk's request to Cerminaro for medical attention was denied. Dkt. No. 94–1 at 3–4. Cuda and Pezdek were in the vicinity watching Konovalchuk being assaulted and failing to intervene. Am. Compl. ¶ 46.

At the UPD, while handcuffed to a bench, Konovalchuk asked defendant UPD Officer Petrie for medical attention because he was hurt and in pain. Am. Compl. ¶¶ 26–27. Petrie replied, "I don't care, I'm busy." *Id.* ¶ 27; Konovalchuk Dep. at 55:6–15. While defendant Captain Watson was making his rounds, Konovalchuk informed Watson that he was assaulted by the arresting officers, was hurt and in pain, and required medical attention. Am. Compl. ¶ 29; Konovalchuk Dep. at 42:23–43:8. Watson replied that he would send someone to see Konovalchuk. Am. Compl. ¶ 29. A few hours later, an unnamed female officer arrived and took photographs of Konovalchuk's head, face, and neck. [FN3] *Id.* ¶ 30. These photos fairly and accurately depict all of the physical injuries that Konovalchuk suffered from the arrest. [FN4] Konovalchuk Dep. at 78:22–79:4. Konovalchuk filed a Civilian Complaint Form complaining of the assault and submitted it to an unnamed male officer. [FN5] Am. Compl. ¶ 31; Dkt. No. 97–11 at

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

1–3. Konovalchuk was not seen by medical personnel for his injuries and passed out several times on the bench due to dizziness and sleepiness. Am. Compl. ¶ 32.

> FN3. These photos of Konovalchuk show abrasions on both sides of the face, left temple, left side of the neck, left forearm, and a cut on the nose. Dkt. No. 97–7 at 114–24.

> FN4. An inmate medical screening form dated July 29, 2011, the source of which is unknown, indicates that Konovalchuk's face was stomped on the day before and showed multiple abrasions. Dkt. No. 94–2 at 17.

> FN5. Konovalchuk indicated in his complaint that he had complied with police orders during the arrest and as soon as he was handcuffed he was repeatedly kicked in the face by the arresting officers. Dkt. No. 97–11 at 1.

**\*6** Later in the evening on July 28, 2011, Konovalchuk was transported to Monroe County Jail ("Monroe") and was unconscious throughout most of the ride. Am. Compl. ¶ 33. As a result of the assaults, Konovalchuk sustained injuries to his neck, face, and head, and was treated with pain medication at Monroe. *Id.* ¶ 34. Konovalchuk was also diagnosed with "post-traumatic concussion," which, according to Konovalchuk, is bleeding in the brain as a result of being kicked in the head. *Id.* ¶ 35. Konovalchuk had an X-ray done in October, 2011 and a Computed Tomography ("CT") Scan in January, 2012; both tests showed no abnormalities. Konovalchuk Dep. at 60:4–21; Dkt. No. 97–8 at 36, 38–40. Konovalchuk's medical records dated between August, 2011 and October, 2011 show he had complained of migraine headaches and was treated with pain medication with minimal results. FN6 Dkt. No. 94–2 at 18–22; *see also* Dkt. No. 97–8 at 4–32.

> FN6. Konovalchuk's medical records also indicate that he continued to complain of a July 2011 head injury and accompanying headaches from June through November of 2012. Dkt. No. 97–9 at 6, 8–9, 17–20, 22.

As a result of the arrest on July 28, 2011, Konovalchuk was charged with resisting arrest, fleeing police officers, reckless driving, and various other counts of vehicular violations. Dkt. No. 94–1 at 2, 94–2 at 3–4. All charges were dropped except Konovalchuk's guilty plea to fleeing from officers in a motor vehicle. Konovalchuk Dep. at 51:12–17; Dkt. No. 94–2 at 3–4. Konovalchuk reasons that since police documents indicate certain defendants were present at the scene of arrest, those defendants either assaulted him or witnessed the assault. Konovalchuk Dep. at 51:20–54:12–21.

### ii. October 11, 2011

At approximately 6:33 a.m. on October 11, 2011, two Oneida County Sheriff Deputies took Konovalchuk to the Utica City Court and returned him to Monroe at approximately 2:30 p.m. Am. Compl. ¶¶ 36–37. Konovalchuk asked the Sheriff Deputies for food and water; however, such requests were denied. *Id.* ¶ 37. During the transports, Konovalchuk also asked defendant Sheriff Deputy Farrell to cease smoking cigarettes in the vehicle because he could not breathe. *Id.* ¶ 38. Farrell refused. *Id.* As a result, Konovalchuk inhaled second-hand cigarette smoke during each of the two-and-a-half hour car ride to-and-from the Utica City Court. *Id* . ¶ 39. Konovalchuk returned to Monroe and had dinner. Konovalchuk Dep. at 91:3–12. Konovalchuk then commenced this action, seeking monetary damages. Am. Compl. at 19.

### B. Defendants' Version of the Facts
### i. July 28, 2011

According to defendant Senior Parole Officer Carroll, Konovalchuk was released from prison on August 27, 2010, having served time for robbery convictions, and paroled under DOCCS's supervision for a term of five years. State Defs.' Statement (Dkt. No. 97–1) ¶ 3; Carroll Decl. ¶¶ 1, 5; Dkt.

Nos. 94–2 at 6, 97–13 at 1–3. Konovalchuk had violated several conditions of release, which included violating a 9:00 p.m. curfew and failing to obtain permission from his parole officer before leaving Monroe County. State Defs.' Statement ¶¶ 4–6; Carroll Decl. ¶ 6; Dkt. No. 97–13 at 1–3.

**\*7** On July 28, 2011, the majority of the defendants was assigned to different teams as part of a multi-agency Task Force conducting a "warrants sweep," which included executing a warrant for Konovalchuk's arrest in connection to his violation of parole release conditions and a bank robbery.[FN7] Moore Aff. (Dkt. No. 100–6 at 1–7) ¶ 3; Pezdek Decl. (Dkt. No. 97–16) ¶¶ 1, 6; Carroll Decl. (Dkt. No. 97–12) ¶¶ 7, 9; Cerminaro Aff. (Dkt. No. 100–8 at 1–4) ¶ 1; Dkt. No. 97–14 (fugitive warrant). One team consisted of defendants Police Officer Moore and Parole Officer Pezdek, who were in an unmarked vehicle near the house of Konovalchuk's brother conducting surveillance. Moore. Aff. ¶ 5; Pezdek Decl. ¶ 6. Moore and Pezdek followed Konovalchuk, who was driving a green colored Acura leaving the house. Moore. Aff. ¶ 5; Pezdek Decl. ¶¶ 7–8.

> FN7. The Task Force consisted of eight law enforcement agencies and twenty-five law enforcement officers to track down fugitives. Carroll Decl. ¶¶ 7, 9. The agencies included the UPD Warrants Division, New York–New Jersey Fugitive Task Force, New York State Police Department and Parole Division, Oneida County Probation Department, and the District Attorney's Office. Moore Aff. ¶ 4.

Konovalchuk abruptly stopped, exited his vehicle, and verbally confronted the driver of a parked white vehicle while holding what appeared to be a black semi-automatic handgun.[FN8] Moore. Aff. ¶ 5; Pezdek Decl. ¶¶ 9–10. Konovalchuk returned to the Acura and sped off. Moore. Aff. ¶ 6. Moore and Pezdek followed Konovalchuk, who was driving erratically and speeding through city streets at eighty-five miles-per-hour then entered a

highway speeding at 115 miles-per-hour. Moore. Aff. ¶¶ 6–7; Pezdek Decl. ¶ 11. Moore and Pezdek transmitted over the police radio the description of the vehicle and Konovalchuk, relaying information that Konovalchuk was possibly armed with a handgun. Moore. Aff. ¶ 6; Pezdek Decl. ¶ 11. Shortly thereafter, a radio transmission was received indicating that Konovalchuk was apprehended and in custody in a trailer park several miles away. State Defs.' Statement ¶ 24; Pezdek Decl. ¶¶ 12, 16. When Moore and Pezdek arrived at the trailer park, Konovalchuk was handcuffed and placed in the backseat of a UPD vehicle, refusing to speak with officers. State Defs.' Statement ¶ 25; Moore Aff. ¶ 9; Pezdek Decl. ¶¶ 13, 15; Dkt. No. 100–6 at 10. Moore did not see any visible injuries on Konovalchuk. Moore Aff. ¶ 10. Pezdek had no contact with Konovalchuk on July 28, 2011 and did not make threats or use physical force against Konovalchuk. State Defs.' Statement ¶ 21; Pezdek Decl. ¶¶ 14, 17–18. Pezdek did not witness the use of any physical force towards Konovalchuk by any DOCCS staff or police officer. State Defs.' Statement ¶¶ 22–23; Pezdek Decl. ¶ 19.

> FN8. After Konovalchuk was taken into custody, an air-pistol was discovered in the green Acura. Dkt. No. 94–2 at 8.

At approximately 1:30 p.m., defendant Anken, an UPD patrol officer, received a radio transmission involving a possibly armed suspect fleeing from the police in an Acura. Anken Aff. (Dkt. No. 100–7) ¶¶ 1, 3; Dkt. No. 100–7 at 6. Anken located and followed the Acura into a trailer park and observed Konovalchuk exiting the vehicle and fleeing on foot. Anken Aff. ¶ 5. Konovalchuk exited his patrol car, drew his service weapon, and ordered Konovalchuk to stop and place his hands on his head. *Id.* No other officers were present at this time and Anken ordered Konovalchuk to face away in order to check Konovalchuk's waistband for a weapon. *Id.* Within moments, defendant UPD Officer French arrived and assisted in getting Konovalchuk to the ground in a prone position to

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

be handcuffed. *Id.* ¶ 6. Konovalchuk refused to be handcuffed. *Id.* Anken knelt on Konovalchuk's back to try to release and secure one of Konovalchuk's hands and noticed that French was also struggling with Konovalchuk's other hand. *Id.* ¶ 7. Once handcuffed, Konovalchuk was lifted off the ground and searched for any weapon on his person before being walked to a UPD vehicle. *Id.* ¶ 8. Anken never kicked Konovalchuk and did not witness any other officer kicking Konovalchuk. *Id.* ¶ 9.

**\*8** Another UPD patrol officer, defendant Cerminaro, also received a radio transmission regarding the high-speed car chase involving Konovalchuk. Cerminaro Aff. ¶ 4. Cerminaro located and joined in the pursuit of the Acura, entered the trailer park, observed Konovalchuk lying on the ground in prone position, and saw Anken and French struggling to gain control of Konovalchuk's hands and arms. *Id.* ¶¶ 4–5. Cerminaro then struck and sat on Konovalchuk's upper torso and shoulders to try to release Konovalchuk's hands and arms. *Id.* ¶ 6; Dkt. No. 94–2 at 7. Defendant Sergeant Uryniak arrived at the scene and upon seeing Anken, French, and Cerminaro struggling to handcuff Konovalchuk, placed a foot on Konovalchuk's legs that were thrashing about and ordered Konovalchuk to stop resisting. Dkt. No. 94–2 at 28–29. Defendant Officer Mekic joined in restraining Konovalchuk, who was rolling from side to side. *Id* . at 26. Konovalchuk was lifted off the ground and searched for weapons before being walked to his police vehicle for transport to UPD. Cerminaro Aff. ¶ 7. At no time did Cerminaro kick Konovalchuk or witness other officers kicking him at any time. *Id* . ¶ 8. At some point after the arrest and prior to booking, Cerminaro asked Konovalchuk if he wanted to see medical personnel but Konovalchuk did not respond. Dkt. No. 94–2 at 8.

Carroll was a passenger with non-party Officer Colborne in an unmarked police vehicle driven by the Oneida County Sheriff. Carroll Decl. ¶ 8. At approximately 1:00 p.m., Carroll received radio transmissions indicating that members of the Task Force

were engaged in a high-speed car chase with Konovalchuk. *Id.* ¶¶ 10–11. As Carroll was on his way to join in the pursuit, another radio transmission indicated that Konovalchuk was apprehended several miles away and taken into custody after driving into a trailer park. *Id.* ¶¶ 12, 22; State Defs.' Statement ¶ 35. When Carroll arrived at the trailer park, Konovalchuk was handcuffed and seated in the back of a marked police vehicle. Carroll Decl. ¶ 13; State Defs.' Statement ¶ 36. Carroll repeatedly asked Konovalchuk for identification but Konovalchuk refused. Carroll Decl. ¶ 14.

