IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
_____

JOHNATHAN JOHNSON,

                              Plaintiff,                Civil Action No.
                                                        9:14-CV-00916 (MAD/DEP)

        v.

BRIAN GAGNON, *et al.*,

                              Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

FOR PLAINTIFF:

JOHNATHAN JOHNSON, *Pro se*
89-A-1042
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

FOR DEFENDANTS:

HON. ERIC T. SCHNEIDERMAN               RYAN L. BELKA, ESQ.
New York State Attorney General         DAVID J. SLEIGHT, ESQ.
Main Place Tower                        Assistant Attorneys General
Buffalo, NY 14202

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

*Pro se* plaintiff Johnathan Johnson, a New York State prison inmate who is ineligible for *in forma pauperis* ("IFP") status in this court pursuant to the three strikes provision of 28 U.S.C. § 1915(g), commenced this action in state court asserting civil rights claims under 42 U.S.C. § 1983 against various employees of the New York State Department of Corrections and Community Supervision ("DOCCS").[1] Generally speaking, plaintiff's complaint alleges that the defendants tampered with his medically prescribed food, unlawfully searched his cell, destroyed legal papers, confiscated his prescription medications, assaulted him, and retaliated against him for having filed grievances concerning the conditions of his confinement.

Following the close of discovery, defendants filed a motion for summary judgment seeking dismissal of plaintiff's remaining claims. For the reasons set forth below, I recommend the motion be granted in part and denied in part.

---

[1]     On May 7, 2012, Senior District Judge Norman A. Mordue found that plaintiff had accumulated three strikes for purposes of 28 U.S.C. § 1915(g) prior to filing his complaint in the matter. *See Johnson v. Rock*, No. 12-CV-0019, <u>Dkt. No. 7 at 5-6</u> (N.D.N.Y. filed Jan. 5, 2012).

I.    BACKGROUND[2]

Plaintiff is a prison inmate currently being held in the custody of the DOCCS at the Upstate Correctional Facility ("Upstate"), located in Malone, New York. Dkt. No. 4 at 2. In his complaint, plaintiff alleges that between January and April of 2013, while he was confined at Upstate, defendants Daniel Dumas, a corrections officer, and Brian Gagnon, a corrections sergeant, retaliated against him for the filing of grievances against them by interfering with his doctor-ordered meals and conducting cell searches. *Id.* at 3. According to plaintiff's complaint, the conduct continued with an incident on April 27, 2013, when defendant Dumas removed plaintiff's meat serving from his dinner, an act allegedly condoned by defendant Gagnon. *Id.* The interference with plaintiff's meals continued on the following day when defendant Dumas, defendant Beane, also a corrections officer, and another unidentified prison guard again removed meat from plaintiff's lunch and dinner trays. *Id.* at 3-4. On April 29, 2013, plaintiff filed a grievance, identified as UST-51878-13,

---

[2]    In light of the procedural posture of the case, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in plaintiff's favor. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

complaining of the food tampering and other retaliatory conduct by defendants. *Id.* at 4.

On April 27, 2013, plaintiff's cell was searched by defendants Wendy Seymour and Francis Jarvis, both of whom are corrections officers. Dkt. No. 4 at 6. During the course of that search, the two officers confiscated plaintiff's prescription medication and disrupted his court documents by removing them from envelopes and tossing them "in water and all over the cell-floor." *Id.* While the search was being conducted, plaintiff was placed in restraints and allegedly assaulted by defendants Dumas, Gagnon, Richard Liebfred, another corrections officer, and John Tatro, a corrections lieutenant. *Id.* at 5. Following the incident, plaintiff was taken to Upstate's medical facility for evaluation, at which time it was determined that stitches were needed to close a wound to his face and that he had suffered a fractured jaw. *Id.* at 6.

Following the incidents in April 2013, prison guards continued to tamper with plaintiff's food. Dkt. No. 4 at 8. On May 2, 2013, defendants Dumas and Jarvis removed food from plaintiff's meal tray, and he was denied his lunch tray altogether by defendants Gagnon and Bishop. *Id.* at 8. Defendant Dumas again tampered with plaintiff's breakfast tray on May

8, 2013. *Id.* Defendant Gagnon was notified of this last incident but failed to take any action. *Id.*

II.  PROCEDURAL HISTORY

Plaintiff commenced this action in New York State Supreme Court, Franklin County, on October 18, 2013. Dkt. No. 1-1; Dkt. No. 4. Named as defendants in plaintiff's complaint are Corrections Sergeant Brian Gagnon; Corrections Officers Daniel Dumas, Brian Grant, Bryan Clark, Francis Jarvis, Wendy Seymour, Richard Liebfred, and Aaron Beane; Corrections Lieutenants John Tatro and Jerry Laramay; Corrections Captain Reginald Bishop; Deputy Superintendent Donald Uhler; Superintendent David Rock; and Joseph Bellnier, Gayle Haponik, Anthony Annucci, Maureen Boll, Carl Koenigsmann, and Jeff McKoy, all of whom are identified by plaintiff as "Deputy DOCCS Commissioners." Dkt. No. 4.

On July 24, 2013, defendants removed the action to this court, and shortly thereafter filed a partial motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 1, 2. Following my issuance of a report recommending that defendants' motion be granted, District Judge Mae A. D'Agostino adopted the recommendation and dismissed plaintiff's claims asserted against defendants Rock, Bishop, Uhler, Laramay, Bellnier, Haponik, Annucci, Boll, Koenigsmann, McKoy,

Clark, and Grant. Dkt. Nos. 12, 14. Liberally construing plaintiff's complaint, the following causes of action remain for consideration by the court: (1) deliberate medical indifference against defendants Dumas, Gagnon, Beane, Seymour, and Jarvis; (2) retaliation against defendants Dumas and Gagnon; (3) excessive force and state-law assault and battery against defendants Dumas, Gagnon, Tatro, and Liebfred; (4) conspiracy to commit excessive force and assault and battery against defendants Dumas, Gagnon, Tatro, and Liebfred; (5) unlawful cell search asserted against defendants Seymour and Jarvis; and (6) access to courts claim asserted against defendants Seymour and Jarvis.

Following the close of discovery, the remaining seven defendants filed the currently pending motion for summary judgment seeking dismissal of the remaining claims. Dkt. No. 34. Generally, defendants argue that the record evidence does not give rise to a genuine dispute of material fact with respect to any of plaintiff's causes of action. *See generally* Dkt. No. 34-1. Plaintiff has since responded in opposition to the motion. Dkt. No. 37. Defendants' motion has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

6

III.   <u>DISCUSSION</u>

A.   <u>Legal Standard Governing Motions for Summary Judgment</u>

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial

burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250. When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

### B. Deliberate Medical Indifference Claim Asserted Against Defendants Dumas, Gagnon, Beane, and Jarvis

Plaintiff's complaint alleges that defendants Dumas, Gagnon, Beane, and Jarvis tampered with plaintiff's medically prescribed food on April 27, 2013, April 28, 2013, May 2, 2013, and May 8, 2013, in violation of his Eighth Amendment rights. Dkt. No. 4 at 3-4, 8. Specifically, plaintiff contends that on April 27, 2013, defendant Dumas removed the meat serving from his dinner. *Id.* at 3. Plaintiff further alleges that defendant

Gagnon condoned this conduct. *Id.* On April 28, 2013 defendants Dumas and Beane allegedly removed the meat serving from plaintiff's lunch and dinner trays. *Id.* at 4. Plaintiff contends that he filed a grievance, identified in the complaint as UST-51878-13,[3] against unspecified "defendants" regarding the alleged food tampering. *Id.* On May 2, 2013, defendants Dumas and Jarvis allegedly "removed food items from plaintiff's doctors [sic] ordered dinner tray." *Id.* at 8. Plaintiff alleges that on the same date defendant Gagnon denied him his lunch altogether. *Id.* Finally, plaintiff alleges that defendant Dumas again tampered with his breakfast meal tray on May 8, 2013, and that this conduct was condoned by defendant Gagnon. *Id.* In plaintiff's memorandum of law, submitted in response to defendants' motion, plaintiff clarifies that the food tampering allegations contained in his complaint were intended to assert an Eighth Amendment medical indifference claim. *See, e.g.,* Dkt. No. 37-1 at 1 ("This is a § 1983, action . . . seeking damages relief based on the . . . interferring [sic] with his doctor-ordered meals"), 2-3 ("Johnson . . . alleges, the defendants subjected him to cruelty [sic] and unusual-punishment, deliberately indifference to his medical needs, and interference with a doctor's

---

3      It appears that plaintiff may be referring to grievance number UST-51817-13, which is included as an exhibit to his opposition to defendants' motion. Dkt. No. 37-2 at 18.

order[.]"), 13 ("In this case Johnson, verified complaint and inmate grievances, and exhibits supports deliberately indifference to his medical-diet needs.").

The Eighth Amendment prohibits punishment that is "incompatible with the evolving standards of decency that mark the progress of a maturing society[,] or which involve the unnecessary and wanton infliction of pain[.]" *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (quotation marks and citations omitted)). While the Eighth Amendment "does not mandate comfortable prisons, . . . neither does it permit inhumane ones[.]" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation marks and citation omitted). "These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration." *Estelle*, 429 U.S. at 103. Failure to provide inmates with medical care, "[i]n the worst cases, . . . may actually produce physical torture or lingering death, [and] . . . [i]n less serious cases, . . . may result in pain and suffering which no one suggests would serve any penological purpose." *Id.* (quotation marks and citations omitted).

A claim alleging that prison officials have violated an inmate's Eighth Amendment rights by inflicting cruel and unusual punishment must satisfy both objective and subjective requirements. *Wright v. Goord*, 554 F.3d

255, 268 (2d Cir. 2009); *Price v. Reilly*, 697 F. Supp. 2d 344, 356 (E.D.N.Y. 2010). To meet the objective requirement, the alleged deprivation must be "sufficiently serious." *Farmer*, 511 U.S. at 844; *see also Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) ("[T]he objective test asks whether the inadequacy in medical care is sufficiently serious."). Factors informing this inquiry include "whether a reasonable doctor or patient would find it important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain." *Salahuddin*, 467 F.3d at 280 (quotation marks and alterations omitted). Determining whether a deprivation is sufficiently serious requires a court to examine the seriousness of the deprivation, and whether the deprivation represents "a condition of urgency, one that may produce death, degeneration, or extreme pain[.]" *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quotation marks omitted). Importantly, it is "the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes." *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003).

To satisfy the subjective requirement, a plaintiff must demonstrate that the defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.'" *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999). "In medical-treatment cases . . ., the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Salahuddin*, 467 F.3d at 280. "Deliberate indifference," in a constitutional sense, "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Id.*; *see also Farmer*, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin*, 467 F.3d at 280 (citing *Farmer*, 511 U.S. at 839-40).