Defendant Parole Officer Cuda was teamed up with non-party Deputy Kallaur, driving in an unmarked police vehicle. Cuda Decl. (Dkt. No. 97–15) ¶¶ 1, 5. At 2:00 p.m., Cuda received a radio transmission indicating that Konovalchuk was seen at a nearby gas station. *Id.* ¶ 6. Cuda drove towards the gas station, located the vehicle, and pursued it. *Id.* ¶ 7. Konovalchuk was speeding and driving erratically. *Id.* ¶ 8. When a line of police vehicles joined the pursuit, Kallaur pulled over to allow two marked police cars to continue ahead. *Id.* ¶ 9. Eventually, Cuda lost sight of the two police cars and Konovalchuk's vehicle. *Id.* ¶ 10. Another radio transmission indicated that Konovalchuk was apprehended and taken into custody in a trailer park at least a mile away and Cuda drove there to assist. *Id.* ¶¶ 11, 15; State Defs.' Statement ¶ 30. Upon arrival, Cuda saw Konovalchuk in the backseat of a police vehicle. Cuda Decl. ¶ 12; State Defs.' Statement ¶ 31. Cuda approached and asked Konovalchuk if he was on parole and Konovalchuk refused to answer. Cuda Decl. ¶ 12. Konovalchuk never advised Cuda that he was assaulted during his arrest. *Id.* ¶ 13. Cuda was not involved with taking Konovalchuk into custody. *Id.* ¶ 14. Cuda never made threats or used force against Konovalchuk and did not witness any DOCCS staff or police officer use physical force against Konovalchuk. *Id* . ¶¶ 16–18; State Defendants' Statement ¶¶ 27–29.

**\*9** At the UPD booking room, Carroll first learned of Konovalchuk's complaints of assault

when Konovalchuk asked to whom he should file his complaint regarding the alleged assault. Carroll Decl. ¶¶ 19–20. Carroll attested that no DOCCS staff were involved in taking Konovalchuk into custody. *Id.* ¶ 21. Carroll never used force or made threats against Konovalchuk at any time and did not witness any DOCCS staff or police officer use force against Konovalchuk. *Id.* ¶¶ 24–26; State Defs.' Statement ¶¶ 33–34.

Defendant Officer Petrie reported that Konovalchuk was hostile and argumentative towards him when he searched and booked Konovalchuk. Dkt. No. 94–2 at 4. Konovalchuk informed Petrie that he was kicked by the arresting officers to which Petrie responded that he should speak with a supervisor about the incident. *Id.*

Defendant Scully, an UPD sergeant, observed Konovalchuk sitting on a bench in the booking area with no sign of any serious physical injury but did notice red marks and scratches on Konovalchuk's face. Scully Aff. (Dkt. No. 100–10 at 2–3) ¶¶ 1, 3, 5. Scully did not communicate with Konovalchuk nor was he advised that Konovalchuk had required medical attention. *Id.*

Non-party Trevisani, an UPD investigator assigned to the Office of Professional Standards, investigated Konovalchuk's civilian complaint and obtained a statement from non-party Terry Vilardi, a civilian witness. Trevisani Aff. (Dkt. No. 100–9 at 2–3) ¶¶ 1–3. Vilardi was at home on July 28, 2011 and saw

> a white male gentleman face down on the ground between [his] ... home and ... driveway. He had just been handcuffed and was struggling with officers, and was rolling around from side to side. I believe there were approximately 6 officers with this white male gentleman and they were all standing and preparing to lift him up. They picked him up immediately off the ground by his arms and walked him to a white police car.

Dkt. No. 100–9 at 5. Trevisani determined that

no officer committed misconduct with respect to Konovalchuk's arrest. Trevisani Aff. ¶ 5.

### ii. October 11, 2011

On October 10, 2011, Konovalchuk had three meals at Monroe. County Defs.' Statement (Dkt. No. 98–1) ¶ 7; Konovalchuk Dep. at 89:10–14. On October 11, 2011, defendant Deputy Farrell and non-party Deputy Barnes transported Konovalchuk from Monroe to Utica. County Defs.' Statement ¶¶ 3–4; Farrell Aff. (Dkt. No. 98–5) ¶ 4; Konovalchuk Dep. at 88:25–89:3. Farrell arrived at Monroe and left with Konovalchuk at approximately 6:30 a.m. County Defs.' Statement ¶ 5; Farrell Aff. ¶ 5; Konovalchuk Dep. at 89:15–17; Dkt. No. 98–6. Konovalchuk did not have breakfast prior to the transport to Utica but had access to water. County Defs.' Statement ¶¶ 8–9; Konovalchuk Dep. at 89:22–90:4. During the transport to Utica, Konovalchuk never informed Farrell that he had missed breakfast or was hungry. Farrell Aff. ¶ 7.

**\*10** The transport from Monroe to Utica took between two to two-and-a-half hours. County Defs.' Statement ¶ 10; Konovalchuk Dep. at 90:5–7; Dkt. No. 98–6. Farrell smoked two cigarettes in the transport vehicle with his window partially down. County Defs.' Statement ¶¶ 17–18; Farrell Aff. ¶ 8; Konovalchuk Dep. at 91:13–17, 93:3–12. Konovalchuk did not complain to Farrell of the cigarette smoke. Farrell Aff. ¶ 8. At Utica, Konovalchuk was held at a lockup where inmates could access a water fountain without permission. *Id.* ¶ 10. When Farrell and Barnes picked up Konovalchuk, Konovalchuk asked Farrell if he could have something to eat. *Id.* ¶ 12. They drove to the Oneida County Courthouse and Barnes was informed that lunches were not available. *Id.* ¶ 13. While Farrell and Konovalchuk waited, Konovalchuk asked Farrell for a cigarette and Farrell refused the request. *Id.*

On the way back to Monroe, Farrell smoked two cigarettes and again had his window partially down. Farrell Aff. ¶ 15. Konovalchuk did not complain about the cigarette smoke during that transport, nor did he complain about hunger or thirst. *Id.*

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

When Konovalchuk returned to Monroe, he had access to water and had dinner at 4:30 p.m. County Defs.' Statement ¶¶ 15–16; Konovalchuk Dep. at 94:6–9, 14–16. When Konovalchuk returned to Monroe, he did not seek treatment for inhaling second-hand cigarette smoke. County Defs.' Statement ¶ 21; Konovalchuk Dep. at 93:18–20.

### III. Discussion[FN9]

> [FN9.] In his amended complaint, Konovalchuk repeatedly raises his claims under the Eighth Amendment. Am. Compl. ¶¶ 40–51. However, his claims are more appropriately raised and analyzed under the Fourth and Fourteenth Amendments. *See* subsections III(E)(F).

Konovalchuk contends that defendant Farrell violated his First and Fourteenth Amendment rights when Farrell denied him food and water, forced Exposure to Environmental Tobacco Smoke ("ETS") onto him, all done in retaliation for filing a complaint against the arresting officers. Konovalchuk contends that his Fourth Amendment right against the use of excessive force was violated when: (1) defendants Cerminaro, Anken, French, Mekic, Moore, Cuda, and Pezdek assaulted him while he was hand-cuffed, lying face-down on the ground; (2) defendant Carroll gripped his neck and attempted to assault him with a police radio; and (3) defendant Cerminaro choked him twice and dragged him to the police vehicle, hitting his head on the car door. It may also be inferred from the allegations that Konovalchuk was attempting to allege he was arrested without probable cause. Further, Konovalchuk claims his Fourteenth Amendment rights were violated when: (1) defendants Carroll, Uryniak, Scully, and Moore failed to intervene the assault on the ground and a slam against a wall; (2) defendants Cuda, Pezdek, Anken, Scully, Uryniak, and Moore failed to intervene Carroll holding him in a tight grip and threatened him with a radio; (3) defendants Anken, French, Mekic, Moore, Uryniak, Scully, Carroll, Cuda, Pezdek failed to intervene Cerminaro choking him twice and having his head hit the

police car door; and (4) defendants Cerminaro, Petrie, and Watson denied him medical care after being informed that he was hurt and in pain. As for defendants Oneida and Utica, Konovalchuk contends they failed to train their employees, resulting in the above unconstitutional conduct. Am. Compl. ¶¶ 40–51. Konovalchuk moved for summary judgment, contending that he is entitled to judgment in his favor as a matter of law. Dkt. No. 94–1.

### A. Legal Standard

**\*11** A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. *Skubel v. Fuoroli,* 113 F.3d 330, 334 (2d Cir.1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223–24 (2d Cir.1994); *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988).

When, as here, a party seeks judgment against a *pro se* litigant, a court must afford the non-movant special solicitude. *See Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006). As the Second Circuit has stated,

[t]here are many cases in which we have said that a *pro se* litigant is entitled to "special solicitude," ... that a *pro se* litigant's submissions must be construed "liberally,"... and that such submissions must be read to raise the strongest arguments that they "suggest,".... At the same time, our cases have also indicated that we cannot read into *pro se* submissions claims that are not "consistent" with the *pro se* litigant's allegations, ... or arguments that the submissions themselves do not "suggest," ... that we should not "excuse frivolous or vexatious filings by *pro se* litigants," ... and that *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law ...."

*Id.* (citations and footnote omitted); *see also Sealed Plaintiff v. Sealed Defendant # 1,* 537 F.3d 185, 191–92 (2d Cir.2008) ("On occasions too numerous to count, we have reminded district courts that 'where [a] plaintiff proceeds *pro se,* ... a court is obliged to construe his pleadings liberally.' " (citations omitted)). However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion; the requirement is that there be no genuine issue of material fact. *Anderson,* 477 U.S. at 247–48.

### B. Eleventh Amendment

**\*12** State Defendants argue that they are entitled to Eleventh Amendment immunity against Konovalchuk's claims. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." *U.S. CONST. amend. XI.* "[D]espite the limited terms of the Eleventh Amendment, a federal court [cannot] entertain a suit brought by a citizen against his [or her] own State." *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 98 (1984) (citing *Hans v. Louisiana,* 134 U.S. 1, 21 (1890)). Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. *Halderman,* 465 U.S. at 100. Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. *See Quern v. Jordan,* 440 U.S. 332, 340–41 (1979).

A suit against a state official in his or her official capacity is a suit against the entity that employs the official. *Farid v. Smith,* 850 F.2d 917, 921 (2d Cir.1988) (*citing Edelman v. Jordan,* 415 U.S. 651, 663 (1974)). "Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself," rendering the latter suit for money damages barred even though asserted against the individual officer. *Kentucky v. Graham,* 473 U.S. 159, 166 (1985). Here, because Konovalchuk seeks monetary damages against State Defendants for acts occurring within the scope of their duties, the Eleventh Amendment bar applies and serves to prohibit claims for monetary damages against them in their official capacity.

Accordingly, State Defendants' motion on this ground should be granted.

### C. Personal Involvement

State Defendants argue that they were not personally involved in the alleged constitutional violations; thus Konovalchuk's claims against them should be dismissed.[FN10] " '[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)). Thus, supervisory officials may not be held liable merely because they held a position of authority. *Id.; Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996). However, supervisory personnel may be considered "personally involved" if:

FN10. State Defendants note that because Konovalchuk cannot prove that they were personally involved in any resulting injuries from the use of force incidents of July 28, 2011, Konovalchuk has also failed to establish the requisite proximate cause element of a § 1983 claim. Dkt. No. 97–2 at 21–22. However, because it is recommended herein that State Defendants' motion as to the Fourth and Fourteenth Amendment claims be granted on other grounds, their motion based on the proximate cause element need not be addressed.

(1) [T]he defendant participated directly in the alleged constitutional violation;

(2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;

**\*13** (3) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or

(5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (citing *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)).[FN11]

FN11. Various courts in the Second Circuit have postulated how, if at all, the *Iqbal* decision affected the five *Colon* factors which were traditionally used to determine personal involvement. *Pearce v. Estate of Longo,* 766 F.Supp.2d 367, 376 (N.D.N.Y.2011), *rev'd in part on other grounds sub nom., Pearce v. Labella,* 473 F. App'x 16 (2d Cir.2012) (recognizing

that several district courts in the Second Circuit have debated *Iqbal's* impact on the five *Colon* factors); *Kleehammer v. Monroe Cnty.,* 743 F.Supp.2d 175 (W.D.N.Y.2010) (holding that "[o]nly the first and part of the third *Colon* categories pass *Iqbal's* muster ...."); *D'Olimpio v. Crisafi,* 718 F.Supp.2d 340, 347 (S.D.N.Y.2010) (disagreeing that *Iqbal* eliminated *Colon's* personal involvement standard).