In this case, there is no record evidence that would support a factfinder's conclusion that the alleged deprivation was sufficiently serious to establish an Eighth Amendment violation, or that the defendants acted with the requisite deliberate indifference. With respect to the objective element, plaintiff contends that the meat portions were removed from his

dinner by defendant Dumas on April 27, 2013, and again on April 28, 2013, during lunch and dinner by defendants Dumas and Beane. Dkt. No. 4 at 3, 4. In addition, plaintiff vaguely contends that defendants Dumas and Jarvis "removed food items from plaintiff's doctors [sic] ordered dinner tray" on May 2, 2013. *Id.* at 8. Plaintiff also alleges that on the same date, defendant Gagnon denied him dinner altogether. *Id.* Six days later, according to the plaintiff, defendant Dumas "once again . . . tampered with plaintiff [sic] breakfast tray," and defendant Gagnon again condoned the conduct. *Id.*

The record reflects that plaintiff has several food allergies, for which he receives what is referred to as a "control A diet." Dkt. No. 37-2 at 3. Even assuming plaintiff's allegations are true, removing the meat portions of three meals and denying him one meal all over the course of twelve days is not sufficiently serious for a deliberate medical indifference claim. Indeed, it does not logically follow that removing a food item from a meal designed to avoid food allergies would create a serious risk to an inmate's health and safety. As for the allegation that defendant Gagnon denied plaintiff dinner on May 2, 2013, no reasonable factfinder would conclude that, even if true, the deprivation affected plaintiff's daily activities or caused him substantial or chronic pain. In addition, plaintiff's vague and

nondescript accusations that defendant Dumas and Jarvis "removed food items" from his meal on May 2, 2013, and defendant Jarvis "tampered with plaintiff['s] breakfast" on May 8, 2013, similarly do not create a condition of urgency for purposes of a medical indifference claim.

In any event, there is undisputed record evidence that defendants Dumas, Gagnon, Jarvis, and Beane were not knowledgeable regarding plaintiff's medical needs or how (and if) plaintiff's meals related to his medical needs. *See, e.g.,* Dkt. No. 34-4 at 2; Dkt. No. 34-5 at 2; Dkt. No. 34-6 at 2; Dkt. No. 34-7 at 2; Dkt. No. 34-8 at 2. Although plaintiff filed grievances complaining of food tampering by certain individuals, there is no indication that defendants Dumas, Gagnon, Jarvis, or Beane became aware through those grievances that plaintiff's meals were medically prescribed. *See, e.g.,* Dkt. No. 37-2 at 2, 18-22; Dkt. No. 37-3 at 2, 52-6, 75-85. Accordingly, there is no evidence to show that, even assuming each of the defendants tampered with plaintiff's food as he alleges, they did so with deliberate indifference to plaintiff's health and safety. Because there is no record evidence from which a reasonable factfinder could conclude either that plaintiff suffered a sufficiently serious deprivation to his medical needs or that defendants Dumas, Gagnon, Jarvis, or Beane tampered with plaintiff's meals with the requisite deliberate indifference, I

recommend that plaintiff's Eighth Amendment deliberate medical indifference claim against those individuals be dismissed.

### C. Retaliation Asserted Against Defendants Dumas and Gagnon

Liberally construed, plaintiff's complaint asserts a First Amendment retaliation claim against defendants Dumas and Gagnon. Dkt. No. 4 at 3-4. Specifically, plaintiff contends that these individuals "continuously retaliated against plaintiff for the filing of inmate grievance complaints, by interferring [sic] with plaintiff's doctors [sic] order diet meals." *Id.* at 3. In addition, plaintiff contends that defendants Dumas and Gagnon "subjected plaintiff's [sic] to retaliatory cell searches." *Id.*

Prison officials unlawfully retaliate against an inmate when they take adverse action, motivated by the inmate's exercise of a constitutional right, including the free speech provisions of the First Amendment, giving rise to a cognizable cause of action under 42 U.S.C. § 1983. *See Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000) ("In general, a section 1983 claim will lie where the government takes negative action against an individual because of his exercise of rights guaranteed by the Constitution or federal laws."). As the Second Circuit has repeatedly cautioned, however, because such claims are easily incanted and inmates often attribute adverse action to retaliatory animus, courts must approach such

claims "with skepticism and particular care." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *accord, Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003).

To succeed on a section 1983, claim alleging for retaliatory conduct, a plaintiff must establish that (1) he engaged in protected conduct; (2) the defendants took adverse action against him; and (3) there was a causal connection between the protected activity and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007); *Garrett v. Reynolds*, No. 99-CV-2065, 2003 WL 22299359, at *4 (N.D.N.Y. Oct. 3, 2003) (Sharpe, M.J.).[4]

In this case, plaintiff argues that the alleged adverse action taken against him by defendants Dumas and Gagnon was in retaliation for his filing grievances against them. It is well settled that filing grievances through a prison grievance system is protected conduct. *See, e.g., Gill v.*

---

[4]     Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

*Pidlypchak*, 389 F.3d 379, 383 (2d Cir. 2004). Thus, there is no dispute that plaintiff has satisfied the first element of a retaliation claim. The discussion below considers the remaining two elements.

### 1.   Food Tampering

The record evidence reflects that plaintiff filed numerous grievances in and after December 2012, while confined at Upstate. Dkt. No. 37-2 at 2, 18; Dkt. No. 37-3 at 52-55, 77-85. Of those grievances that are before the court, there is evidence to support a conclusion that defendants Dumas and Gagnon became aware of only one of them. Dkt. No. 37-3 at 76, 79. That grievance, identified as UST-51878-13, is dated May 2, 2013, and alleges that defendant Dumas removed items of food from plaintiff's dinner tray, and that defendant Gagnon condoned defendant Dumas' conduct. *Id.* at 79. According to the superintendent of the facility who reviewed plaintiff's grievance, the "staff members identified by" plaintiff in the grievance were all interviewed.[5] *Id.* at 76. Assuming defendants Dumas and Gagnon did, in fact, learn of this grievance, the meal with which

---

[5]   The record contains three additional grievances filed by plaintiff complaining that defendant Dumas and/or defendant Gagnon were involved in denying him portions or full meals on or about April 20, 2013, April 21, 2013, April 29, 2013, and May 8, 2013. Dkt. No. 37-3 at 2, 81, 84. There is no evidence in the record, however, that defendants Dumas or Gagnon became aware of these grievances. Accordingly, even assuming that they did deny plaintiff portions or full meals on those dates, there is no evidence from which a reasonable factfinder could conclude that there exists a causal connection between the grievances and defendants' subsequent conduct.

defendants tampered in retaliation for filing that grievance was plaintiff's breakfast on May 8, 2013. An isolated incident involving the tampering with one meal does not constitute adverse action. *See Fann v. Arnold*, No. 14-CV-6187, 2016 WL 2858927, at *1 (W.D.N.Y. May 16, 2016) ("[T]he alleged deprivation of one meal was insufficient to constitute adverse action to satisfy the second element of the [retaliation] claim.").

> 2.    Cell Search

There is no evidence in the record that gives rise to a genuine dispute of material fact with respect to whether defendants Dumas and Gagnon undertook cell searches in retaliation for plaintiff filing grievances against them. Indeed, the only evidence in the record that supports plaintiff's allegation is in his complaint, where he contends that those "two defendants . . . subjected [him] to retaliatory cell searches." Dkt. No. 4 at 3. In his memorandum of law submitted in opposition to defendants' pending motion, plaintiff merely states that, "[i]n this case, Johnson brings the claim of unreasonable cell-searches[.]" Dkt. No. 37-1 at 14. In the absence of any additional evidence to support plaintiff's claim, including, for instance, a date on which the alleged searches occurred, no

reasonable factfinder could conclude that plaintiff was retaliated against.[6]

Accordingly, I recommend that his retaliation claim asserted against

defendants Dumas and Gagnon be dismissed.

### D. Excessive Force and Assault and Battery Claims Asserted Against Defendants Dumas, Liebfred, Gagnon, and Tatro

Plaintiff's complaint asserts an Eighth Amendment excessive force

and New York State assault and battery claims against defendants

Dumas, Liebfred, Gagnon, and Tatro based on the use-of-force incident

on April 27, 2013.[7] Dkt. No. 4 at 4-5.

A plaintiff's Eighth Amendment right against cruel and unusual

punishment is violated by an "unnecessary and wanton infliction of pain."

*Whitley v. Albers,* 475 U.S. 312, 319 (quotation marks omitted); *Griffin v.*

---

[6]     In light of the absence of any evidence supporting plaintiff's retaliation claim regarding cell searches, it is unnecessary to address defendants' argument that "[i]t is well-settled that plaintiff cannot base a retaliation claim against defendants on a cell search." Dkt. No. 34-1 at 15 (quotation marks and alterations omitted). While district courts in this circuit have determined that inmates do not have a constitutional right to be free from cell searches, even those that are retaliatory in nature, *see, e.g., Bumpus v. Canfield*, 495 F. Supp. 2d 316, 327 (W.D.N.Y. 2007), those courts rely on the Supreme Court's decision in *Hudson v. Palmer*, 468 U.S. 517, 530 (1984). In *Hudson*, however, the Court merely held that inmates do not "have a reasonable expectation of privacy enabling [them] to invoke the protections of the Fourth Amendment" and left open the possibility that prisoners may invoke other constitutional protections "for calculated harassment unrelated to prison needs." *Hudson*, 468 U.S. at 530.

[7]     Plaintiff specifically asserts New York State common law assault and battery claims in his complaint. *See, e.g.,* Dkt. No. 4 at 4; *see also* Dkt. No. 37-1 at 1. "[E]xcept for § 1983's requirement that the tort be committed under color of state law, the essential elements of [excessive force and state law assault and battery claims are] substantially identical." *Posr v. Doherty*, 944 F.2d 91, 94-95 (2d Cir. 1991); *accord, Humphrey v. Landers*, 344 F. App'x 686, 688 (2d Cir. 2009). Accordingly, I have analyzed plaintiff's claims under the legal standard governing an excessive force claim.