**i. Cuda and Pezdek**

Konovalchuk has failed to establish the personal involvement of Cuda and Pezdek for his claims of excessive force and failure to intervene. Konovalchuk believes Cuda and Pezdek were present when other officers assaulted him and does not know if either defendant struck him because he could not see their faces. Contrary to Konovalchuk's assertion, both Cuda and Pezdek attested that upon their arrival at the scene of arrest, Konovalchuk was already handcuffed and taken into custody in the back of a police vehicle. Konovalchuk does not point to record evidence controverting the affidavits of Cuda and Pezdek.

While "an arrestee's 'inability to positively identify those who allegedly violated his rights is not *per se* fatal to his claims" Konovalchuk does not point to any record evidence establishing that Cuda or Pezdek was at Konovalchuk's arrest either before or during the time of the alleged use of excessive force. *De Michele v. City of New York,* No. 09–CV–9334 (PGG), 2012 WL 4354763, at \*16 (S.D.N.Y. Sept. 24, 2012) (Dkt. Nos. 97–3 at 32–49, 97–4 at 2) (citations omitted).[FN12] Despite Konovalchuk's speculative assertions, it is fair to conclude that a rational factfinder could not find in favor of Konovalchuk as the record is devoid of any evidence indicating that either Cuda or Pezdek was present at the assault. *See, e.g., Coleman v. Hauck,* No. 09–CV–1391 (GTS)(GHL), 2012 WL 4480684, at \*9 (N.D.N.Y. Sept. 26, 2012) (Dkt. No. 97–3 at 19–31) (granting summary judgment for certain de-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

fendants on personal involvement grounds where plaintiff argued that "[a]ll named Defendants responded to the scene where Plaintiff was repeatedly struck and kicked in the face" but failed to point to record evidence establishing that those defendants arrived at the scene before the use of force was applied).

> FN12. All unpublished opinions cited to by the Court in this Report–Recommendation are, unless otherwise noted, attached to this Recommendation.

Furthermore, Konovalchuk failed to proffer any evidence showing that defendants had "a realistic opportunity to intervene to prevent the harm from occurring." *De Michele,* 2012 WL 4354763, at *17 (citing *inter alia Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994)) (internal quotation marks omitted). As Konovalchuk does not provide even a scintilla of evidence that Cuda and Pezdek were present at the time of the alleged assaults, Konovalchuk cannot show that these defendants directly participated in the assaults or failed to intervene in the misconduct. Moreover, Konovalchuk does not allege that either Cuda or Pezdek created a policy or custom under which unconstitutional practices occurred or were grossly negligent in their supervision. *Colon,* 58 F.3d at 873. Therefore, Konovalchuk cannot establish the personal involvement of Cuda and Pezdek in the alleged unconstitutional actions.

**\*14** Accordingly, State Defendants' motion on this ground should be granted.

#### ii. Carroll

For largely the same reasons, Konovalchuk also failed to establish the personal involvement of Carroll. Konovalchuk testified that Carroll used excessive force against him and failed to intervene when he was assaulted by other defendants. While Konovalchuk claims that Carroll was present during the assaults, he testified that he is uncertain whether Carroll was present or observed him being assaulted. On the other hand, Carroll attested that upon

his arrival at the scene of arrest, Konovalchuk was already handcuffed and seated in a police vehicle. Carroll did not learn of the alleged assaults until Konovalchuk was transported to the UPD for booking. Konovalchuk's failure to point to record evidence showing that Carroll was present before or at the time of his arrest is fatal to his claims against Carroll. *Coleman,* 2012 WL 4480684, at *9; *De Michele,* 2012 WL 4354763, at *16. Such speculative and conclusory allegations are insufficient to withstand a summary judgment motion. *Matsushita Elec. Indus. Co.,* 475 U.S. at 586. The failure to adduce any evidence showing that Carroll was present when the alleged misconduct occurred must render those relevant claims meritless. *Ali v. Szabo,* 81 F.Supp.2d 447, 463 (S.D.N.Y.2000) (collecting cases). Moreover, Konovalchuk does not allege that Carroll created a policy or custom under which unconstitutional practices occurred or was grossly negligent in supervising subordinates. *Colon,* 58 F.3d at 873.

Accordingly, State Defendants' motion on this ground should be granted.

#### D. First Amendment

County Defendant Farrell argues that Konovalchuk's retaliation claim against him is meritless. To state an actionable claim for retaliation under the First Amendment, a prisoner must establish by a preponderance of the evidence that: (1) the speech or conduct at issue was protected; (2) the defendant took adverse action against the plaintiff; and (3) there was a causal connection between the protected speech and the adverse action. *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir.2004) (internal quotation marks and citation omitted); *Tafari v. McCarthy,* 714 F.Supp.2d 317, 347 (N.D.N.Y.2010). "Types of circumstantial evidence that can show a causal connection between the protected conduct and the alleged retaliation include temporal proximity, prior good discipline, finding of not guilty at the disciplinary hearing, and statements by defendants as to their motives." *Barclay v. New York,* 477 F.Supp.2d 546, 588

(N.D.N.Y.2007) (citations omitted).

There is no bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship, so courts judge the permissible inferences that can be drawn from temporal proximity in the context of particular cases. However, courts have found that six and eight month gaps between the protected conduct and adverse action were sufficient, while in other circumstances three months was considered too long.

**\*15** *Burton v. Lynch,* 664 F.Supp.2d 349, 367 (S.D.N.Y.2009) (internal quotation marks and citations omitted).

Courts must view retaliation claims with care and skepticism to avoid judicial intrusion into matters of prison administration. *Jackson,* 549 F.Supp.2d at 214–15. Therefore, conclusory allegations alone are insufficient. *Id.* at 214 (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983) (explaining that "claim[s] supported by specific and detailed factual allegations ... ought usually be pursued with full discovery.")). If the plaintiff establishes these elements, the burden shifts to the defendants to show by a preponderance of the evidence that they would have taken the same action against the plaintiff absent his exercising of the protected conduct. *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996).

In this case, Konovalchuk has failed to establish an issue of material fact in his retaliation claim against Farrell. Konovalchuk contends that Farrell denied him food and water and exposed him to ETS in retaliation for filing a complaint against the arresting officers. The filing of lawsuits and grievances is a constitutionally protected activity. *See Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996); *Mateo v. Fischer,* 682 F.Supp.2d 423, 434 (S.D.N.Y.2010). However, Konovalchuk does not allege how Farrell had knowledge of his civilian complaint against the arresting officers. Farrell was not involved in the July 28, 2011 incidents and

the record is devoid of any evidence evincing a causal connection between the civilian complaint and the events of October 11, 2011. Were Konovalchuk's claim grounded in the commencement of this federal action, such a claim is also baseless. Konovalchuk makes no reference to any lawsuit filed against the arresting officers other than this instant action, which was filed on November 14, 2011. Dkt. No. 1. The events giving rise to the claims against Farrell occurred on October 11, 2011. Indeed, Konovalchuk makes no factual assertions establishing how on October 11, 2011 Farrell could have known that Konovalchuk had intended to file this lawsuit. As such, there is no causal evidence in the record linking a constitutionally protected activity to adverse actions taken against Konovalchuk. Therefore, Konovalchuk cannot establish his First Amendment retaliation claim against Farrell.

Accordingly, County Defendants' motion on this ground should be granted.

### E. Fourth Amendment
#### i. Excessive Force

The Fourth Amendment prohibits a law enforcement officer from using excessive force during the course of effecting an arrest. *Tracy v. Freshwater,* 623 F.3d 90, 96 (2d Cir.2010) (citing *Graham v. Connor,* 490 U.S. 386, 395 (1989)). However, in making an arrest, a law enforcement officer "necessarily carries ... the right to use some degree of physical coercion or threat thereof to effect it." *Graham,* 490 U.S. at 396 (citing *Terry v. Ohio,* 392 U.S. 1, 22–27 (1968)). In determining whether an officer used excessive force in executing an arrest, the Court examines whether the force used is objectively unreasonable "in light of the facts and circumstances confronting [the officer], without regard to the officer['s] underlying intent or motivation." *Jones v. Parmley,* 465 F.3d 46, 61 (2d Cir.2006) (quoting *Graham,* 490 U.S. at 397). This inquiry "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the counter-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

vailing governmental interests at stake." *Graham,* 490 U.S. at 396 (internal quotation marks and citations omitted).

**\*16** To measure reasonableness, the Court "consider[s] the facts and circumstances of each particular case, including the crime committed, its severity, the threat of danger to the officer and society, and whether the suspect is resisting or attempting to evade arrest." *Jones,* 465 F.3d at 61 (quoting *Thomas v. Roach,* 165 F.3d 137, 143 (2d Cir.1999) ). Reasonableness is judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (quoting *Graham,* 490 U.S. at 396) (internal quotation marks omitted). A successful excessive force claim under the Fourth Amendment requires the use of force that is serious or harmful, not merely *de minimis. Drummond v. Castro,* 522 F.Supp.2d 667, 678–79 (S.D.N.Y.2007). "[N]ot every push or shove" is unconstitutionally excessive. *Maxwell v. City of New York,* 380 F.2d 106, 108 (2d Cir.2004) (internal quotation marks and citation omitted).

### a. State Defendants

In this case, Konovalchuk contends that Cuda and Pezdek subjected him to excessive force by kicking and stomping him while he was handcuffed on the ground. As discussed *supra,* Konovalchuk cannot show that either Cuda or Pezdek was present before or during the arrest. Because no genuine issue of material fact exists with respect to these claims, Konovalchuk's excessive claims against Cuda and Pezdek must be dismissed. *Anderson,* 477 U.S. at 247–48.

In the alternative to the lack of his personal involvement, State Defendants argue that the excessive force claim against Carroll should be dismissed on its merits. Konovalchuk contends that Carroll subjected him to excessive force by gripping his neck while threatening him verbally and with a heavy police radio. First, verbal abuse on its own "does *not* rise to the level of a constitutional violation." *Jordan v. Fischer,* 773 F.Supp.2d 255, 276 (N.D.N.Y.2011) (citing *inter* alia *Purcell v. Cough-*

*lin,* 790 F.2d 263, 265 (2d Cir.1986) (emphasis in original); *see also Feldman v. Lyons,* 852 F.Supp.2d 274, 280 (N.D.N.Y.2012) (collecting cases). Second, merely gripping the neck is considered *de minimis* use of force that does not amount to a Fourth Amendment violation. *See, e.g., Romano v. Howarth,* 998 F .2d 101, 105 (2d Cir.1993) ( "a de *minimis* use of force will rarely suffice to state a Constitutional claim."); *Vogeler v. Colbath,* No. 04–CV–6071 (LMS), 2005 WL 2482549, at *10–11 (S.D.N.Y. Oct. 6, 2005) (Dkt. No. 97–5 at 39–48) ("While Plaintiffs may have been lifted [off the ground by their arms while lying handcuffed face down] in an unconventional manner, they have failed to show that such action was any more than de minimis force exerted during the course of an arrest .... " (citation omitted)). Therefore, Konovalchuk's excessive force claim against Carroll cannot with stand a motion for summary judgment.

Accordingly, State Defendants' motion on this ground should be granted.

### b. City Defendants

**\*17** City Defendants argue that they did not use excessive force when they arrested Konovalchuk and the claim is meritless. Konovalchuk contends that defendants Cerminaro, Anken, French, Mekic, Moore violated his Fourth Amendment rights when they assaulted him with excessive force while he was handcuffed, lying face-down on the ground, then slammed him against a wall. Here, defendants have failed to show the absence of a material fact with respect to this claim.

It is undisputed that on July 28, 2011 Konovalchuk was engaged in a high-speed car chase with marked and unmarked police vehicles in an attempt to escape from an arrest. However, Konovalchuk contends that as soon as he realized he was trapped in the trailer park, he voluntarily exited his vehicle and surrendered to the police. Further, Konovalchuk avers that he voluntarily placed himself on the ground to be handcuffed and defendants kicked and stomped on him despite his lack of resistance.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Konovalchuk was then slammed against a wall while he was handcuffed. Defendants on the other hand, argue that Konovalchuk hid his hands underneath his body and was thrashing about to resist being handcuffed. This competing evidence rests on Konovalchuk's credibility on one hand and defendants' on the other. Despite his persistent attempt to resist arrest, Konovalchuk maintains that he eventually surrendered on the ground with his hands behind his back. Even though the City Defendants submitted a civilian's statement of what was witnessed on July 28, 2011, the statement suggests that force was used and Konovalchuk struggled but it does not show the absence of excessive force. Thus, it cannot be said that no rational factfinder could find in favor of the plaintiff. *Gallo,* 22 F.3d at 1223–24. Crediting the *pro se* plaintiff's account of the events, as required by the governing law, the alleged kicking, punching, and stomping carried out by Cerminaro, Anken, French, Mekic, Moore would be objectively unreasonable and disproportional to the circumstances confronting those officers. *Jones,* 465 F.3d at 61. Therefore, the excessive force claims against Cerminaro, Anken, French, Mekic, Moore survive their cross-motion for summary judgment.