*Crippen,* 193 F.3d 89, 91 (2d Cir. 1999). As was noted above in connection with plaintiff's deliberate medical indifference claim, "[a] claim of cruel and unusual punishment in violation of the Eighth Amendment has two components – one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (citing *Hudson,* 503 U.S. at 7-8; *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999)). To satisfy the subjective requirement in an excessive force case, the plaintiff must demonstrate that "the defendant had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances surrounding the challenged conduct." *Wright*, 554 F.3d at 268 (quotation marks omitted). This inquiry turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian,* 503 U.S. 1, 6 (1992) (quotation marks omitted); *accord*, *Blyden*, 186 F.3d at 262. The Supreme Court has emphasized that the nature of the force applied is the "core judicial inquiry" in excessive force cases – not "whether a certain quantum of injury was sustained." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam). Accordingly, when considering the subjective element of the governing Eighth Amendment

test, a court must be mindful that the absence of serious injury, though relevant, does not necessarily negate a finding of wantonness. *Wilkins*, 559 U.S. at 37; *Hudson*, 503 U.S. at 9.

"The objective component [of the excessive force analysis] . . . focuses on the harm done, in light of 'contemporary standards of decency.'" *Wright*, 554 F.3d at 268 (quoting *Hudson*, 503 U.S. at 8); *see also Blyden*, 186 F.3d at 263 (finding the objective component "context specific, turning upon 'contemporary standards of decency'"). In assessing this component, a court must ask whether the alleged wrongdoing is objectively harmful enough to establish a constitutional violation. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *accord Hudson*, 503 U.S. at 8; *see also Wright*, 554 F.3d at 268. "But when prison officials use force to cause harm maliciously and sadistically, 'contemporary standards of decency always are violated. This is true whether or not significant injury is evident.'" *Wright*, 554 F.3d at 268-69 (quoting *Hudson*, 503 U.S. at 9) (alterations omitted)). The extent of an inmate's injury is but one of the factors to be considered in determining whether a prison official's use of force was "unnecessary and wanton" because "injury and force . . . are imperfectly correlated[.]" *Wilkins*, 559 U.S. at 38.  In addition, courts consider the need for force, whether the force was proportionate to the

need, the threat reasonably perceived by the officials, and what, if anything, the officials did to limit their use of force. *Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 321; *Romano*, 998 F.2d at 105. Additionally, courts must bear in mind that "[n]ot every push or shove, even if it later may seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) (quotation marks omitted); *see also Griffin*, 193 F.3d at 91. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (quotation marks omitted).

In this case, defendants concede, for purposes of their motion, that plaintiff suffered a significant injury. [Dkt. No. 34-1 at 8](). They contend, however, that no reasonable factfinder could conclude that the force used against plaintiff on April 27, 2013, was anything other than reasonable. *See, e.g., id.* Relying on the video recording of the incident, Dkt. No. 36, [8] and declarations submitted by the individuals involved in the incident, Dkt. Nos. 34-5, 34-6, 34-8, defendants specifically claim that plaintiff had

---

[8]     The video recording was submitted to the court by traditional means and is therefore not accessible electronically.

disobeyed a series of orders in the hour prior to the use of force, and, upon opening plaintiff's cell door, plaintiff pulled defendant Dumas into the cell and then assaulted defendants Dumas and Liebfred before they applied force to subdue him. *Id.* at 9-10. Plaintiff, on the other hand, has submitted evidence suggesting that defendants Dumas, Liebfred, Gagnon, and Tatro conspired to intentionally assault him during the cell search on April 27, 2013, and claims he did not pull defendant Dumas into the cell, and that defendant Dumas, instead, pushed him into the cell. Dkt. No. 4 at 5. According to plaintiff, after defendant Dumas pushed plaintiff, plaintiff pushed him back, which triggered defendant Liebfred to enter plaintiff's cell and defendants Dumas and Liebfred together "slammed [plaintiff's face] against the cell wall-metal plate and kick[ed] within his facial area while handcuffed from the back with a detention strap." *Id.* Although defendants Gagnon and Tatro were standing outside plaintiff's cell during this time, they did nothing to stop the alleged assault on plaintiff. *Id.*

Having reviewed the record in this case, including the video recording of the incident, I find that the evidence is equivocal and is susceptible to more than one reasonable interpretation regarding whether defendant Dumas was pulled into plaintiff's cell or instead he pushed plaintiff into his cell, and what precisely occurred inside plaintiff's cell after

defendant Dumas and Liebfred entered. In the event plaintiff's version of the event is credited by a factfinder – specifically the part of his retelling that insists defendant Dumas was the aggressor – the factfinder could conclude that the use of force was unreasonable and not intended to restore order. Moreover, because the video recording does not show the use of force while defendants Dumas and Liebfred were inside plaintiff's cell, and plaintiff describes a brutal assault that included slamming his face into a metal plate, even assuming plaintiff was the initial aggressor, a reasonable factfinder could conclude that such use of force was unreasonable and maliciously and sadistically applied. On a motion for summary judgment, where the record evidence could reasonably permit a rational factfinder to find that corrections officers used force maliciously and sadistically, dismissal of an excessive force claim is inappropriate. *See Wright*, 554 F.3d at 269 (reversing summary dismissal the plaintiff's complaint, though suggesting that the evidence of an Eighth Amendment violation was "thin" as to his claim that a corrections officer struck him in the head, neck, shoulder, wrist, abdomen, and groin, where the "medical records after the . . . incident with [that officer] indicated only a slight injury") (citing *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003)).

With respect to defendants Gagnon and Tatro, the video recording clearly depicts them standing in the doorway of plaintiff's open cell while defendants Dumas and Liebfred were inside during the physical altercation. Dkt. No. 36. Again, although it is not clear what actually occurred inside the cell, defendants Dumas and Liebfred were inside for approximately ninety seconds before they emerged with plaintiff in restraints. Prison officials have a duty to intervene and prevent a cruel and unusual punishment, prohibited by the Eighth Amendment, from occurring or continuing. *Farmer*, 511 U.S. at 836; *Hayes v. N.Y. City Dep't of Corrs*, 84 F.3d 614, 620 (2d Cir. 1996); *see also Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) ("[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.") A plaintiff asserting a failure to protect claim must prove that the defendant actually knew of and disregarded an excessive risk of harm to his health and safety. *Hayes*, 84 F.3d at 620. This "reckless disregard" to a plaintiff's health and safety can be proven by evidence establishing "a pervasive risk of harm to inmates . . . and a failure by prison officials to reasonably respond to that risk." *Knowles v. N.Y. City Dep't of Corrs.*, 904 F. Supp. 217, 222 (S.D.N.Y. 1995) (quotation marks omitted).

Resolving all ambiguities in the record in favor of plaintiff, I find that reasonable factfinders could conclude that defendants Dumas and Liebfred used force maliciously and sadistically against plaintiff, and that defendants Gagnon and Tatro failed to intervene to protect him. Indeed, resolving the discrepancies between the parties' version of the events at this juncture would require the court to render credibility determinations that are not appropriate on summary judgment. In sum, I recommend the court deny defendants' motion as it relates to plaintiff's excessive force and assault and battery claims asserted against defendants Dumas, Liebfred, Gagnon, and Tatro.[9]

E.    Unlawful Cell Search, Deliberate Medical Indifference, and Access to Court Claims Asserted Against Defendants Seymour and Jarvis

Plaintiff contends that defendants Seymour and Jarvis unlawfully searched his cell on April 27, 2013, confiscated a prescription medication, and tossed his legal papers "in water and all over the cell-floor." Dkt. No. 4 at 6.

---

[9]    Plaintiff also asserts an accompanying conspiracy claim to his excessive force and assault and battery causes of action. *See, e.g.,* Dkt. No. 4 at 4; Dkt. No. 37-1 at 8. Because defendants have not moved to dismiss this claim, I have not analyzed the merits of it in this report. In light of my recommended finding that genuine disputes of material fact that exist in the record precluding dismissal at this time, however, I recommend defendants be provided an opportunity to submit a second summary judgment motion with respect to this claim.

To the extent plaintiff attempts to assert a Fourth Amendment claim based on the fact that defendants Seymour and Jarvis searched his cell for no reason, it is well established that prison inmates do not have an expectation of privacy in their cells. *Hudson*, 468 U.S. at 526; *accord, Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016). In addition, in the event plaintiff intended to assert an Eighth Amendment claim, a single, unannounced cell search does not constitute cruel and unusual punishment. *Compare Scher v. Engelke*, 943 F.2d 921, 924 (8th Cir. 1991) (finding that the plaintiff stated a plausible Eighth Amendment claim where the defendant subjected the plaintiff to "numerous cell searches" without any suspicion that the plaintiff possessed contraband"); *see also Lashley v. Wakefield*, 367 F. Supp. 2d 461, 470 (W.D.N.Y. 2005) (dismissing the plaintiff's Eighth Amendment claim arising from allegations that the defendants searched his cell at least eleven times during a seven-month period for the sole purpose of harassing him).  Accordingly, I recommend that claim be dismissed as against defendants Seymour and Jarvis.

With respect to plaintiff's allegation that those defendants confiscated his prescription medication, I have liberally construed this allegation to assert an Eighth Amendment deliberate medical indifference claim. As was noted above in part III.B. of this report, a medical

indifference cause of action requires a plaintiff to establish that he suffered a sufficiently serious deprivation to his medical needs, and that the defendants deprived him of adequate medical care with deliberate indifference. *Wright*, 554 F.2d at 268. In this case, there is no evidence that supports either element of the claim. The record is devoid of evidence regarding the type of medicine that was confiscated or for what medical condition plaintiff was being treated. In addition, plaintiff does not allege that he suffered any medical harm as a result of the confiscation. Finally, even assuming defendants Seymour and Jarvis did, in fact, confiscate plaintiff's prescription medication during their cell search, there is no evidence, including in plaintiff's complaint, that those individuals did so with deliberate indifference to any serious medical condition from which plaintiff may have suffered. Indeed, plaintiff's complaint merely alleges that defendants Seymour and Jarvis "searched the plaintiff's cell" and that they "intentionally" confiscated them during the search. Dkt. No. 4 at 6. Without any additional evidence, no reasonable factfinder could conclude that defendants Seymour and Jarvis were deliberately indifferent to plaintiff's serious medical needs. Accordingly, I recommend this claim be dismissed.

Finally, plaintiff alleges that defendants Seymour and Jarvis violated his First Amendment right to access the courts by tossing "thousands" of

court documents "in water and all over the cell-floor." [Dkt. No. 4 at 6](). As a result, plaintiff contends that he was unable to "timely file appeals" in the New York State Appellate Division for the Second and Third Departments. *Id.* at 3. Because defendants did not seek dismissal of this claim in their motion for summary judgment, I decline to issue a recommendation regarding whether it should be dismissed. I do, however, recommend that defendants be provided an opportunity to file a second motion for summary judgment with respect to this claim.