City Defendants also fail to establish the absence of material facts surrounding further excessive claims against Cerminaro. Konovalchuk avers that Cerminaro violated his Fourth Amendment rights when Cerminaro kicked and stomped on him, twice choked him, threw him into a police vehicle, hitting his head on the car door, and verbally taunted him. Cerminaro attested that he only pressed his body weight on Konovalchuk's upper torso in order to assist in releasing Konovalchuk's arms from under his body for handcuffing. Again, while verbal abuse alone is not sufficient to give rise to an Eighth Amendment violation, crediting Konovalchuk's allegations, Cerminaro's use of force would be objectively unreasonable in light of Konovalchuk's lack of resistance. *Jones,* 465 F.3d at 61.

**\*18** Accordingly, City Defendants' motion on this claim should be denied.

### ii. Probable Cause<sup>FN13</sup>

> FN13. Issuance of a parole warrant is administrative in nature. *United States ex rel. Randazzo v. Follette,* 418 F.2d 1319, 1322 (2d Cir.1969). As such, the procedure behind issuance is not cognizable on federal review. *See generally Russell v. Coughlin,* 910 F.2d 75, 78 (2d Cir.1990) ("The fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action does not settle what protection the federal due process clause requires.") (internal quotation marks and citations omitted); *Dixon Goord,* 224 F.Supp.2d 739, 744–45 (S.D.N.Y.2002).

To the extent Konovalchuk attempted to allege the lack of probable cause for his arrest, City Defendants argue that such a claim is without merit. The Fourth Amendment protects the rights of individuals "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...." U.S. CONST. amend. IV. Searches and seizures may be conducted if there exists probable cause to believe that a crime has been committed and that evidence of that crime is present on the person or premises to be searched. *Id.*

Konovalchuk's status as a parolee afforded him a diminished expectation of privacy. *See Samson v. California,* 547 U.S. 843, 852 (2006) ("[P]arolees ... have severely diminished expectations of privacy by virtue of their status alone."); *United States v. Massey,* 461 F.3d 177, 179 (2d Cir.2006) ("A parolee's reasonable expectations of privacy are less than those of ordinary citizens, and are even less so where, as here, the parolee, as a condition of being released from prison, has expressly consented to having his residence searched by his parole officer.") (internal quotation marks and citations omitted); *United States v. Pabon,* 603 F.Supp.2d

406, 415 (N.D.N.Y.2009) (same). Additionally, where "a parolee is charged with violating his parole conditions and a warrant for his arrest has been issued, the parolee is removed one step farther from the constitutional protection enjoyed by ordinary citizens." *Pabon,* 603 F.Supp.2d at 415 (internal quotations and citations omitted).

The probable cause requirement for a parole warrant is satisfied where a parole officer demonstrates the existence of evidence sufficient to establish probable cause to believe that the parolee violated a condition of his or her parole. *See United States v. Basso,* 632 F.2d 1007, 1013 & n. 9 (2d Cir.1980) ("[T]he probable cause necessary to make a warrant valid in parole cases could be established merely by a presentation of satisfactory evidence that a person had violated the conditions of his release, a standard looser than that required to satisfy the probable cause requirements for a criminal warrant."); *see also Morrissey v. Brewer,* 408 U.S. 471, 487 (1972) (holding that requirement of probable cause for a parole warrant is satisfied by a showing that the parolee committed acts constituting a violation of parole conditions). "Probable cause requires an officer to have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Panetta v. Crowley,* 460 F.3d 388, 395 (2d Cir.2006) (internal quotation marks and citations omitted). Additionally, due to the fluidity of the concept, courts are instructed to consider the "totality of the circumstances" in making any probable cause determination. *Id.* (citations omitted).

**\*19** In this case, Konovalchuk concedes that he violated his parole conditions in July 2011, which is supported by record evidence demonstrating that he was charged with breaking his curfew, failing to report to his parole officer, and leaving his parole approved residence without notifying his parole officer. Dkt. No. 97–14. Furthermore, the arrest warrant charged Konovalchuk with committing a robbery, a type of crime for which he was convicted of

in the past. Therefore, a reasonable person would believe that Konovalchuk had engaged in criminal activity and there was probable cause to issue the parole warrant. Additionally, because probable cause existed, any claims for false arrest and imprisonment are meritless. *See Bonide Prods., Inc. v. Cahill,* 223 F.3d 141, 145 (2d Cir.2000) ("To prove a § 1983 or state law claim of malicious prosecution, [a plaintiff] must establish [inter alia] ... that there was no probable cause for the criminal proceeding; ..."); *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996) ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." (quotation marks and citation omitted)); *Zanghi v. Inc. Vill. of Old Brookville,* 752 F.2d 42, 45 (2d Cir.1985) ("It is abundantly clear that a finding of probable cause will defeat state tort claims for false arrest, false imprisonment and malicious prosecution."). Thus, we do not reach the issues with respect to the other elements of these claims.

Accordingly, City Defendants' motion on this ground should be granted.

### F. Fourteenth Amendment

Konovalchuk contends that when he was a pre-trial detainee: (1) defendant Farrell subjected him to cruel and unusual punishment by denying him food and water and exposed him to second-hand cigarette smoke; (2) defendants Petrie and Watson were deliberately indifferent to his medical needs by denying him medical attention; (3) defendants Carroll, Uryniak, Scully, Moore failed to intervene when he was assaulted on the ground and slammed against a wall; (4) defendants Anken, French, Mekic, Moore, Uryniak, Scully, Carroll, Cuda, Pezdek failed to intervene when Cerminaro choked him twice and threw him into a police vehicle; and (5) defendants Cuda, Pezdek, Anken, Scully, Uryniak, and Moore failed to intervene Carroll gripping his neck. Such claims must be analyzed under the Fourteenth Amendment's Due Process Clause.

The Due Process Clause provides that "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish,* 441 U.S. 520, 535–36 (1979) (citations omitted). However, the standards when evaluating deliberate indifference to a person in custody are identical whether under the Eighth or Fourteenth Amendment. *Caiozzo v. Koreman,* 581 F.3d 63, 72 (2d Cir.2009) ("Claims should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment."); see *also Shane v. Winnebego Cnty. Dep't of Soc. Servs.,* 489 U.S. 189, 199–200 (1989) ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being ... [including] food, clothing, shelter, medical care, and reasonable safety ....") (citations omitted). Accordingly, cases analyzed under the Eighth Amendment provide guidance in analyzing cases, as here, considered under the Fourteenth Amendment. Therefore, Konovalchuk's cruel and unusual punishment, deliberate indifference, and failure to intervene claims will be considered under Eighth Amendment standards. The Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishment." U.S. CONST. amend. VIII.

### i. Exposure to Environmental Tobacco Smoke ("ETS")

**\*20** To show that a prison official has violated the Eighth Amendment through deliberate indifference, a plaintiff must demonstrate that: (1) the conditions of confinement objectively posed a "substantial risk of serious harm," and (2) the defendant was subjectively aware of and unreasonably disregarded this health or safety risk. *Helling v. McKinney,* 509 U.S. 25, 33–35 (1993); *Farmer v. Brennan,* 511 U.S. 825, 839 (1994). To satisfy the objective prong and establish a serious illness or injury resulting from exposure to ETS, "a plaintiff must show that he himself is being exposed to unreasonably high levels of ETS." *Warren v. Keane,*

196 F.3d 330, 333 (2d Cir.1999) (citing *Helling,* 509 U.S. at 35) (internal quotation marks omitted); *Gill v. Smith,* 283 F.Supp.2d 763, 766 (N.D.N.Y.2003) (citing same). Not only must the exposure actually cause the inmate potential harm but "society [must] consider[ ] the risk ... to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Id.* (quoting *Helling,* 509 U.S. at 35–36). Subjectively, a plaintiff must demonstrate that the defendant "knew of and disregarded an excessive risk to inmate health or safety." *Colon v. Drew,* 335 F. App'x 86, 87–88 (2d Cir.2009) (alterations and citations omitted). Additionally, the court must assess "the [defendants'] current attitudes and conduct," towards the environment, evaluating whether "[defendants] are ignoring the possible dangers posed by exposure to ETS." *Helling,* 509 U.S. at 36–37.

In the prison context, "[courts have] granted summary judgment for the defendant because the plaintiff failed to provide any evidence about the level of smoke in the facility, the degree of exposure, or any medical problems associated with exposure to ETS." *Gill v. Smith,* 283 F.Supp.2d at 767 (citing *inter alia, Davidson v. Coughlin,* 920 F.Supp. 305, 309 (N.D.N.Y.1996). In this case, Konovalchuk's ETS claim against Farrell must fail. First, the record is devoid of any evidence showing that Konovalchuk suffered any medical problems associated with the ETS on October 11, 2011. Second, Konovalchuk does not allege the ETS caused him medical problems at the time or he developed medical issues at a later time. Third, even accepting Konovalchuk's allegations as true, exposure to cigarette smoke for five hours within one day does not constitute an unreasonably high level of ETS. *See, e.g., Gill v. Bracey,* No. 99–CV–10429, 2001 WL 34045758, at \*2, \*4 (S.D.N.Y. Jul. 17, 2001) (finding ETS was not unreasonably high where the plaintiff was exposed to the ETS for four and a half hours a day in the law library and in line at the medical dispensary); *cf. Helling,* 509 U.S. at 35–36 (living with a cellmate who smokes five

packs of cigarettes a day may satisfy the objective prong); *LaCroix v. Williams,* No. 97–CV–790E(F), 2000 WL 1375737, at *3 (W.D.N.Y. Sept. 21, 2000) (holding that even though plaintiff was housed in a poorly ventilated twenty-two-bed dormitory with twenty-one smokers, the lack of documentation to support the alleged resulting medical issues was insufficient to craft an Eighth Amendment claim)). Furthermore, Konovalchuk does not contend that he advised Farrell of any particular sensitivity he had to cigarette smoke. Thus, Farrell could not have intentionally subjected Konovalchuk's health or safety to an excessive risk. *Colon,* 335 F. App'x at 87–88. Based on the record evidence, no factfinder could reasonably find in favor of Konovalchuk. *Gallo,* 22 F.3d at 1223–24.

**\*21** Accordingly, County Defendants' cross-motion on this ground should be granted.

### ii. Denial of Food and Water

As the Second Circuit has noted, courts have not explicitly held that the denial of food is a *per se* violation of a prisoner's Eighth Amendment rights. *Robles v. Coughlin,* 725 F.2d 12, 15 (2d Cir.1983) (citing *Moss v. Ward,* 450 F.Supp. 591, 596 (W.D.N.Y.1978)). However, "under certain circumstances a substantial deprivation of food may well be recognized as being of constitutional dimension." *Id.* (citing *inter alia Cunningham v. Jones,* 567 F.2d 653, 659–60 (6th Cir.1977)). For example, while the deprivation of one or two meals might not constitute cruel and unusual punishment, depriving a prisoner of all food for four consecutive days when there is no record evidence showing that the prisoner had committed a rule violation was held to have violated the Eighth Amendment. *Moss,* 450 F.Supp. at 596–97. Further, a combination of the "denial of noon meals on one limited occasion, the denial of exercise while on keeplock confinement, and being confined in [a] cell under keeplock confinement for four, twenty-one and twenty-one days on three separate occasions with no alleged unusual conditions" have been deemed insufficient to amount to cruel and unusual punishment under

Eighth Amendment. *Gill v. Hoadley,* 261 F.Supp.2d 113, 129 (N.D.N.Y.2003) (collecting cases). Here, it is undisputed that Konovalchuk missed two consecutive meals on October 11, 2011 while being transported to-and-from the courthouse. However, it is also undisputed that Konovalchuk was provided three meals on the previous day as well as dinner upon his return to Monroe. Such deprivation is not substantial and does not amount to cruel and unusual punishment. *Moss,* 450 F.Supp. at 596–97.

Furthermore, Konovalchuk's claim with respect to the deprivation of drinking water is baseless. Konovalchuk admitted that he had access to water prior to leaving for court and after he returned from court. Konovalchuk also does not controvert Farrell's contention that Konovalchuk had access to a water foundation while being held at the Utica City Court. "Nowhere has it been held that prisoners are entitled to complete and unfettered access to water or showers." *Beckford v. Portuondo,* 151 F.Supp.2d 204, 211 (N.D .N.Y.2001). Moreover, while Konovalchuk alleged that Farrell had denied him food and water in retaliation for filing a federal action, as discussed *supra,* Konovalchuk's retaliation claim is without merit. As such, the facts before the Court do not draw an inference of punitive intent in allowing Konovalchuk to miss meals. *Smart v. City of New York,* No. 09–CV–2203 (HB), 2009 WL 862281, at *10 (S.D.N.Y. Apr. 1, 2009) ("deliberate denial of food, water or access to a restroom for fourteen hours is not reasonably related to any legitimate governmental purpose and thus the facts ... support an inference of punitive intent" (citing cases)). Thus, even viewing the facts in the light most favorable to the plaintiff, missing two consecutive meals and being deprived of water during the same period of time, without more, does not give rise to an Eighth Amendment violation.