IV.    SUMMARY AND RECOMMENDATION

Many of the remaining claims asserted by plaintiff in his complaint are subject to dismissal at this time in light of the absence of any record evidence from which a reasonable factfinder could conclude in plaintiff's favor. With respect to plaintiff's excessive force and assault and battery claims, however, the parties' evidence reflects the existence of disputed material facts that cannot be resolved on summary judgment. Additionally, because defendants have not moved to dismiss either the conspiracy claim asserted against defendants Dumas, Liebfred, Gagnon, and Tatro or the access to court claim asserted against defendants Seymour and Jarvis, defendants should be permitted an opportunity to file a second

motion for summary judgment addressing those causes of action. Accordingly, it is hereby respectfully

RECOMMENDED that defendants' motion for summary judgment, Dkt. No. 34, be GRANTED in part and DENIED in part as follows:

(1)   Plaintiff's deliberate medical indifference claim asserted against defendants Dumas, Gagnon, Beane, Seymour, and Jarvis should be dismissed;

(2)   Plaintiff's retaliation claim asserted against defendants Dumas and Gagnon should be dismissed;

(3)   Plaintiff's excessive force and assault and battery claims asserted against defendants Dumas, Liebfred, Gagnon, and Tatro should survive for trial; and

(4)   Plaintiff's unlawful cell search claim asserted against defendants Seymour and Jarvis should be dismissed; and it is further

RECOMMENDED that plaintiff's (1) conspiracy to use excessive force and commit assault and battery claims asserted against defendants Dumas, Liebfred, Gagnon, and Tatro; and (2) access to court claim asserted against defendants Seymour and Jarvis survive defendants' instant motion but that they be provided an opportunity to submit a second motion for summary judgment with respect to those claims.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:      August 29, 2016
            Syracuse, New York

David E. Peebles
U.S. Magistrate Judge

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))



Only the Westlaw citation is currently available.

United States District Court,

N.D. New York.
Troy GARRETT, Plaintiff,
v.
Edward REYNOLDS, Superintendent, Mohawk Corr.
Facility; James A. Mance, Deputy Superintendent of
Programs; John O'Reilly,[FN1] Deputy Superintendent; J.
Burge, First Deputy; M. Maher, DSS; R. Centore,
Correctional Officer, Defendants.

> FN1. In this case, the defendants maintain and
> the docket confirms that defendant John O'Reilly
> has never been served. Service must be made
> upon a defendant within 120 days of filing the
> complaint or any claims against that defendant
> will be dismissed. See Fed.R.Civ.P. 4(m). The
> original complaint, which named O'Reilly, was
> filed on November 26, 1999, and the amended
> complaint was filed on July 13, 2001. However,
> O'Reilly was never served. Since this defendant
> has never been served, this court lacks
> jurisdiction over him, and this court recommends
> the dismissal of this defendant.

No. Civ.9:99CV2065NAMGLS.

Oct. 7, 2003.

Troy Garrett, Peekskill, NY, Plaintiff, pro se.

Hon. Eliot Spitzer, Attorney General State of New York,
Syracuse, NY, for the Defendants.

Maria Moran, Asst. Attorney General, of counsel.

REPORT-RECOMMENDATION

SHARPE, Magistrate J.

I. *Introduction* [FN2]

> FN2. This matter was referred to the undersigned
> for a Report-Recommendation by the Hon.

Norman A. Mordue, United States District
Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and
Local Rule 72.3(c).

**\*1** Plaintiff, *pro se* Troy Garrett filed an action under
42 U.S.C. § 1983 claiming that the defendants violated his
civil rights when they retaliated against him for his
activities as an IGRC representative by subjecting him to
verbal harassment, physical abuse and subsequently, a
transfer. Garrett also claims that the supervisory
defendants failed to properly investigate his complaints
and failed to train/supervise their employees. This court
recommends denying the motion for summary judgment in
part and granting it in part.

II. *Procedural History*

On July 13, 2001, Garrett filed an amended complaint
against the defendants claiming that they violated his civil
rights under the First, Sixth Eighth, and Fourteenth
Amendments.[FN3] On September 28, 2001, the defendants
filed a motion for summary judgment. On January 18,
2002, this court issued an order informing Garrett of his
obligation to file a response and extended his time to
respond for thirty days. On April 24, 2002, this court
granted an additional sixty days to respond to the
defendants' motion. Despite having been given multiple
opportunities to respond, Garrett has failed to file a
response.

> FN3. Although Garrett claims to be raising
> violations under the Sixth, Eighth, and
> Fourteenth Amendments, the only viable claim
> based on this court's interpretation of the
> complaint is under the First Amendment for
> retaliation.

III. *Facts* [FN4]

> FN4. The facts are taken from the defendants'
> statement of undisputed material facts since
> Garrett failed to file a response.

On June 17, 1999, Garrett filed a grievance against

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

Officer Kelley for verbal harassment.[FN5] This grievance was denied by the Central Office Review Committee (CORC) on July 21, 1999. On March 19, 2000, Garrett filed a grievance claiming that defendant Burge used intimidation tactics. Defendant Reynolds investigated the grievance and it was denied based on a finding that no harassment occurred. Garrett appealed to the CORC and they denied the grievance on April 5, 2000. On April 10, 2000, defendant Centore wrote a misbehavior report against Garrett for creating a disturbance and employee harassment. On April 12, 2000, Lieutenant Manell presided over Garrett's Tier 2 disciplinary hearing and he was found guilty of both charges. He was given a 21 day recreation penalty, and loss of packages and commissary. However, his recreation penalty was suspended and deferred. Garrett appealed the determination and it was affirmed on April 19, 2000.

FN5. Not a party in this suit.

On April 17, 2000, Garrett filed a grievance against Centore for harassment. Burge denied his grievance on May 4, 2000, and subsequently, the CORC denied it. On May 12, 2000, Garrett sent a letter to Burge concerning further harassment by Centore. On May 16, 2000, Garrett filed another grievance against Centore for harassment. His grievance was denied on May 26, 2000. After Garrett appealed, his grievance was again denied by the CORC. On June 22, 2000, the Superintendent's Office received a letter from Garrett alleging that Centore threw a piece of paper with a picture of a plunger and the words "always gets the job done" into his cell. He wrote a grievance against Centore for harassment due to the paper that he threw into his cell. Burge forwarded the grievance to the CORC on August 10, 2000. The CORC accepted the grievance on August 30, 2000, in order to investigate.

**\*2** On June 23, 2000, the Inspector General's Office interviewed Garrett at the Mohawk Correctional Facility regarding his complaints of Centore. That same day, Captain Naughton filed an administrative segregation recommendation. On June 29, 2000, an administrative segregation hearing was held. On July 14, 2000, Garrett was transferred [FN6] to the Mid-State Correctional Facility.

FN6. The defendants suggest that Garrett has

failed to exhaust his administrative remedies concerning his transfer. They claim that he agreed to the transfer and participated in the administrative hearing which resulted in his transfer. The issue of transfer will not be addressed in this Report-Recommendation because the court has insufficient information to determine whether he exhausted his remedies.

Finally, Garrett filed a claim alleging that his property was lost or damaged on October 8, 1999. However, he was paid $75.00 for this claim and he signed a release on December 13, 1999.

IV. *Discussion*

A. *Legal Standard*

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *accord F.D.I.C. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994). The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir.1999). "When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of the ... pleading, but the adverse party's response, by affidavits or as otherwise provided in [Federal Rule of Civil Procedure 56(e) ], must set forth specific facts showing that there is a genuine issue for trial." *St. Pierre v. Dyer,* 208 F.3d 394, 404 (2d Cir.2000). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Rexford Holdings, Inc. v. Biderman,* 21 F.3d 522, 525 (2d Cir.1994)(alternation in original) (citation omitted). However, it is well settled that on a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party. *Tenenbaum v. Williams,* 193 F.3d 581, 593 (2d Cir.1999).

Furthermore, in a *pro se* case, the court must view the submissions by a more lenient standard than that accorded

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

to "formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U .S. 519, 520 (1972); *see Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)(a court is to read a *pro se* party's "supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest"). Indeed, the Second Circuit has stated that "[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983). Any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the non-moving party. *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990); *see LaFond v. General Physics Serv. Corp.,* 50 F.3d 165, 171 (2d Cir.1995).

**\*3** This liberal standard, however, does not excuse a *pro se* litigant from following the procedural formalities of summary judgment. *Showers v. Eastmond,* 00 CIV. 3725, 2001 WL 527484, at \*2 (S.D.N.Y. May 16, 2001). More specifically, Local Rule 7.1(a)(3) of this court specifically provides that "any facts set forth in the [moving party's] Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party." Local Rule 7.1(a)(3) further requires that the "non-movant shall file a Statement of Material Fact which mirrors the movant's statement in matching numbered paragraphs and which set forth a specific reference to the record where the material fact is alleged to arise." The courts of the Northern District have adhered to a strict application of Local Rule 7.1(a)(3)'s requirement on summary judgment motions. *Giguere v. Racicot,* 00-CV-1178, 2002 WL 368534, at \*2 (N.D.N.Y. March 1, 2002)(interalia citing *Bundy Am. Corp. v. K-Z Rental Leasing, Inc.,* 00-CV-260, 2001 WL 237218, at \*1 (N.D.N.Y. March 9, 2001)).

Furthermore, this Circuit adheres to the view that nothing in Rule 56 imposes an obligation on the court to conduct a search and independent review of the record to find proof of a factual dispute. *Amnesty America v. Town of West Hartford,* 288 F.3d 467, 470 (2d Cir.2002). As long as the local rules impose a requirement that parties provide specific record citations in support of their statement of material facts, the court may grant summary judgment on that basis. *Id.* at 470-71.

In this case, Garrett did not file a response to the motion for summary judgment. Consequently, this court will accept the properly supported facts contained in the defendants' 7.1 Statement (*Dkt. No. 49* ) as true for purposes of this motion.[FN7] With this standard in mind, the court now turns to the sufficiency of Garrett's claims.

> FN7. The court notes that this does not apply to the various conclusions of law contained in the defendants' 7.1 Statement.

B. *Eleventh Amendment*

In Garrett's complaint, he raises claims against the defendants in their official and individual capacities. The Eleventh Amendment provides that: "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. Although the Amendment does not specifically prohibit suits against a state by its own citizens, the Supreme Court has consistently applied that immunity to such cases. *See Burnette v. Carothers,* 192 F.3d 52, 57 (2d Cir.1999)(citing *Edelman v. Jordan,* 415 U.S. 651, 662-63 (1974)). Moreover, it is well established that Eleventh Amendment immunity applies not only when a state is a named defendant, but when liability must be paid from state coffers. *See New York City Health & Hosp. Corp. v. Perales,* 50 F.3d 129, 134 (2d Cir.1995)(citing *Edelman,* 415 U .S. at 665); *Dawkins v. State of New York,* 93-CV-1298, 1996 WL 156764, at \*2 (N.D.N.Y. Mar. 28, 1996).