**\*22** Accordingly, County Defendants' cross-motion on this ground should be granted.

### iii. Medical Indifference

City Defendants do not address Konovalchuk's medical indifference claims against Petrie, Watson,

or Cerminaro. Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis,* "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Accordingly, the Court *sua sponte* addresses these claims.

The Eighth Amendment prohibition extends to the provision of medical care. Shane, 489 U.S. at 199–200. The test for a § 1983 claim is twofold. First, the pretrial detainee must show that the condition to which he was exposed was sufficiently serious. *Farmer,* 511 U.S. at 834. Second, the pretrial detainee must show that the official demonstrated deliberate indifference by knowing of the risk and failing to take measures to avoid the harm. *Id.* "[O]fficials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

" 'Because society does not expect that [pretrial detainees] will have unqualified access to healthcare,' a [pretrial detainee] must first make [a] threshold showing of serious illness or injury" to state a cognizable claim. Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir.2003) (quoting Hudson v. McMillian, 503 U.S. 1,9 (1992)). Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." Brock v. Wright, 315 F.3d 158, 162–63 (2d Cir.2003) (citing Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir.1998)). The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case.

Smith, 316 F.3d at 185.

Deliberate indifference requires the pretrial detainee "to prove that the [defendant] knew of and disregarded the prisoner's serious medical needs." Chance, 143 F.3d at 702. Thus, defendant officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104 (1976). "Mere disagreement over proper treatment does not create a constitutional claim" as long as the treatment was adequate. Chance, 143 F.3d at 703. Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists ... are not adequate grounds for a section 1983 claim." Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F.Supp.2d 303, 312 (S.D.N.Y.2001).

**\*23** In this case, an issue of material fact exist as to whether Konovalchuk sustained serious injuries as a result of the alleged assaults. Konovalchuk alleged that he suffered injuries to his neck, face, and head. While medical records do not substantiate Konovalchuk's allegation of a "post-traumatic concussion," they do show that Konovalchuk has complained of chronic migraine headaches between August and October of 2011 and June through November of 2012. Despite being treated with pain medication, those headaches are ongoing. Brock, 315 F.3d at 162–63. "[C]hronic migraine headaches are often found to be sufficiently serious to warrant constitutional protection." De Jesus v. Albright, No. 08–CV–5804 (DLC), 2011 WL 814838, at \*9 (S.D.N.Y. Mar. 9, 2011) (citing *inter* alia Benjamin v. Kooi, No. 07–CV–0506, 2010 WL 985844, at \*7 (N.D.N.Y. Feb. 25, 2010) (collecting cases)). Therefore, Konovalchuk has proffered sufficient facts establishing an issue of material fact with respect to objective prong to his medical indifference claims.

Konovalchuk has also proffered sufficient allegations to establish a question of fact with respect to the subjective prong. City Defendants do not

controvert Konovalchuk's allegation that both Petrie and Watson refused to obtain medical attention for Konovalchuk. While Watson retrieved an officer to photograph Konovalchuk's injuries, medical attention was not provided. If Petrie and Watson were indeed made aware of Konovalchuk's injuries but failed to provide medical attention, this would be an intentional denial or delay in providing Konovalchuk access to medical care. *Estelle,* 429 U.S. at 104. As for Cerminaro, he maintains that Konovalchuk declined to see medical personnel. This competing evidence requires resolution by a jury. As such, questions of material fact remain with the subjective prong.

Accordingly, Konovalchuk's medical indifference claims should remain in this action.

### iv. Failure to Intervene

"Law enforcement officials can be held liable under § 1983 for not intervening in a situation where excessive force is being used by another officer." *Jean–Laurent v. Wilkinson,* 540 F.Supp.2d 501, 512 (S.D.N.Y.2008) (citations omitted). To establish liability, a plaintiff must demonstrate that "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Id.*

#### a. State Defendants

Konovalchuk contends: (1) Carroll failed to intervene when he was being assaulted on the ground and slammed against a wall; (2) Carroll, Cuda, and Pezdek failed to intervene Cerminaro choking him and throwing him into a police vehicle; and (3) Cuda and Pezdek failed to intervene Carroll tightly gripping his neck while threatening him with a police radio. Konovalchuk has failed to raise a question of material fact regarding Carroll, Cuda, and Pezdek's actions. Despite his conclusory allegations, as discussed *supra,* Konovalchuk cannot establish the presence of all three defendants at the time of his arrest. The three officers would not have

had a realistic opportunity to intervene and prevent harm to Konovalchuk nor would they have known that Konovalchuk's constitutional rights were violated, thus, triggering the need to take reasonable steps to intervene. *Jean–Laurent,* 540 F.Supp.2d at 512.

**\*24** Accordingly, State Defendants' motion on this ground should be granted.

#### b. City Defendants

City Defendants do not address Konovalchuk's failure to intervene claims. The Court *sua sponte* addresses them pursuant to 28 U.S.C. § 1915.

Konovalchuk contends that: (1) Uryniak, Scully, and Moore failed to intervene when he was being assaulted on the ground and slammed against a wall; (2) Anken, French, Mekic, Moore, Uryniak, and Scully failed to intervene Cerminaro choking him and throwing him into a car; and (3) Anken, Scully, Uryniak, and Moore failed to intervene Carroll tightly gripping his neck and threatening him with a police radio. First, Konovalchuk's claims against Scully must be dismissed as the record is devoid of any evidence establishing that Scully was present at the scene before, during, or after the arrest. *Coleman,* 2012 WL 4480684, at \*9; *De Michele,* 2012 WL 4354763, at \*16. Scully attested that he learned about Konovalchuk's arrest while Konovalchuk was being booked. As such, despite Konovalchuk's conclusory and unsubstantiated assertion, he cannot establish that Scully had a realistic opportunity to intervene and prevent the alleged misconduct. *Jean–Laurent,* 540 F.Supp.2d at 512.

Second, because having his neck tightly gripped constitutes *de minimis* use of force, as discussed *supra,* Uryniak, Moore, Anken, French, and Mekic were not obligated to intervene those use of force instances. *See Scott v. City of White Plains,* No. 10–CV–1887 (KBF), 2013 WL 1313774, at \*7 (S.D.N.Y. Mar. 18, 2013) (Dkt. No. 97–5 at 32–38) ("defendants were under no obligation to intervene where the underlying use of force was not excessive" (citing *Anderson v. Branen,* 17 F.3d 552, 557

(2d Cir.1994)); *see also Gillard v. Hamel,* No. 09–CV–0431 (TJM)(DEP), 2012 WL 967064, at *9 (N.D.N.Y. Feb. 24, 2012) (Dkt. No. 97–4 at 3–10) (granting summary judgment on failure to protect claim where the underlying force and any resulting injuries were *de minimis* and constitutionally insignificant).

Turning to the remaining claims, it is undisputed that Uryniak, Moore, Anken, French were present during Konovalchuk's arrest. The City Defendants do not proffer any evidence to controvert claims against Mekic. Issues of material fact exists as to whether Uryniak, Moore, Anken, French, and Mekic had the opportunity to intervene and while Konovalchuk was assaulted on the ground, choked, thrown against a wall, and thrown into a police vehicle, thereby hitting his head against a car door. *Jean–Laurent,* 540 F.Supp.2d at 512. It has been held that an issue of material exists for the jury where the defendant shoved an arrestee into a police vehicle head first, causing the arrestee's head to strike a metal partition in the car, resulting in subsequent injuries. *Maxwell v.. City of New York,* 380 F.3d 106, 108 (2d Cir.2004). The Second Circuit has also held that allegations involving plaintiffs being thrown to the ground, dragged on the ground face down, and had head slammed into a wall to be sufficient to allow a reasonable jury to conclude that excessive force was used. *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 124 (2d Cir.2004) (citing *Robison v. Via,* 821 F.2d 913, 923–24 (2d Cir.1987) (holding allegations that defendant officer yanked arrestee out of a car, threw her against it, and pinned her arm behind her back were sufficient to withstand summary judgment)). Thus, City Defendants would be obligated to intervene in these claims.

**\*25** Accordingly, Konovalchuk's failure to intervene claims against (1) Uryniak and Moore for the assault on the ground and slamming against a wall and (2) Anken, French, Mekic, Moore, and Uryniak for Cerminaro's choking and throwing Konovalchuk into a car should remain in this action.

tion.

### G. Qualified Immunity

Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *Aiken v. Nixon,* 236 F.Supp.2d 211, 229–30 (N.D.N.Y.2002) (McAvoy, J.), *aff'd,* 80 F. App'x 146 (2d Cir.2003). However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified ... immunity might still be available ... if it was objectively reasonable for the public official to believe that his acts did not violate those rights." *Kaminsky v. Rosenblum,* 929 F.2d 922, 925 (2d Cir.1991); *Magnotti v. Kuntz,* 918 F.2d 364, 367 (2d Cir.1990) (internal citations omitted)). A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. *Aiken,* 236 F.Supp.2d at 230.

Here, Farrell claims that even if Konovalchuk's Fourteenth Amendment claims against him are substantiated, he is nevertheless entitled to qualified immunity. The second prong of the inquiry need not be addressed with respect to Konovalchuk's Fourteenth Amendment claims against Farrell because, as discussed *supra,* it has not been shown that Farrell violated Konovalchuk's Fourteenth Amendment rights. Accordingly, County Defendants' cross-motion on this ground should be granted.

The City Defendants argue that were Konovalchuk's Fourth Amendment excessive force claims against them substantiated, they are entitled to qualified immunity. It is clear that on July 28, 2011, a parolee has a right against the use of excessive

force by a law enforcement officer during the course of his arrest. *Tracy,* 623 F.3d at 96. Thus, accepting all of Konovalchuk's allegations as true, qualified immunity cannot be granted to City Defendants for the alleged Fourth Amendment violations. Accordingly, City Defendants' cross-motion on this ground should be denied.

### H. Municipal Liability

"Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs. of N.Y.,* 436 U.S. 658, 691 (1978). "[T]o prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury,* 542 F.3d 31, 36 (2d Cir.2008). Because only Konovalchuk's claims against City Defendants should survive summary judgment, the Court need not reach the claim of municipal liability against Oneida.

**\*26** "In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom.' " *Davis v. City of New York,* 228 F.Supp.2d 327, 336 (S.D.N.Y.2002), *aff'd,* 75 F. App'x 827 (2d Cir.2003). Two situations that constitute a municipal policy are (1) where there is an officially promulgated policy, *Monell,* 436 U.S. at 690, and (2) a single act taken by a municipal employee who has final policymaking authority in the realm in which the action was taken. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480–81 (1986). On the other hand, "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown,* 520 U.S. 397, 404 (1997). The custom must be perman-

ent and well-settled. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988) (citation omitted). Neither a policy nor a custom can be established based on a single instance of unconstitutional conduct by a municipality employee. *See City of Okla. City v. Tuttle,* 471 U.S. 808, 831 (1988) (Brennan, J., concurring in part and concurring in the judgment) ("To infer the existence of a city policy from the isolated misconduct of a single, low-level officer, and then to hold the city liable on the basis of that policy, would amount to permitting precisely the theory of strict *respondeat superior* liability rejected in *Monell* ...."). "Conclusory allegations of a municipality's pattern or policy of unconstitutional behavior is insufficient to establish a *Monell* claim." *Devarnne v. City of Schenectay,* No. 10–CV–1037, 2011 WL 219722, at \*3 (N.D.N.Y. Jan. 21, 2011) (quoting *McAllister v. New York City Policy Dep't,* 49 F.Supp.2d 688, 705 (S.D.N.Y.1999)).