**\*4** In this case, Garrett raises claims against the defendants in their official and individual capacities. Since the Eleventh Amendment bars official capacity claims against these state officers, this court recommends dismissal of Garrett's claims against the defendants in their official capacity.

C. *Retaliation*

In this case, Garrett claims that during the course of his appointment as an IGRC representative, he has been subjected to repeated acts of harassment, both verbal and

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

physical, threatened with physical assaults, placed into disciplinary confinement in the SHU, and transferred.[FN8] The Second Circuit has held that retaliation against a prisoner for pursuing a grievance is actionable under § 1983. *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996). Moreover, the Second Circuit has recognized both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated. Thus, prisoners' claims of retaliation are examined with skepticism and particular care. *See Flaherty v. Coughlin,* 713 F.2d 10 (2d Cir.1983).

> FN8. This case turns on the interpretation of the complaint. Garret's complaint is not a model of clarity and as noted, he has failed to file a response to the motion for summary judgment. Nonetheless, a careful reading of Garrett's opening paragraph under the title "Facts" compels this court to interpret this complaint as one claiming retaliation for his activities and status as an IGRC representative.

In order for a plaintiff to prevail on a First Amendment retaliation claim, a plaintiff must advance non-conclusory allegations establishing: (1) that the speech or conduct at issue was protected; (2) that the defendant took adverse action against the plaintiff; and, (3) that there was a causal connection between the protected speech and the adverse action. *See Dawes v. Walker,*[FN9] 239 F.3d 489, 492 (2d Cir.2001) (citation omitted) *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002). If Garrett makes these showings, DOCS may evade liability if it demonstrates that it would have disciplined or transferred him " 'even in the absence of the protected conduct." ' *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003) (citations omitted).

> FN9. Dawes' complaint was dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

An inmate has a constitutional right to be protected from retaliation based upon his activities as an IGRC representative. *Alnutt v. Cleary,* 913 F.Supp. 160, 170 (W.D.N.Y.1996). However, a claim brought under "42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse." *Gill v. Hoadley,* 261 F.Supp.2d 113, 129

(N.D.N.Y.2003)(citing *Alnutt,* 913 F.Supp at 165-66)). Ordinarily, a claim for verbal harassment is not actionable under 42 U.S.C. § 1983. *Aziz Zarif Shabazz v. Picco,* 994 F.Supp. 460, 474 (S.D.N.Y.1998). Moreover, "verbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Aziz Zarif Shabazz,* 994 F.Supp. at 474.

In this case, Garrett claims that defendant Centore harassed him for his activities as an IGRC representative. Garrett also claims that he was removed as an IGRC representative when he was transferred. In addition, Garrett claims that defendants Reynolds, Mance, Burger and Maher failed to properly investigate his allegations against Centore. Garrett claims that these defendants failed to properly investigate his claims in retaliation for his activities as an IGRC representative.

**\*5** More specifically, Garrett claims that Reynolds and Mance recalled IGRC passes for one day in order to interfere with an investigation inquiry into a correctional officer's conduct involving inmates who were left in the yard during inclement weather. Finally, Garrett claims that his property was destroyed while he was in the SHU.[FN10] Garrett filed grievances against Centore in April, May, and June of 2000. One of his complaints involved Centore throwing a folded piece of paper into his cell which had a picture of a plunger with the words "always gets the job done" on it. On June 23, 2000, he was placed in administrative segregation in the SHU. Three weeks later he was transferred.[FN11]

> FN10. However, the defendants provide the court with documents which show that he was paid $75.00 in settlement of this claim.

> FN11. The defendants maintain that Garrett failed to exhaust this claim. At this juncture, it is unclear whether or not he exhausted this claim. As such, this court cannot, as a matter of law, recommend dismissal because the court has insufficient information to determine this issue.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

Viewing the facts in the light most favorable to Garrett, the non-moving party, this court cannot, as a matter of law, find that Garrett fails to state a claim for which relief can be granted. He claims that he was retaliated against for his activities as an IGRC representative. As noted, verbal harassment alone will not constitute a violation of a prisoner's constitutional rights but in this case, it appears that he was transferred for his activities as an IGRC representative. The defendants rely on numerous grievances which were denied by the CORC to show that their actions were proper. They also claim that Garrett has failed to show injury, however, at this juncture of the litigation with virtually no discovery in this case, this court cannot recommend dismissal as a matter of law.

D. *Personal Involvement*

It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)(*citation omitted* ). Since there is no respondeat superior liability, the defendant must be shown to have personal involvement in the alleged violation of rights. *Al- Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989). Supervisory officials cannot be held liable under § 1983 solely for the acts of their subordinates. *See Monell v. Department of Social Serv.,* 436 U.S. 658, 690-695 (2d Cir.1978). However, a supervisory official can be held liable for constitutional violations if he or she: (1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation after learning of it; or (4) was grossly negligent in supervising subordinates who caused the violation. *Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997) (citing *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986)).

Garrett contends that defendants Reynolds and Mance allowed staff members under their supervision to violate his rights. More specifically, Mance refused to properly investigate Garrett's complaints. Garrett also claims that defendant Burge refused to grant his request for redress against defendant Centore. Finally, Garrett claims that the defendants collectively failed to properly train and supervise their employees.

**\*6** The defendants contend that the claims against the supervisory defendants should be dismissed for lack of personal involvement. However, this court finds this contention without merit since it appears that all of the defendants were involved in the investigation process of Garrett's complaint and he accuses all of them of continuing the alleged constitutional violation by failing to properly investigate the grievances he filed. Accordingly, this court recommends denying the defendants' motion for summary judgment based on the lack of personal involvement.

WHEREFORE, for the foregoing reasons, it is hereby

RECOMMENDED, that Garrett's claims against the defendants in their official capacity under the Eleventh Amendment should be dismissed since these claims are barred; and it is further

RECOMMENDED, that defendant O'Reilly be dismissed since he was never served; and it is further

RECOMMENDED, that the defendants' motion for summary judgment be denied in all other respects; and it is further

ORDERED, that the Clerk of the Court serve a copy of this Report-Recommendation upon the parties by regular mail.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court within TEN days. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2003.

Garrett v. Reynolds
Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22299359 (N.D.N.Y.)

(Cite as: 2003 WL 22299359 (N.D.N.Y.))

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

2016 WL 2858927
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Jermaine Fann, Plaintiff,

v.

Nurse Arnold et al., Defendants.

Case # 14-CV-6187-FPG
|
Signed 05/16/2016

DECISION AND ORDER

HON. FRANK P. GERACI, JR. Chief Judge

**\*1** Before this Court are Plaintiff Jermaine Farm's ("Plaintiff") Motion for Reconsideration (ECF No. 13), Motion for Default Judgment (ECF No. 18), Motion to Amend the Revised Second Amended Complaint (ECF No. 26), and Motion to Appoint Counsel (ECF No. 28).

**BACKGROUND**

Plaintiff is a prisoner at Auburn Correctional Facility in Auburn, New York. He brings this *pro se* action against various prison officials for issues arising out of his incarceration at Orleans Correctional Facility ("Orleans") in Albion, New York. Because Plaintiff is proceeding *in forma pauperis*, the Court conducted an initial screening of his Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, and by Order dated May 7, 2015, the Court dismissed several claims and defendants from the lawsuit. ECF No. 12. Plaintiff moved for reconsideration of that Order (ECF No. 13), moved to amend his Revised Second Amended Complaint (ECF No. 26), and moved for the appointment of counsel (ECF No. 28). Defendants responded to Plaintiff's Motion to Amend on November 20, 2015. ECF No. 27.

**DISCUSSION**

**I. Motion for Reconsideration**

Motions for reconsideration are governed by Local Rule of Civil Procedure 7(d)(3) and Federal Rules of Civil Procedure 59(e) and 60(b). The standard for granting a motion for reconsideration is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted). "A motion for reconsideration should be granted only when the [party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice. " *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (citation and internal quotation marks omitted); *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). It is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys*, 684 F.3d at 52 (citation omitted). Accordingly, on a motion for reconsideration, a party may not merely offer the same "arguments already briefed, considered and decided" or "advance new facts, issues or arguments not previously presented to the Court." *Schonberger v. Serchuk*, 742 F. Supp. 108, 119 (S.D.N.Y. 1990). The decision to grant or deny the motion for reconsideration is committed to "the sound discretion of the district court." *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009).

**A. Retaliation Claim against Officer Anstey**
The Court previously dismissed Plaintiff's retaliation claim against Officer Anstey, finding that while Plaintiff engaged in constitutionally protected speech or conduct by filing grievances and thus satisfied the first element of a retaliation claim, the alleged deprivation of one meal was insufficient to constitute an adverse action to satisfy the second element of the claim. ECF No. 12, at 7-8. Plaintiff again asserts that the denial of one meal constitutes an adverse action, but he provides no authority or evidence that persuades this Court to deviate from its previous ruling. Plaintiff also contends that Officer Anstey verbally harassed him. ECF No. 13, at 3-5 (citing ECF No. 10, at ¶¶ 43, 45, 47, 48).

**\*2** Officer Anstey's alleged statements to Plaintiff (ECF No. 10, at ¶ 43 ("You want to keep filing grievances, I'll make your time here even harder."), ¶ 45 ("I'll wipe my ass with you and your lawsuit.")) do not constitute adverse action because they are merely insulting or disrespectful,

which does not give rise to a constitutional violation. *See Lunney v. Brureton*, No. 04 Civ. 2438 (LAK) (GWG), 2007 WL 1544629, at *16 (S.D.N.Y. May 29, 2007) ("In its prior ruling, the Court dismissed [Plaintiff's general allegations of threats and harassment because comments that are merely insulting or disrespectful do not give rise to a constitutional violation.") (citations and internal quotations omitted). There is no indication that Officer Anstey threatened bodily injury or that he committed physical violence. *Hernandez v. Goord*, 312 F. Supp. 2d 537, 545 (S.D.N.Y. 2004) (finding that the plaintiff stated a retaliation claim where he alleged several attacks and threats on his life as specific factual instances of retaliation against him for filing grievances).

The allegations that Officer Anstey "threatened" and "harassed" Plaintiff as a result of his grievance writing cannot meet the requirement that the plaintiff experience an adverse action. While "the scope of conduct that can constitute actionable retaliation in the prison setting is broad, it is not true that every response to a prisoner's exercise of a constitutional right gives rise to a retaliation claim." *Dawes v. Walker*, 239 F.3d 489, 492-93 (2d Cir. 2001), *overruled on other grounds, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). Only retaliatory conduct that would "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights" may support such a claim. *Id.* at 493. This Court concludes that Officer Anstey's alleged threats cannot plausibly be viewed as deterring a person of ordinary firmness from exercising his or her First Amendment rights. Accordingly, Plaintiff's Motion for Reconsideration as to the retaliation claim against Officer Anstey is DENIED.