Here, assuming there has been a constitutional injury in connection with the remaining claims, Konovalchuk has failed to show a dispute of material fact with respect to the existence of a municipal policy or custom causing such an injury. Konovalchuk has provided no allegations or evidence to support an inference that Utica has a custom or practice of tolerating police abuse. Konovalchuk submits to the Court a General Order of the UPD on the use of physical force, which states as its policy that "officers shall use only that level of physical force necessary in the performance of their duties...." Dkt. No. 94–2 at 40–42. However, despite his conclusory statements, Konovalchuk does not show how the General Order was deficient and caused him a constitutional injury. *Roe,* 542 F.3d at 36; *Monell,* 436 U.S. at 690. Furthermore, Konovalchuk does not allege, nor does the record reflect, that any City Defendants possessed the final policy-making authority in training officers on the use of physical force. *Pembaur,* 475 U.S. at 480–81. As such, Konovalchuk cannot prove the existence of an unconstitutional official policy for the purposes of his *Monell* claim. Konovalchuk has also failed to

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

raise a question of material fact with respect to the existence of an unconstitutional custom or practice permitted by Utica. Other than his conclusory assertions, Konovalchuk proffers nothing more to show that the alleged failure to train employees on preventing police abuse was so widespread, permanent, and well-settled, that the practice has the force of law. *Brown,* 520 U.S. at 404; *Praprotnik,* 485 U.S. at 127. Thus, Konovalchuk has failed to show the existence of a policy or custom for his municipality liability claim.

**\*27** As for theory of the failure to train, a plaintiff must show that such failure "amount[s] to 'deliberate indifference to the rights of persons with whom the untrained employees come into contact." *Connick v. Thompson,* ——U.S. ——, 131 S.Ct. 1350, 1359 (2011) (altercations and citation omitted). A plaintiff must prove that "a municipal actor disregarded a known or obvious consequence of his action." *Id.* at 1360 (internal quotation marks and citation omitted). Further, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for the purposes of failure to train." *Id.* (internal quotation marks omitted). Here, Konovalchuk does not proffer specific and substantiated arguments involving deficiencies in Utica's training programs. Further, Konovalchuk does not proffer any evidence showing how the policy-makers of Utica were deliberately indifferent to "the risk that [their] employees would unconstitutionally apply [their] policies without more training." *Amnesty Am.,* 361 F.3d at 129. Therefore, Konovalchuk has failed to establish any deficiencies in the training programs caused a constitutional violation or that the failure to train was the product of deliberate indifference. *Okin v. Village of Cornwall–On–Hudson Police Dep't,* 577 F.3d 415, 440–41 (2d Cir.2009) (prevailing in a failure to train claim requires "[t]he plaintiff [to] offer evidence to support the conclusion that the training program was inadequate, not that a particular officer may be unsatisfactorily trained or that an otherwise sound program has occasionally been negligently

administered, and that a hypothetically well-trained officer would have avoided the constitutional violation." (internal quotation marks and alterations omitted)).

Given the reasons above and the conclusory nature of Konovalchuk's assertions, a reasonable factfinder would not be able to find in Konovalchuk's favor and the *Monell* claims must be dismissed. Accordingly, County and City Defendants' cross-motions on this ground should be granted.

### IV. Conclusion
For the reasons stated above, it is hereby:

1. **RECOMMENDED** that Konovalchuk's motion for summary judgment (Dkt. No. 94) be **DENIED.**

2. **RECOMMENDED** that State Defendants' motion for summary judgment (Dkt. No. 97) and County Defendants' cross-motion for summary judgment (Dkt. No. 98) be GRANTED in their entirety.

3. Further **RECOMMENDED** that City Defendants' cross-motion for summary judgment (Dkt. No. 100) be **GRANTED** as to the failure to intervene claims against defendant Scully and the claim of municipal liability against defendant City of Utica and **DENIED** in all other respects.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the ... recommendation." N.Y.N.D.L.R. 72 .1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)). **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec'y of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

Slip Copy, 2014 WL 272428 (N.D.N.Y.)
**(Cite as: 2014 WL 272428 (N.D.N.Y.))**

N.D.N.Y.,2014.
Konovalchuk v. Cerminaro
Slip Copy, 2014 WL 272428 (N.D.N.Y.)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 268345 (N.D.N.Y.)

(Cite as: 2008 WL 268345 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Issac McDONALD, Plaintiff,
v.
Israel RIVERA, et al, Defendants.
No. 9:06-CV-410 (LEK/DEP).

Jan. 30, 2008.
Issac McDonald, pro se.

Hon. Andrew M. Cuomo, Attorney General of the State of New York, Jaime Irene Roth, Esq., Assistant Attorney General, of Counsel, Albany, NY, for Defendants.

### DECISION AND ORDER

LAWRENCE E. KAHN, District Judge.
  *1 This matter comes before the Court following a Report-Recommendation filed on December 27, 2007 by the Honorable David E. Peebles, United States Magistrate Judge, pursuant to 28 U.S .C. § 636(b) and L.R. 72.3 of the Northern District of New York. Report-Rec. (Dkt. No. 27). After ten days from the service thereof, the Clerk has sent the entire file to the undersigned, including the objections by Plaintiff Issac McDonald, which were filed on January 9, 2008 and January 24, 2008. Objections (Dkt.Nos.34, 38).

  It is the duty of this Court to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). "A [district] judge ... may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* This Court has considered the objections and has undertaken a de novo review of the record and has determined that the Report-Recommendation should be approved for the reasons stated therein.

  Accordingly, it is hereby

ORDERED, that the Report-Recommendation (Dkt. No. 27) is **APPROVED** and **ADOPTED** in its **ENTIRETY;** and it is further

ORDERED, that Defendants' Motion to dismiss (Dkt. No. 25) is **DENIED** as to Plaintiff's equal protection and retaliation claims, as against Defendants Costonas, Wildermuth, and Frazier, but otherwise **GRANTED;** and it is further

ORDERED, that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED.**

*REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.
  Plaintiff Issac McDonald, a New York State prison inmate who is proceeding *pro se* and *in forma pauperis,* has commenced this action pursuant to 42 U.S.C. § 1983, alleging deprivation of his civil rights. After two false starts plaintiff has now filed an amended complaint meeting the court's pleading requirements, alleging that he was harassed by corrections workers at the facility in which he was housed at the relevant times, ostensibly in retaliation for his having registered complaints regarding his treatment. As relief, plaintiff's seeks both a declaration that defendants violated his constitutional rights and recovery of compensatory and punitive damages of at least $300,000.

  In response to plaintiff's complaint, defendants have moved seeking its dismissal on a variety of bases, arguing that 1) it fails to assert any basis for finding personal liability against some of the defendants; 2) plaintiff's claim of equal protection, as pleaded, lacks merit; 3) plaintiff's retaliation cause of action is improperly stated in only conclusory terms, and does not meet any of the three requirements for establishing such a claim; 4) plaintiff's claim of cruel and unusual punishment is lacking in merit; and 5) plaintiff has failed to state a cognizable claim under the Civil Rights of Institutionalized Persons Act, which

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 268345 (N.D.N.Y.)

(Cite as: 2008 WL 268345 (N.D.N.Y.))

does not confer a private right of action upon prison inmates.[FN1] For the reasons set forth below, I recommend that defendants' motion be granted, in part, but otherwise denied.

> **FN1.** In their motion, defendants also seek dismissal of any claim by the plaintiff for injunctive relief, based upon his transfer out of the facility at which the relevant events occurred. *See* Defendants' Memorandum (Dkt. No. 25-2) at 9. Because careful review of plaintiff's amended complaint does not disclose any request by him for such equitable relief, I have not addressed this portion of the defendants' motion.

## I. *BACKGROUND*[FN2]

> **FN2.** In light of the procedural posture of this case, the following recitation is drawn from plaintiff's complaint, the allegations of which have been accepted as true solely for purposes of defendants' motion. *See Erickson v. Pardus,* --- U.S. ----, 127 S.Ct. 2197, 2200 (2007) (citing *Bell Atlantic Corp. v. Twombly,* --- U.S. ----, 127 S.Ct. 1955, 1965 (2007)); *see also Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1733, 1734 (1964).

**\*2** At the times relevant to his claims, plaintiff was a prison inmate entrusted to the custody of the New York State Department of Correctional Services (the "DOCS"), and designated to the Coxsackie Correctional Facility ("Coxsackie"), located in Coxsackie, New York. *See generally* Amended Complaint (Dkt. No. 16).

On August 16, 2005, as he was being transferred to the B-2 company at Coxsackie, plaintiff was approached by defendant M. Wildermuth, a corrections officer, and told that if he made any noise he would be issued a misbehavior report, and that the corrections officer, who did not like McDonald, would do whatever was necessary to cause him to be detained in keeplock confinement or transferred into the facility's special housing unit ("SHU"). *Id .* ¶ 1. According to the plaintiff, defendant Wildermuth made good on that promise on August 24, 2005, by issuing him a misbehavior report charging two disciplinary

infractions, including refusal to obey an order (Rule 106.10) and failure to follow staff guidelines (Rule 121.12) *Id.* ¶ 2. On that same date-although it is unclear whether this was as a direct result of the issuance of a misbehavior report-defendant Wildermuth also denied plaintiff access to both a designated recreation period and his evening meal. *Id.* ¶ 3. According to the plaintiff, these actions were taken in retaliation for his having spoken to a corrections sergeant on the prior day, apparently concerning defendant Wildermuth's threats. *Id.*

Plaintiff filed a formal grievance on August 24, 2005 regarding derogatory remarks made by defendant Wildermuth. Amended Complaint (Dkt. No. 16) ¶ 4. On the following day, Corrections Officer Wildermuth responded by threatening to plant a weapon in plaintiff's cell for the purpose of orchestrating a lengthy period of disciplinary confinement for McDonald. *Id.* ¶ 5. That threat led to the plaintiff's filing of a second grievance to address defendant Wildermuth's conduct. *Id.*

On August 30, 2005, plaintiff was issued another misbehavior report, on this occasion by Corrections Officer J. Frazier, also a named defendant in the action, accusing him of intentional sexual exposure (Rule 101.20) and failure to obey a direct order (Rule 106.10). As a result of that second misbehavior report, also attributed by the plaintiff to retaliatory animus based upon his having filed grievances against defendant Wildermuth, and alleged by him to contain baseless accusations, plaintiff was placed in keeplock confinement for thirty days. Amended Complaint (Dkt. No. 16) ¶ 6.

Plaintiff claims that following these events he was subjected to continuing harassment while at Coxsackie, and specifically alleges that on October 22, 2005 he was harassed and threatened by Corrections Officer J. Frazier. Amended Complaint (Dkt. No. 16) ¶ 10. Over time, plaintiff lodged complaints with various prison officials regarding the conduct of corrections officers at Coxsackie, including with facility Superintendent Israel Rivera, an un-named Deputy Superintendent of Security at the prison, and Corrections Captain Gary Costonas. *Id.* ¶¶ 7-13. Plaintiff maintains that despite those complaints, most of which went unanswered, the harassment continued and that after his release from keeplock confinement he was

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 268345 (N.D.N.Y.)

(Cite as: 2008 WL 268345 (N.D.N.Y.))

returned to the B-2 housing unit at Coxsackie, despite his request for a transfer into another housing unit within the facility. *Id.*

II. *PROCEDURAL HISTORY*

**\*3** Plaintiff commenced this action on March 1, 2006. Dkt. No. 1. After having been alerted by the court to various procedural and substantive deficiencies, *see* Dkt. Nos. 4, 8, 14, plaintiff submitted an amended complaint received by the court on or about December 20, 2006, and the filing of which was thereafter approved by order issued by Senior District Judge Lawrence E. Kahn on January 23, 2007. Dkt. Nos. 16, 17. As defendants, plaintiff's complaint names Israel Rivera, the Superintendent at Coxsackie; Corrections Captain Gary Costonas; and Corrections Officers M. Wildermuth and J. Frazier.[FN3] Dkt. No. 16. Plaintiff's complaint, as amended, asserts four distinct causes of action, alleging 1) unlawful retaliation, based upon his filing of grievances; 2) denial of equal protection; 3) cruel and unusual punishment; and 4) violation of the Civil Rights of Institutionalized Persons Act, 42 U.S.C. §§ 1997-1997j, and seeks both declaratory relief and an award of damages.

> FN3. While plaintiff's complaint also named H.D. Graham, identified as the Superintendent of the Auburn Correctional Facility, as a defendant he has since been dismissed from the action, based upon the plaintiff's failure to reference him in the body of that pleading. *See* Dkt. No. 17 at 2.

On April 9, 2007, in response to the filing and service of plaintiff's amended complaint, defendants moved seeking dismissal of plaintiff's claims on a variety of bases. Dkt. No. 25. That motion, which plaintiff has not opposed despite passage of the response deadline, is now ripe for determination and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).[FN4] *See also* Fed.R.Civ.P. 72(b).