#### B. Retaliation Claim against Sergeant Andrews

Plaintiff correctly points out that the Court overlooked the retaliation claim against Sergeant Andrews. ECF No. 13, at 5-6. Because overlooked information is a proper basis for a motion for reconsideration, *see Analytical Surveys*, 684 F.3d at 52, Plaintiff's Motion for Reconsideration is granted as to this claim. For the reasons that follow, unless Plaintiff files a Fourth Amended Complaint, his claim will be dismissed with prejudice.

Plaintiff asserts that Sgt. Andrews retaliated against him after he complained to her and filed a grievance about the prison's food distribution policy. ECF No. 13, at 5-6 (citing ECF No. 10, at ¶¶ 31-33). Plaintiff alleges that on

the same day he complained, Sgt. Andrews "had officers trash [Plaintiff's] cell allowing them to throw all [his] property in the shower, and made false claims of [his] cellmate and [him] smoking and had [them] put in for a[ ] urine test." *Id.*

"[A] plaintiff asserting First Amendment retaliation claims must advance non-conclusory allegations establishing: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dawes*, 239 F.3d at 492. Plaintiff has met the first element of a retaliation claim based on his allegations that he filed a grievance. As to the second element, which requires this Court to assess the retaliatory conduct, the adverse actions that Plaintiff alleges are insufficient to state a retaliation claim. Plaintiff vaguely asserts that unnamed officers trashed his cell and claims that Sgt. Andrews ordered them to do so. He states that all of his property was thrown in the shower, but he does not specify what exactly was destroyed. Retaliatory destruction of a prisoner's personal property can qualify as an adverse action where a "substantial amount" of personal property is destroyed and "the conduct appears designed specifically to deter plaintiff's exercise of his constitutional rights." *Smith v. City of New York*, No. 03-Civ-7576 (NRB), 2005 WL 1026551, at *3 (S.D.N.Y. May 3, 2005) (finding adverse action where the destruction of property was specifically directed against the plaintiff, violated prison regulations, and deprived the plaintiff of a substantial amount of personal property, including his legal papers); *Soto v. Iacavino*, No. 01 Civ. 5850 (JSM), 2003 WL 21281762, at *2 (S.D.N.Y. June 4, 2003) (denying defendants' motion to dismiss the claims relating to the destruction of the plaintiff's property because the plaintiff alleged that *specific* corrections officers deliberately destroyed his property to retaliate against him for filing grievances). Here, Plaintiff's allegation of property destruction constitutes a *de minimis* act of retaliation and is insufficient to support his retaliation claim. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 397 (6th Cir. 1999) (holding that, to be actionable, retaliation against a prisoner must be likely to "chill a person of ordinary firmness from continuing to engage" in activity protected by the First Amendment); *Crawford-El v. Britton*, 93 F.3d 813, 826 (D.C. Cir. 1996) (en banc) (approving similar standard on the ground that "some

non-*de minimis* showing of injury is necessary"), *vacated on other grounds*, 523 U.S. 574 (1998).

**\*3** Additionally, the fact that Plaintiff was subjected to a single urine test does not constitute an adverse action that would deter an inmate from asserting his or her rights. *Partak v. Behrle*, No. 9:09-CV-1256 (FJS/ATB), 2011 WL 7629500, at \*14 (N.D.N.Y. Sept. 12, 2011) (finding that the fact that the defendant ordered three urine tests for the plaintiff in three days did not constitute adverse action for purposes of a retaliation claim); *see Bumpus v. Canfield*, 495 F. Supp. 2d 316, 327 (W.D.N.Y. 2007). In *Bumpus*, the court held that "[u]rine tests are a fact of prison life ... and I do not find that one urine test would chill a prisoner of ordinary firmness from filing grievances." *Id.* (citations omitted). That court found, and this Court agrees, that the urine test was "simply *de minimis* and therefore outside the ambit of constitutional protection." *Id.* (quoting *Dawes*, 239 F.3d at 493).

Accordingly, Plaintiff's Motion for Reconsideration is granted as to the retaliation claim against Sgt. Andrews. However, this Court finds that Plaintiff has not plausibly alleged facts to satisfy the adverse action element of this claim, and it must be dismissed. However, Plaintiff is granted leave to amend with respect to the alleged retaliatory destruction of property, because this Court cannot conclusively hold at this time that Plaintiff's allegations do not "raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and "*sua sponte* dismissals of a *pro se* complaint before ... an opportunity to amend are frowned on in this Circuit." *Avent v. Herbert*, No. 02-0828Sr., 2007 WL 3355060, at \*3 (W.D.N.Y. Nov. 5, 2007) (citations omitted). Plaintiff may not amend, however, as to the alleged retaliatory urine test because this is merely a *de minimis* injury and thus amendment would be futile. *Price v. Hasly*, No. 04-CV-0090S(SR), 2004 WL 1305744, at \* (W.D.N.Y. June 8, 2004) ("[W]hile the usual practice is to allow leave to replead a deficient complaint, such leave may be denied where amendment would be futile.") (citations omitted). If Plaintiff wishes to amend his Third Amended Complaint regarding the destruction of property claim, he must do so within 30 days of this Order. If Plaintiff fails to file a Fourth Amended Complaint by that time, his claim against Sgt. Andrews will be dismissed with prejudice.

### C. Denial of Access to Medical Records

Plaintiff argues that the Court improperly dismissed his denial of access to medical records claim. ECF No. 13, at 6-8. Plaintiff fails to meet the demanding standard to obtain reconsideration on this issue. His motion largely reiterates points that were previously made, which is not an appropriate basis for seeking reconsideration. When the Court dismissed this claim with prejudice, it observed that Plaintiff at most alleged a delay in obtaining his medical records. The Court also noted that Plaintiff failed to allege harm resulting from that delay. Moreover, Plaintiff continues to assert that he has a "property" interest in these medical records. As explained in the Court's prior Order (ECF No. 12, at 4), Plaintiff's medical records are not his "property" for purposes of this claim. *See Nat'l Ass'n of Letter Carriers, AFL-CIO v. U.S. Postal Serv.*, 604 F. Supp. 2d 665, 674 (S.D.N.Y. 2009) (citing *Gotkin v. Miller*, 514 F.2d 125, 129 (2d Cir. 1975) and *Webb v. Goldstein*, 117 F. Supp. 2d 289, 295 (E.D.N.Y. 2000) (discussing the principle that there is no property interest in one's medical records)). Plaintiff fails to point to controlling decisions or data that the Court overlooked, which is required to obtain reconsideration. Thus, Plaintiff's Motion for Reconsideration as to the denial of access to medical records claim is DENIED.

### D. Unconstitutional Policy

**\*4** Plaintiff also correctly points out that the Court overlooked his claim that the Orleans food distribution policy is unconstitutional. ECF No. 13, at 8-9. Accordingly, Plaintiff's Motion for Reconsideration is granted as to this claim. For the reasons that follow, however, this claim is also dismissed with prejudice.

Plaintiff asserts that the Orleans food distribution policy is unconstitutional because it is vague and used to harass and punish inmates. ECF No. 13, at 8-9 (citing ECF No. 10, at 20-22). Plaintiff describes the policy as requiring the inmate to stand at his door when food is being distributed. If the inmate is not at his door, he is considered to have refused his meal and will not be fed on that occasion.

"Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Bell v. Wolfish*, 441 U.S. 520, 546-47 (1979) (citations omitted). A prisoner's constitutional rights may be properly limited or retracted to maintain institutional security and preserve internal order. *Id.* "Prison officials must be free to take appropriate action

to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry." *Id.* at 547. Thus, courts "have held that even when an institutional restriction infringes a specific constitutional guarantee, such as the First Amendment, the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." *Id.* (citations omitted).

Plaintiff's displeasure with this policy is not enough to make it unconstitutional. Although Plaintiff would prefer to "sit at his desk" or "wash his hands" (ECF No. 10, at ¶¶ 27, 39) as a meal is handed out, prison officials have the discretion to implement this type of policy. With the exception of the allegation that he was deprived a single meal, as explained above, Plaintiff does not contend that this policy led prison officials to withhold meals from him. *See Williams v. Coughlin*, 875 F. Supp. 1004, 1013 (W.D.N.Y. 1995) (explaining that the withholding of food from a prisoner for two days or more may state a claim under the Eighth Amendment and that food deprivation should not be used as a disciplinary measure).

Accordingly, Plaintiff's Motion for Reconsideration is granted as to the unconstitutional policy claim, however, for the reasons stated above, this claim is dismissed with prejudice.

### II. Motion for Default Judgment

On August 31, 2015, Plaintiff moved for default judgment against all defendants. ECF No. 18. On September 4, 2015, Defendants wrote a letter to this Court requesting that default not be entered (ECF No. 19) and on September 8, 2015, Defendants filed a Notice of Appearance (ECF No. 20). On September 14, 2015, Plaintiff wrote a letter to this Court in which he stated, "I do not oppose the Attorney General's Office request to not enter default." ECF No. 24. Accordingly, this Court considers Plaintiff's Motion for Default Judgment to be withdrawn.

### III. Motion to Amend Revised
### Second Amended Complaint

Under Federal Rule of Civil Procedure 15(a)(2), leave to file an amended complaint should be freely granted unless the proposed amended complaint alleges claims or seeks to add parties that are untimely, prejudicial, or futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). A

document filed *pro se* must be "liberally construed," and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks and citations omitted). An amended complaint is intended to completely replace the prior complaint in the action, and thus it "renders [any prior complaint] of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977), *cert. denied sub nom., Vesco & Co., Inc. v. Int'l Controls Corp.*, 434 U.S. 1014 (1978); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

**\*5** Plaintiff filed his original Complaint on April 18, 2014. ECF No. 1.[1] Thereafter, Plaintiff moved to amend his Complaint (ECF No. 3), the Court granted his motion (ECF No. 6), and he filed his Second Amended Complaint (ECF No. 7). On October 2, 2014, Plaintiff filed his Revised Second Amended Complaint. ECF No. 10. Plaintiff's proposed Third Amended Complaint (ECF No. 26) contains six claims that are addressed in turn below.

### A. First Claim: Unconstitutional Due Process Violation

In Plaintiff's proposed Third Amended Complaint, he alleges that his due process rights were violated when he was denied access to his medical records. ECF No. 26, at 5-9. The Court dismissed this claim with prejudice on May 7, 2015 (ECF No. 12) and this Court has now denied reconsideration. "The dismissal with prejudice is *res judicata* on the merits of a claim in favor of the defendants." *Santiago v. Booker*, No. 06-CV-282A, 2008 WL 850246, at \*1 (W.D.N.Y Mar. 27, 2008) (citing *Nemaizer v. Baker*, 793 F.2d 58, 60-61 (2d Cir. 1986)). Accordingly, Plaintiff is barred from reviving this claim in his Third Amended Complaint.