> FN4. Plaintiff's failure to respond in opposition to defendants' motion does not serve as an impediment to a determination of that motion. *See, e.g., White v. Mitchell,* No. 99-CV-8519,

2001 WL 64756, at *1 (E.D.N.Y. Jan. 18, 2001). Motions to dismiss test only the legal sufficiency of the complaint; accordingly, while a party should be afforded a reasonable opportunity to respond to such a motion a court can judge the sufficiency of a complaint as a matter of law based on its own reading of the complaint and knowledge of the case law. *McCall v. Pataki,* 232 F.3d 321, 322-23 (2d Cir.2000). It should be noted, moreover, under this court's local rules the plaintiff's failure to respond to defendants' properly filed motion could be regarded as his consent to granting of that motion, provided that the defendants have met their burden of making a facial showing of entitlement to the relief requested. N.D.N.Y.L.R. 7.1(b)(3); *see also McCall,* 232 F.3d at 322-23 (holding that plaintiff's failure to respond to motion to dismiss in and of itself could not constitute basis for dismissal if plaintiff's complaint stated a claim for relief); *White,* 2001 WL 64756, at n. 2 (citing *McCall* ).

III. *DISCUSSION*

A. *Rule 12(b)(6) Standard*

A motion to dismiss a complaint, brought pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading, utilizing as a backdrop a pleading standard which is particularly unexacting in its requirements. Rule 8 of the Federal Rules of Civil Procedure requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Absent applicability of a heightened pleading requirement such as that imposed under Rule 9, a plaintiff is not required to plead specific factual allegations to support the claim; rather, "the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Erickson v. Pardus,* --- U.S. ----, 127 S.Ct. 2197, 2200 (2007) (quoting *Bell Atlantic Corp. v. Twombly,* --- U.S. ----, 127 S.Ct. 1955, 1964 (2007) (other quotations omitted)); *cf. Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) (acknowledging that a plaintiff may properly be required

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 268345 (N.D.N.Y.)

(Cite as: 2008 WL 268345 (N.D.N.Y.))

to illuminate a claim with some factual allegations in those contexts where amplification is necessary to establish that the claim is "plausible"). Once the claim has been stated adequately, a plaintiff may present any set of facts consistent with the allegations contained in the complaint to support his or her claim. *Twombly,* 127 S.Ct. at 1969 (observing that the Court's prior decision in *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99 (1957), "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival").

**\*4** In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true, and draw all inferences in favor of the non-moving party. *Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1722, 1734 (1964); *Miller v. Wolpoff & Abramson, LLP,* 321 F.3d 292, 300 (2d Cir.), *cert. denied,* 540 U.S. 823, 124 S.Ct. 153 (2003); *Burke v. Gregory,* 356 F.Supp.2d 179, 182 (N.D.N.Y.2005) (Kahn, J.). The burden undertaken by a party requesting dismissal of a complaint under Rule 12(b)(6) is substantial; the question presented by such a motion is not whether the plaintiff is likely ultimately to prevail, " 'but whether the claimant is entitled to offer evidence to support the claims.' " *Log On America, Inc. v. Promethean Asset Mgmt. L.L.C.,* 223 F.Supp.2d 435, 441 (S.D.N.Y.2001) (quoting *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995) (other quotations omitted)). Accordingly, a complaint should be dismissed on a motion brought pursuant to Rule 12(b)(6) only where the plaintiff has failed to provide some basis for the allegations that support the elements of his or her claim. *See Twombly,* 127 S.Ct. at 1969, 1974; *see also Patane v. Clark,* 508 F.3d 106, 2007 WL 4179838, at \*3 (2d Cir. Nov. 28, 2007) ("In order to withstand a motion to dismiss, a complaint must plead 'enough facts to state a claim for relief that is plausible on its face.' ") (quoting *Twombly* ).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson,* 127 S.Ct. at 2200 (" '[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers.' ") (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292 (1976) (internal quotations omitted)); *Davis v. Goord,* 320 F.3d 346, 350 (2d Cir.2003) (citation omitted); *Donhauser v. Goord,* 314 F.Supp.2d 119, 121 (N.D.N.Y.2004) (Hurd, J.). In the event of a perceived deficiency in a *pro se* plaintiff's complaint, a court should not dismiss without granting leave to amend at least once if there is any indication that a valid claim might be stated. *Branum v. Clark,* 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

### B. *Personal Involvement*

Plaintiff's complaint names Superintendent Rivera and Corrections Captain Costonas as two of the defendants being sued. It does not, however, allege direct involvement on the part of either of those defendants in the constitutional deprivations alleged. Instead, plaintiff's claims against those two individuals arise from his complaints to them regarding the ongoing harassment which he experienced while at Coxsackie and the fact that for the most part his requests for their intervention went unanswered. *See, e.g.,* Amended Complaint (Dkt. No. 16) ¶¶ 7, 9, 10, 11, 12 and 13.

**\*5** Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282 (1978)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

Both of the defendants now seeking dismissal on this basis appear to have held supervisory positions at Coxsackie during the relevant times. A supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor-there is no *respondeat superior* liability under section 1983. *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501. A

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 268345 (N.D.N.Y.)

(Cite as: 2008 WL 268345 (N.D.N.Y.))

supervisory official can, however, be liable in one of several ways: 1) the supervisor may have directly participated in the challenged conduct; 2) the supervisor, after learning of the violation through a report or appeal, may have failed to remedy the wrong; 3) the supervisor may have created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) the supervisor may have been grossly negligent in managing the subordinates who caused the unlawful event; or 5) the supervisor may have failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty,* 490 F.3d 143, 152-53 (2d Cir.2007); *see also Richardson,* 347 F.3d at 435; *Wright,* 21 F.3d at 501; *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986).

1. *Superintendent Rivera*

Plaintiff's sole complaint against Superintendent Rivera is that despite writing to him in his capacity as facility superintendent to complain of the treatment received from corrections workers at Coxsackie, those letters went unanswered. This allegation, standing alone, is insufficient to establish the requisite degree of personal involvement on the part of defendant Rivera in the constitutional violations alleged. *Greenwaldt v. Coughlin,* No. 93 Civ. 6551, 1995 WL 232736, at *4 (S.D.N.Y.Apr.19, 1995) ("[I]t is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations.") (citing, *inter alia, Garrido v. Coughlin,* 716 F.Supp. 98, 100 (S.D.N.Y.1989) (dismissing claim against superintendent of prison where only allegation was that he ignored inmate's request for an investigation)). Accordingly, I recommend dismissal of plaintiff's claims as against defendant Superintendent Rivera.

2. *Corrections Captain Costonas*

**\*6** Like Superintendent Rivera, Corrections Captain Gary Costonas also is alleged to have received multiple written complaints from the plaintiff concerning his circumstances. Amended Complaint (Dkt. No. 16) ¶¶ 9, 11-13. While, as was the case with respect to Superintendent Rivera, most of those letters went unanswered, a written communication by the plaintiff to

Captain Costonas on December 23, 2005 requesting a housing transfer within Coxsackie generated a response in which Captain Costonas wrote "[y]ou do not tell me where you should lock in Coxsackie C.F., accordingly, my office will not [sic] further action." *Id.* ¶ 12. In view of plaintiff's allegation that the harassment experienced by him in retaliation for the filing of grievances was ongoing and involved two corrections officers apparently assigned to the B-2 housing unit, the refusal by defendant Costonas of plaintiff's request for a transfer out of that unit could suffice to establish that individual's personal liabilty. *See Ramos v. Artuz,* No. 00 CIV 0149, 2001 WL 840131, at *8-10 (S.D.N.Y. July 25, 2001) (finding personal involvement by prison official whose involvement extended "beyond the mere receipt of letters" in that he "sent plaintiff numerous letters containing some explanation or justification" regarding the plaintiff's medical complaints). Accordingly, I recommend against dismissal of plaintiff's claims against defendant Costonas at this early procedural juncture.

C. *Equal Protection*

Plaintiff's second cause of action alleges, in summary fashion, a violation of the Equal Protection Clause of the Fourteenth Amendment. In their motion, defendants seek dismissal of that claim as legally deficient.

The Equal Protection Clause requires that state actors afford the same treatment to persons who are, for material purposes, similarly situated. *See City of Cleburne, Texas v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254 (1985). To prove an Equal Protection violation, a plaintiff must demonstrate that he or she was treated differently than others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class. *See Giano v. Senkowski,* 54 F.3d 1050, 1057 (2d Cir.1995) (citing, *inter alia, McCleskey v. Kemp,* 481 U.S. 279, 292, 107 S.Ct. 1756, 1767 (1987)). The plaintiff must also show that the disparity in treatment "cannot survive the appropriate level of scrutiny which, in the prison setting, means that he [or she] must demonstrate that his [or her] treatment was not reasonably related to [any] legitimate penological interests." *Phillips v. Girdich,* 408 F.3d 124, 129 (2d Cir.2005) (quoting *Shaw v. Murphy,* 532 U.S. 223, 225, 121 S.Ct. 1475 (2001) (internal quotation marks omitted)).

Not Reported in F.Supp.2d, 2008 WL 268345 (N.D.N.Y.)

(Cite as: 2008 WL 268345 (N.D.N.Y.))

Plaintiff's complaint in this instance alleges a series of deprivations which he attributes to retaliatory animus stemming from his having lodged complaints against various corrections workers including, principally, defendant Wildermuth. In his pleading, plaintiff does not identify himself as a member of any particular class.[FN5]

> FN5. This deficiency is not necessarily fatal, since an equal protection claim may be established by a person claiming to constitute a class of one who has been subject to invidious discrimination. *See Neilson v. D'Angelis,* 409 F.3d 100, 104 (2d Cir.2005) ("While the Equal Protection Clause is most commonly used to bring claims alleging discrimination based on membership in a protected class ... [a plaintiff] can still prevail in what is known as a 'class of one' equal protection claim.") (citing *Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 1074 (2000) (per curiam)).

**\*7** While far from artfully drafted, plaintiff's complaint does make at least oblique reference to his race, attributing to defendant Wildermuth a statement, made in connection with his refusal to allow McDonald to participate in recreation on August 24, 2005, to the effect that "ignorant Negro's [sic] like [the plaintiff] should not be allowed outside anyway." *See* Amended Complaint (Dkt. No. 16) ¶ 3. As was previously noted, the court's function at this procedural juncture is to determine, based upon the four corners of his complaint, whether McDonald has stated a plausible claim of Equal Protection denial sufficient to merit the opportunity to offer evidence in support of the claim. *Twombly,* 127 S.Ct. at 1969, 1974; *Patane,* 2007 WL 4179838, at \*3. While I have serious reservations as to whether plaintiff's complaint alleges conduct, including the loss of a single meal and a day of recreation, which arises to a level of constitutional significance, I am unable to conclude at this early procedural stage that plaintiff has not pleaded a colorable Equal Protection claim, particularly in view of statements allegedly attributed to corrections officer Wildermuth which, if true, could be viewed as reflecting race-based animus. *See Figueroa v. Kapelman,* 526 F.Supp. 681, 685 (S.D.N.Y.1981) (indicating that plaintiff's alleged equal protection violations stemming from, *inter alia,* his receipt

of cold meals failed to state a cause of action under the Equal Protection Clause); *but see Maldonado v. Pharo,* 940 F.Supp. 51, 56 (S.D.N.Y.1996) (noting that the use of racial slurs may provide "ample evidence" to survive a motion for summary judgment on an equal protection claim) (citing *Lorenzana v. Mette,* No. 94 C 6861, 1995 WL 461860, at \*5 (N.D.Ill. Aug. 2, 1995) (" '[W]hile derogatory references to racial or ethnic backgrounds by themselves obviously do not rise to the level of a deprivation of constitutional rights ... they do support a finding of racial animus ....' ") (quoting *Bell v. City of Milwaukee,* 746 F.2d 1205, 1259 (7th Cir.1984), *overruled on other grounds, Russ v. Watts,* 414 F.2d 783 (7th Cir.2005))). I therefore recommend against dismissal of plaintiff's Equal Protection claim.

### D. *Eighth Amendment*

In their motion, defendants next seek dismissal of plaintiff's third cause of action, which alleges that he was subjected to cruel and unusual punishment, in violation of the Eighth Amendment. In support of that request, defendants argue that the deprivations alleged were *de minimis,* and do not rise to a level sufficient to support an Eighth Amendment violation.

The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble,* 429 U.S. 97, 102, 104, 97 S.Ct. 285, 290, 291 (1976); *see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1076, 1084 (1986) (citing, *inter alia, Estelle* ). While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement; thus the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 1976 (1994) (citing *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, 2400 (1981)).

**\*8** A claim alleging that prison conditions violate the Eighth Amendment must satisfy both an objective and subjective requirement-the conditions must be "sufficiently serious" from an objective point of view, and the plaintiff must demonstrate that prison officials acted

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 268345 (N.D.N.Y.)