### B. Second Claim: Retaliation Related to
### Medical Records by Nurses Arnold and Carlotta

In Plaintiff's proposed Third Amended Complaint, he elaborates on a claim against Nurses Arnold and Carlotta for alleged retaliatory conduct after Plaintiff filed a grievance related to accessing his medical records. ECF No. 26, at 10-13. In its May 7, 2015 Decision and Order, the Court determined that this claim may go forward. ECF No. 12, at 6. Accordingly, this claim may proceed in Plaintiff's Third Amended Complaint.

### C. Third Claim: Unconstitutional Policy and Retaliation by Officer Anstey and Sergeant Andrews

The Court dismissed the retaliation claim against Officer Anstey with prejudice on May 7, 2015 (ECF No. 12) and this Court has now denied reconsideration. "The dismissal with prejudice is *res judicata* on the merits of a claim in favor of the defendants." *Santiago*, 2008 WL 850246, at *1. Accordingly, Plaintiff is barred from reviving these claims against Officer Anstey in his Third Amended Complaint. Additionally, as explained above, the unconstitutional policy claim has been dismissed with prejudice and may not proceed in Plaintiff's Third Amended Complaint. Finally, Plaintiff's claims against Sgt. Andrews may not proceed in his Third Amended Complaint, but Plaintiff has been granted leave to amend with respect to his destruction of property claim.

### D. Fourth Claim: Retaliation Related to Medical Care by Nurse Stern

**\*6** In Plaintiff's proposed Third Amended Complaint, he elaborates on a claim against Nurse Stern for retaliation related to providing medical care. ECF No. 26, at 21-26. In its May 7, 2015 Decision and Order, the Court determined that this claim may go forward. ECF No. 12, at 12. Accordingly, this claim may proceed in Plaintiff's Third Amended Complaint.

### E. Fifth Claim: Denial of Medical Care

The Court dismissed Plaintiff's denial of medical care claim without prejudice on May 7, 2015. ECF No. 12, at 10-12. In Plaintiff's Third Amended Complaint, he asserts this claim again against Nurse Stern, Nurse Clarey, Nurse Carlotta, Dr. Lewis, and Dr. Carl Koenigsmann. For the reasons that follow, this claim may proceed against Nurses Stern, Clarey, and Carlotta, and Dr. Lewis, but not against Dr. Koenigsmann.

The Supreme Court has held that when prison officials deny medical care to prisoners, they violate the Eighth Amendment only if the denial rises to the level of "deliberate indifference to serious medical needs." *See Estelle*, 429 U.S. at 104. The deliberate indifference standard has an objective and subjective prong. *See Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). "First, the alleged deprivation must be, in objective terms, sufficiently serious." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (citations and internal quotations omitted).

"A serious medical condition exists where the failure to treat a prisoner's condition could result in farther significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136-37 (2d Cir. 2000) (citations and internal quotation marks omitted).

Second, the official must act with a "culpable state of mind" which, the Second Circuit has held, equates to "recklessness" as that term is used in criminal law. *See id.* at 140; *Phelps v. Kapnolas*, 308 F.3d 180, 186 (2d Cir. 2002) (per curiam). An official acts with a sufficiently culpable state of mind when he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The official must be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Critically, an inadvertent failure to provide adequate medical care or mere negligence is not "repugnant to the conscience of mankind" and thus does not violate the Constitution. *See Estelle*, 429 U.S. at 105-06 (internal quotations and citation omitted). Stated differently, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* at 106.

### 1. Nurse Stern

According to the proposed Third Amended Complaint, Plaintiff told Nurse Stern about his "vomiting and severe chronic abdominal pain" on April 1, 2014. ECF No. 26, at ¶ 68. Nurse Stern then "left without examining [Plaintiff] or providing any medical treatment." *Id.* Plaintiff indicated that Nurse Stern would respond to Plaintiff's sick calls by simply giving him Ibuprofen or Tylenol. *Id.* at ¶ 71. Plaintiff also allegedly told Nurse Stem that those medications did not work, i.e., they did not stop his vomiting or pain. *Id.* at ¶ 72. Plaintiff alleges that he made several requests to Nurse Stern to see a doctor, but his requests were always disregarded. *Id.* at ¶¶ 73, 74.

On May 2, 2014, Plaintiff submitted a sick call request. *Id.* at ¶ 81. When Nurse Stem arrived, Plaintiff told her that he was "continuing to suffer from abdominal pain and vomiting and [his] condition [wa]s getting wors[e]." *Id.* Plaintiff alleges that Nurse Stem denied him medical care and stated "you didn't sign up for sick call." *Id.* That

same day, Nurse Stern gave Plaintiff Tylenol even though he previously explained to her that it was ineffective. *Id.* at ¶ 82.

**\*7** On June 1, 2014, Nurse Stern gave Plaintiff Milk of Magnesia, and he "immediately ... began vomiting uncontrollably." *Id.* at ¶ 83. Nurse Stern was called to return to Plaintiff's cell and she allegedly "denied [him] any further treatment or assistance." *Id.* Plaintiff alleges that, for several weeks and months, he told Nurse Stern about his abdominal pain and vomiting. *Id.* at ¶ 85. Nurse Stern allegedly "took no steps to find the source of [Plaintiff's] pain and suffering and refused [his] requests to be taken to the medical official who could properly diagnose [his] condition." *Id.* at ¶ 86.

On June 18, 2014, Plaintiff allegedly tried to talk to Dr. Lewis, but Nurse Stern interfered by telling Dr. Lewis not to talk to Plaintiff and pushing him away from Plaintiff's cell. *Id.* at ¶ 87. Plaintiff alleges that throughout the entire day, officers told Nurse Stern about Plaintiff's symptoms and his ongoing requests for medical attention and Nurse Stern "refused to see [him]." *Id.* at ¶ 88.

On August 1, 2014, Plaintiff asked Nurse Stern to take him to a medical official or hospital for treatment and she refused. *Id.* at ¶ 94. On August 10, 2014, Plaintiff signed up for a sick call and Nurse Stern allegedly "denied [him] medical attention. That same week Nurse Stern denied [his] requests to see a[ ] doctor." *Id.* at ¶ 96. On August 15, 2014, Nurse Stern again denied Plaintiff's sick call. *Id.* at ¶ 97. When officers requested emergency assistance, Nurse Stern responded five hours later but "refused to treat" Plaintiff. *Id.*

Accepting these allegations as true, as this Court must at the pleading stage, Plaintiff satisfies the objective and subjective prongs to state a claim for the denial of medical care against Nurse Stern. Accordingly, this claim may proceed in Plaintiff's Third Amended Complaint.

### 2. Nurse Clarey

According to the proposed Third Amended Complaint, Nurse Clarey responded to Plaintiff's sick call requests on several occasions and gave him Ibuprofen or Tylenol. ECF No. 26, at ¶ 71. Plaintiff alleges that he informed Nurse Clarey that those medications did not work, *i.e.*, they did not stop his vomiting or pain. *Id.* at ¶ 72. Plaintiff also alleges that he made many requests to Nurse Clarey "to see a doctor or to be provided with a[ ] more effective treatment." *Id.* at ¶ 73. Instead of fulfilling his requests, Nurse Clarey gave Plaintiff "sarcasm." *Id.* at ¶ 74.

On April 16, 2014, Plaintiff was waiting for Nurse Clarey to respond to his sick call request. *Id.* at ¶ 75. Plaintiff alleges that Nurse Clarey "walked right pass[ed] [him] and denied [him] medical attention and treatment as punishment for allegedly not having [his] lights on and not standing on [his] door" and that she "knowingly denied and refused to answer [his] sick call requests." *Id.* at ¶ 76. On the same day, Nurse Clarey brought Plaintiff his medication. *Id.* at ¶ 77. When Plaintiff requested an emergency sick call, Nurse Clarey allegedly threw his medication on the floor and stated, "I don't have time for this." *Id.*

On or about May 1, 2014, Plaintiff told Nurse Clarey that the Prilosec Dr. Lewis gave him was not working and was making his symptoms worse. *Id.* at ¶ 80. Nurse Clarey allegedly denied Plaintiff's request to see a doctor. *Id.* Plaintiff alleges that, for several weeks, he told Nurse Clarey about his abdominal pain and vomiting. *Id.* at ¶ 85. Despite this, Nurse Clarey "took no steps to find the source of [Plaintiff's] pain and refused [his] requests to be taken to the medical official who could properly diagnose [his] condition." *Id.* at ¶ 86.

**\*8** Accepting these allegations as true, as this Court must at the pleading stage, Plaintiff satisfies the objective and subjective prongs to state a claim for the denial of medical care against Nurse Clarey. Accordingly, this claim may proceed in Plaintiff's Third Amended Complaint.

### 3. Nurse Carlotta

According to the proposed Third Amended Complaint, Nurse Carlotta responded to Plaintiff's sick call requests on several occasions and gave him Ibuprofen or Tylenol. ECF No. 26, at ¶ 71. Plaintiff alleges that he informed Nurse Carlotta that those medications did not work, i.e., they did not stop his vomiting or pain. *Id.* at ¶ 72. Plaintiff also alleges that he made many requests to Nurse Carlotta "to see a doctor or to be provided with a[ ] more effective treatment" (*Id.* at ¶ 73), but that Nurse Carlotta "would completely deny [his] requests" (*Id.* at ¶ 74).

On or about August 21, 2014, Plaintiff asserts that Nurse Carlotta "outright denied [him] medical attention and care as punishment for [his] complaints. Nurse Carlotta looked at [him] and stated, 'you don't get anything.' +" *Id.* at ¶ 98.

Accepting these allegations as true, as this Court must at the pleading stage, Plaintiff satisfies the objective and subjective prongs to state a claim for the denial of medical care against Nurse Carlotta. Accordingly, this claim may proceed in Plaintiff's Third Amended Complaint.

**4. Dr. Lewis**

According to the proposed Third Amended Complaint, Plaintiff saw Dr. Lewis on or about April 23, 2014. *Id.* at ¶ 78. Plaintiff asserts that Dr. Lewis only gave him a "cursory look" through the window, even though Plaintiff informed him that he was "having severe chronic abdominal pain, vomiting, and trouble and painful bathroom problems." *Id.* Dr. Lewis prescribed Plaintiff Prilosec without conducting an examination. *Id.* Plaintiff alleges that immediately after taking the Prilosec, he was dizzy, had dry mouth, and his abdominal pain and vomiting did not improve. *Id.* at ¶ 79.