(Cite as: 2008 WL 268345 (N.D.N.Y.))

subjectively with "deliberate indifference." *See Leach v. Dufrain,* 103 F.Supp.2d 542, 546 (N.D.N.Y.2000) (Kahn, J.) (citing *Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321 (1991)); *Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M .J.); *see also, generally, Wilson,* 501 U.S. 294, 111 S.Ct. 2321. Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1978; *Leach,* 103 F.Supp.2d at 546 (citing *Farmer* ); *Waldo,* 1998 WL 713809, at *2 (same).

Plaintiff's cruel and unusual punishment claim is comprised of four distinct elements, alleging 1) a pattern of verbal harassment, including a racial slur, attributed primarily to defendants Wildermuth and Frazier; 2) the denial of one meal; 3) the deprivation of a single period of recreation; and 4) thirty days of keeplock confinement under otherwise normal conditions. It is well-established that the verbal harassment of a prison inmate by prison officials, without more, does not give rise to a cognizable Eighth Amendment claim. *See Moncrieffe v. Witbeck,* No. 97-CV-253, 2000 WL 949457, at *3 (N.D.N.Y. June 29, 2000) (Mordue, J .) (finding that allegations that corrections officer laughed at and insulted inmate not actionable under section 1983) (citation omitted); *Carpio v. Walker,* No. Civ.A.95CV1502, 1997 WL 642543, at *6 (N.D.N.Y. Oct. 15, 1997) (Pooler, J. & DiBianco, M.J.) ("Verbal harassment alone, unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem, does not rise to the level of an Eighth Amendment violation"). Turning to the plaintiff's assertion that he was denied one meal and participation in a single recreation period, these alleged actions, while not necessarily to be condoned, particularly if motivated based upon unlawful considerations, nonetheless are not sufficiently grievous to support an Eighth Amendment cruel and unusual punishment claim. Finally, the allegation that plaintiff was placed in keeplock confinement under otherwise normal conditions for thirty days similarly does not establish a claim of cruel and unusual punishment.[FN6] *See, e.g., Jackson v. Johnson,* 15 F.Supp.2d 341, 363 (S.D.N.Y.1998) ("The mere placement in keeplock for 99

days is not sufficiently egregious to constitute cruel and unusual punishment under the Eighth Amendment.").

> FN6. Indeed, keeplock confinement of such a relatively modest duration is generally not regarded as a liberty deprivation sufficient even to trigger the procedural due process requirements of the Fourteenth Amendment. *See Moore v. Senkowski,* No. 93-CV-1052, 1996 WL 191988, at *1-3 (N.D.N.Y. Apr. 15, 1996) (Pooler, J.) (citing *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293 (1995)).

Having carefully reviewed plaintiff's most recent complaint, filed after having been placed on notice of earlier deficiencies, I conclude that it fails to allege deprivations of a constitutional magnitude, and therefore recommend dismissal of plaintiff's Eighth Amendment cruel and unusual punishment claim.

*E. Retaliation*

**\*9** At the heart of plaintiff's complaint is his claim of unlawful retaliation. Defendants contend that plaintiff's retaliation claim is similarly deficient.

In order to state a *prima facie* claim under section 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations establishing that 1) the conduct at issue was protected; 2) the defendants took adverse action against the plaintiff; and 3) there was a causal connection between the protected activity and the adverse action-in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576 (1977); *Dillon v. Morano,* 497 F.3d 247, 251, (2d Cir.2007); *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir.2001), *overruled on other grounds, Phelps v. Kapnolas,* 308 F.3d 180 (2d Cir.2002). If the plaintiff carries this burden, the defendants must show by a preponderance of the evidence that they would have taken action against the plaintiff "even in the absence of the protected conduct." *Mount Healthy,* 429 U.S. at 287, 97 S.Ct. at 576. If taken for both proper and improper reasons, then, state action may be upheld if the action would have been taken based on the proper reasons alone.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 268345 (N.D.N.Y.)

(Cite as: 2008 WL 268345 (N.D.N.Y.))

*Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (citations omitted).

As one might gather, evaluation of claims of retaliation is a particularly fact-laden exercise, requiring careful analysis of the plaintiff's claims of protected conduct, the adverse action allegedly taken by the defendants, and the nexus between the two. When engaged in that exercise, a court must view claims of retaliation with "skepticism and particular care" in light of the ease with which claims of retaliation are incanted. *Dawes,* 239 F.3d at 491 (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983)).

Standing alone, the mere allegation that a false misbehavior report has been filed against an inmate does not implicate conduct of constitutional conduct. *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997); *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986), *cert. denied,* 485 U.S. 982, 108 S.Ct. 1273 (1988)). Plaintiff's further assertion in this case, to the effect that the false misbehavior reports issued to him on August 24 and 30, 2005 were prompted by retaliatory animus, based upon his having engaged in protected activity, however, suffices to state a cognizable claim for retaliation. *Franco v. Kelly,* 854 F.2d 584, 589 (2d Cir.1988).

Based upon my review of plaintiff's complaint for legal sufficiency, measured against this backdrop, I conclude that he has asserted a plausible claim of retaliation based upon the issuance of allegedly false misbehavior reports in retaliation for his filing of grievances, and thus recommend that he be afforded the opportunity to develop and offer evidence in support of that claim.

### F. Civil Rights of Institutionalized Persons Act

**\*10** Plaintiff's final claim purports to arise under the Civil Rights of Institutionalized Persons Act of 1980, Pub.L. 96-247, 94 Stat. 349 (1980), codified at 42 U.S.C. § 1997 et seq. ("CRIPA"). The CRIPA was enacted in 1980 to address

egregious or flagrant conditions which deprive ... [persons confined in qualifying institutions] of any rights, privileges, immunities secured or protected by

the Constitution or laws of the United States causing such persons to suffer grievous harm, and [which] is pursuant to a pattern or practice of resistence to the full enjoyment of such rights, privileges or immunities ...

42 U.S.C. § 1997a(a). In instances where the stringent requirements of the Act are satisfied, the CRIPA confers upon the Justice Department, which prior to its enactment lacked the power to sue on behalf of institutionalized persons, *see e.g., United States v. Mattson,* 600 F.2d 1295, 1297 (9th Cir.1979), the authority to commence suit in order to seek, as relief, that which has been described in the statute as "the minimum corrective measures necessary to insure [inmates] full enjoyment of such rights, privileges, or immunities ..." as are guaranteed under the Constitution and federal law. 42 U.S.C. § 1997a(a); *see Messier v. Southbury Training School,* 916 F.Supp. 133, 137 (D.Conn.1996). The determination of whether the specific prerequisites to suit under the CRIPA have been met rests solely within the province of the Attorney General. *Messier,* 916 F.Supp. at 137 n. 2.

The Act defines qualifying institutions falling within its purview to include "a jail, prison, or other correctional facility", 42 U.S.C. § 1997(1)(B)(ii). The Act's purview thus seemingly extends to the DOCS facility at Coxsackie. Defendant maintains that despite this fact, no private right of action exists under the CRIPA, and thus plaintiff's claim under that provision is subject to dismissal.

The determination of whether a private right of action should be inferred from a federal law entails examination of the legislative intent underlying the particular enactment. *Price v. Brittain,* 874 F.2d 252, 262 (5th Cir.1980); *see also Universities Research Ass'n, Inc. v. Coutu,* 450 U.S. 754, 770, 101 S.Ct. 1451, 1561 (1981). In its decision in *Cort v. Ash,* the United States Supreme Court set out guideposts to assist courts in determining whether a private right of action should be inferred from the legislative history supporting a particular statute. 422 U.S. 66, 78, 95 S.Ct. 2080, 2087-88 (1975). Under *Cort,* the four factors are identified as relevant to the inquiry, including whether 1) the plaintiff is a member of a class for whose special benefit the statute was enacted; 2) the legislative intent indicates, either explicitly or implicitly, either an intention to create a private remedy or,

Page 9

Not Reported in F.Supp.2d, 2008 WL 268345 (N.D.N.Y.)

(Cite as: 2008 WL 268345 (N.D.N.Y.))

conversely, to deny one; 3) whether the finding of a private right of action would be consistent with the underlying purposes of the legislative fiscal scheme; and 4) whether the cause of action is one historically relegated to state law, addressing an area principally of concern to the state, such that it would be an appropriate to infer a federal private right of action. *Id.* In subsequent cases, the Supreme Court has qualified the *Cort* test by indicating that these four factors do not necessarily carry equal weight, and the "dispositive" question is whether Congress intended to create a private right of action. *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 24, 100 S.Ct. 242, 249 (1979); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 377-78, 102 S.Ct. 1825, 1839 (1982) ("Our cases subsequent to *Cort v. Ash* have plainly stated that our focus must be on the intent of Congress.... The key to the inquiry is the intent of the Legislature." (internal quotation marks and footnote omitted)); *Touche Ross & Co. v. Redington,* 442 U.S. 569, 568, 99 S.Ct. 2479, 2485 (1979). " 'Indeed, the first three factors discussed in *Cort*-the language and focus of the statute, its legislative history, and its purpose-are ones traditionally relied upon in determining legislative intent.' " *Transamerica,* 444 U.S. at 24, 100 S.Ct. at 249 (quoting *Touche Ross & Co.,* 442 U.S. at 575-76, 99 S.Ct. at 2489) (internal citation omitted).

**\*11** Applying the relevant factors, I find no basis to conclude that a private right of action was intended by Congress when enacting the CRIPA. *Cf. Price,* 874 F.2d at 262-64 (finding no private right of action under 42 U.S.C. § 1997d, an anti-retaliation provision included as part of the Act); *Bieros v. Nicola,* 860 F.Supp. 226, 235 (E.D.Pa.1994) (same). By its express terms, the CRIPA authorizes the United States Attorney General, who must personally sign any complaint filed under the Act, to initiate action to seek appropriate redress for violations of the Act. 42 U.S.C. § 1997a(a). While under the Act intervention by the Attorney General in an action commenced "seeking relief from egregious or flagrant conditions which deprive persons residing in institutions of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States ...." is permitted, *see* 42 U.S.C. § 1997c, neither this language nor any other portion of the statute evinces an intent by Congress to provide a private right of action to

sue independently under the Act asserting constitutional deprivations which are fully redressable under 42 U.S .C. § 1983. Accordingly, applying the factors identified in *Cort* and its progeny, and particularly in view of the plain language of the statute itself, I recommend a finding that the CRIPA does not provide a private right of action for a prison inmate and, correspondingly, dismissal of plaintiff's fourth cause of action. *Johnson v. Fairman,* No. 95 C 5416, 1997 WL 137179, at \*5 (N.D.Ill. Mar. 24, 1997); *see also Cooper v. Sumner,* 672 F.Supp. 1361, 1367 (D.Nev.1987) (holding that 42 U.S.C. § 1997c, which authorizes the Attorney General to intervene in prisoner civil suits, does not confer a private right of action upon inmates).

IV. *SUMMARY AND RECOMMENDATION*

Despite having been afforded multiple opportunities to detail his claims with sufficient clarity in order to facially demonstrate the existence of one or more plausible constitutional claims, plaintiff has filed with the court a complaint which is exceedingly concise and bereft of specifics, and which reflects his inability to articulate facts which would sustain an Eighth Amendment cruel and unusual punishment claim. Plaintiff's complaint also asserts a cause of action under the CRIPA, an Act which affords no private right of action. Accordingly, I recommend that plaintiff's third and fourth causes of action be dismissed. In addition to those deficiencies, plaintiff's complaint fails to establish the requisite personal involvement of Coxsackie Superintendent Israel Rivera in the constitutional deprivations alleged. Consequently, that defendant is therefore entitled to dismissal of all claims against him.

Having found, however, that plaintiff has pleaded a colorable claim that through their actions defendants Costonas, Wildermuth and J. Frazier, denied him Equal Protection and engaged in unlawful retaliation against him, I recommend that their motion to dismiss those claims be denied. Accordingly, it is hereby

**\*12** RECOMMENDED that defendants' motion to dismiss plaintiff's complaint (Dkt. No. 25) be GRANTED, in part, and that all claims against defendant Israel, as well as plaintiff's third and fourth causes of action against all defendants, be DISMISSED, but that defendants' motion

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 268345 (N.D.N.Y.)

(Cite as: 2008 WL 268345 (N.D.N.Y.))

otherwise be DENIED and that he be permitted to pursue his Equal Protection and unlawful retaliation claims as against defendants Costonas, Wildermuth and Frazier.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

N.D.N.Y.,2008.

McDonald v. Rivera
Not Reported in F.Supp.2d, 2008 WL 268345 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.