On July 3, 2014, Plaintiff was temporarily transferred to Wende Correctional Facility for an ultrasound, which indicated that Plaintiff needed to undergo further testing. *Id.* at ¶ 89. Plaintiff asserts that Dr. Lewis refused to order additional tests because he believed that Plaintiff would be leaving Orleans soon. *Id.* at ¶ 90.

On August 6, 2014, Plaintiff saw Dr. Lewis and informed him of his abdominal pain and vomiting, and that the medications he received did not relieve his symptoms. *Id.* at ¶ 95. Dr. Lewis allegedly told Plaintiff that he did not have a life threatening condition and was only causing "a lot of paperwork and time." *Id.*

Accepting these allegations as true, as this Court must at the pleading stage, Plaintiff satisfies the objective and subjective prongs to state a claim for the denial of medical care against Dr. Lewis. Accordingly, this claim may proceed in Plaintiff's Third Amended Complaint.

**5. Dr. Carl Koenigsmann**

In Plaintiff's proposed Third Amended Complaint, he alleges that Dr. Koenigsmann, the Deputy Commissioner/ Chief Medical Officer of the New York State Department of Corrections and Community Supervision ("DOCCS"), "created a [ ] policy that allows medical officials at Orleans Correctional Facility to conduct sick call in a[ ] manner that does not provide an adequate examination and does not provide timely medical assistance to those in need". *Id.* at ¶ 105. Plaintiff also alleges that Dr. Koenigsmann "implemented, enforced, and failed to rectify a policy, practice, and custom allowing medical officials at Orleans Correctional Facility to knowingly deny inmates medical attention as punishment for alleged rule violations." *Id.* at ¶ 106. Plaintiff asserts that Dr. Koenigsmann was "responsible for ensuring that medical officials at Orleans Correctional Facility obey the Constitution and laws of the United States." *Id.* at ¶ 107. Plaintiff concludes that Dr. Koenigsmann was deliberately indifferent to his medical needs. *Id.* at ¶ 108.

**\*9** A supervisory defendant may not be held liable in a § 1983 action on a theory of *respondeat superior.* *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citation omitted). "[S]upervisor liability in a § 1983 action depends on a showing of some personal responsibility," *Hernandez*, 341 F.3d at 144, and a plaintiff must plead sufficient facts to establish the personal involvement of each particular defendant in the alleged violation. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).

To establish the personal involvement of a supervisory official, the plaintiff must demonstrate that: (1) the defendant participated directly in the alleged conduct; (2) the defendant did not remedy a wrong after learning of it through a report or appeal; (3) the defendant formed a policy or custom under which the conduct transpired, or allowed the policy or custom to continue; (4) the defendant's supervision of subordinates who engaged in the conduct was grossly negligent; or (5) the defendant demonstrated deliberate indifference to the rights of inmates by failing to act on information showing that the conduct was occurring. *Colon*, 58 F.3d at 873.

Here, Plaintiff merely offers conclusory allegations that Dr. Koenigsmann created and enforced an improper

medical policy without any evidence that such a policy existed. Moreover, the Court dismissed this claim without prejudice against Dr. Koenigsmann in its May 7, 2015 Order (ECF No. 12, at 10-12) and Plaintiff has again failed to allege sufficient facts to plausibly state a claim against Dr. Koenigsmann. Accordingly, the denial of medical care claim against Dr. Koenigsmann is dismissed with prejudice and may not proceed in Plaintiff's Third Amended Complaint.

### F. Sixth Claim: Breach of Privacy Against Nurse Arnold, Nurse Carlotta, and Dr. Lewis and Retaliation

The Court previously dismissed the breach of privacy claim against Nurse Arnold with prejudice on May 7, 2015 (ECF No. 12) and this Court has now denied reconsideration. "The dismissal with prejudice is *res judicata* on the merits of a claim in favor of the defendants." *Santiago*, 2008 WL 850246, at *1. Accordingly, Plaintiff is barred from reviving this claim in his Third Amended Complaint. However, the Court found that the breach of privacy claim against Nurse Carlotta and Dr. Lewis could go forward. ECF No. 12, at 3. Thus, this claim may proceed in Plaintiff's Third Amended Complaint against Nurse Carlotta and Dr. Lewis only.

Plaintiff also alleges that Nurses Carlotta and Arnold retaliated against him. According to his Third Amended Complaint, Nurse Carlotta provided "false statements" to Nurse Arnold and the grievance panel. ECF No. 26, at ¶ 125. Plaintiff also asserts that Nurses Carlotta and Arnold provided "false statements to cover up Nurse Carlotta's professional misconduct and to continue to deprive [Plaintiff] of [his] right to access and review [his] medical records as retaliation for filing a[ ] grievance due to the improper deprivation of [his] medical records." *Id.* at ¶ 126.

As explained in detail above, "a plaintiff asserting First Amendment retaliation claims must advance non-conclusory allegations establishing: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dawes*, 239 F.3d at 492. Here, Plaintiff satisfies the first element of a retaliation claim by alleging that he filed a grievance, but he fails to establish that adverse action was taken against him. Merely asserting that "false statements" were made as a result of filing

a grievance without any information about the nature of the statements, what harm such statements caused, or when the statements were made in relation to when the grievance was filed is insufficient to state a claim for retaliation. Accordingly, this claim is dismissed without prejudice and Plaintiff is granted leave to amend. *Avent*, 2007 WL 3355060, at *3 ("*[S]ua sponte* dismissals of a *pro se* complaint before ... an opportunity to amend are frowned on in this Circuit."). If Plaintiff wishes to amend his Third Amended Complaint regarding this claim, he must do so within 30 days of this Order. If Plaintiff fails to file a Fourth Amended Complaint by that time, his retaliation claim against Nurses Carlotta and Arnold will be dismissed with prejudice.

### IV. Motion to Appoint Counsel

**\*10** Plaintiff claims that the appointment of counsel is necessary because this "is not a straight forward case" and is too "complex" for him to handle on his own, his "status as a prisoner alone shows that he will not be able to adequately proceed on his own," and "the examination of witnesses will be best conducted by a[ ] properly trained counsel." ECF No. 28. For the reasons that follow, Plaintiff's motion for the appointment of counsel is denied without prejudice to renew.

There is no constitutional right to counsel in civil cases. *See In re Martin-Trigona*, 737 F.2d 1254, 1260 (2d Cir. 1984). Although the court may appoint counsel to assist indigent litigants pursuant to 28 U.S.C. § 1915(e), *see, e.g., Sears, Roebuck & Co. v. Charles W. Sears Real Estate, Inc.*, 865 F.2d 22, 23 (2d Cir. 1988), such appointment is within the court's broad discretion. *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986). The factors to be considered in deciding whether to appoint counsel include: (1) "whether the indigent's position seems likely to be of substance;" (2) "the indigent's ability to investigate the crucial facts;" (3) "whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder;" (4) "the indigent's ability to present the case" and "the complexity of the legal issues;" and (5) "any special reason in that case why appointment of counsel would be more likely to lead to a just determination." *Id.* at 61-62.

"Volunteer lawyer time is a precious commodity" that "should not be allocated arbitrarily." *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989). Upon review of Plaintiff's motions and complaints, this Court

finds that the appointment of *pro bono* counsel is not warranted at this stage of the litigation. Plaintiff's submissions are detailed and adequately describe the events that led to his alleged injuries, the factual circumstances surrounding Plaintiff's claims do not appear unusually complicated, and Plaintiff has shown that he is capable of presenting his case. Plaintiff has drafted several legible, organized, cogent, and appropriate pleadings and motions. *See Castro v. Manhattan E. Suite Hotel*, 279 F. Supp. 2d 356, 358 (S.D.N.Y. 2003) (denying the appointment of counsel after noting that "there is no indication that [plaintiff] lacks the ability to present his case").

This Court finds no "special reason" why appointment of counsel at this stage would be more likely to lead to a just determination. *See Boomer v. Deperio*, No. 03-CV-6348L, 2005 WL 15451, at *1-2 (W.D.N.Y. Jan. 3, 2005) (denying motion to appoint counsel despite the plaintiff's claims that the matter was complex and he had limited knowledge of the law); *Harris v. McGinnis*, No. 02 Civ. 6481 (LTSDF), 2003 WL 21108370, at *2 (S.D.N.Y. May 14, 2003) (application denied where the plaintiff "offered no special reason why appointment of counsel ... would increase the likelihood of a just determination"). It is Plaintiff's responsibility to either retain counsel or to proceed *pro se.*

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Reconsideration (ECF No. 13) is GRANTED IN PART and DENIED IN PART, his Motion for Default Judgment (ECF No. 18) is deemed WITHDRAWN, his Motion to Amend the Revised Second Amended Complaint (ECF No. 26) is GRANTED IN PART and DENIED IN PART, and his Motion to Appoint Counsel (ECF No. 28) is DENIED without prejudice to renew.

The claims that may proceed in Plaintiff's Third Amended Complaint are the Second Claim (retaliation related to medical records by Nurses Arnold and Carlotta), the Fourth Claim (retaliation related to medical care by Nurse Stern), the Fifth Claim (against defendants Stem, Clarey, Carlotta, and Lewis only), and the breach of privacy portion of the Sixth Claim (against Nurse Carlota and Dr. Lewis only). Plaintiff is granted leave to amend with respect to his retaliatory destruction of property claim against Sgt. Andrews and his retaliatory false statements claim against Nurses Carlotta and Arnold.

**\*11** IT IS SO ORDERED.

**All Citations**

Slip Copy, 2016 WL 2858927

## Footnotes

1    This Court notes that Plaintiff's original Complaint contains a Motion for Preliminary Injunction wherein Plaintiff requests an Order directing the Orleans superintendent, staff, and affiliates to: (1) refrain from any retaliation or retaliatory conduct; (2) provide Plaintiff with his guaranteed three meals a day; (3) provide Plaintiff with continued medical care and assistance; (4) not destroy Plaintiff's legal materials; (5) provide Plaintiff with continued access to the courts; and (6) refrain from any physical and/or mental abuse. ECF No. 1. The Court need not consider this motion because it is moot—Plaintiff was transferred from Orleans to Auburn Correctional Facility after the motion was filed. Moreover, Plaintiff's Amended Complaint (ECF No. 4), Second Amended Complaint (ECF No. 7), and Revised Second Amended Complaint (ECF No. 10) do not request preliminary injunctive relief. An amended complaint is intended to completely replace the prior complaint in the action, and thus it "renders [any prior complaint] of no legal effect." *Int'l Controls Corp.,* 556 F.2d at 668; *see also Shields,* 25 F.3d at 1128.